

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

EQUAL EMPLOYMENT OPPORTUNITY,
COMMISSION,

                 Plaintiff,

       v.

NICHOLS GAS & OIL, INC. and
TOWNSEND OIL CORPORATION
d/b/a TOWNSEND OIL & PROPANE,

                 Defendants.

_____

DECISION & ORDER

05-CV-6482CJS

## PRELIMINARY STATEMENT

By order dated March 17, 2006, the above-captioned matter has been referred to

the undersigned for the supervision of pretrial discovery and the hearing and disposition of all

non-dispositive motions, pursuant to 28 U.S.C. §§ 636(b)(A) and (B).  (Docket # 11).  Plaintiff,

the Equal Employment Opportunity Commission (the "EEOC"), has filed suit on behalf of ten

claimants against defendants, Nichols Gas & Oil, Inc. ("Nichols") and Townsend Oil

Corporation ("Townsend"), under Title VII of the Civil Rights Act.  Currently pending before

this Court are motions to compel discovery filed by Townsend and Nichols, on June 23, 2008

and July 16, 2008, respectively.  (Docket ## 51, 57, 68, 69).

## FACTUAL BACKGROUND

The charging party[1] filed a charge of discrimination with the EEOC on September 12, 2003 against her former employer, Nichols Gas & Oil, Inc.  The Charging Party alleged that she had been subjected to a hostile work environment, consisting of unwelcome sexual comments and touching, and had been constructively discharged.  (Docket # 6-2).  The EEOC conducted an investigation of Nichols and determined that female employees had been subjected to a pattern of sexual harassment, constructive discharge and retaliation.  (Docket # 6-5).

Based upon its findings, the EEOC filed suit on behalf of ten identified victims (including the Charging Party) on September 14, 2005.  (Docket # 1).  On October 1, 2007, the EEOC filed an Amended Complaint (the "Complaint") adding Townsend as a successor defendant.  (Docket # 41).  Specifically, the Complaint alleges that defendants constructively discharged the claimants due to severe and pervasive sexual harassment, including groping of the claimants' buttocks and breasts and ongoing sexual propositions and comments.  (*Id.*).  The Complaint also charges that defendants failed to take action to remedy and prevent the harassment and retaliated against those claimants who complained of the conduct.  (*Id.*).  According to the Complaint, the challenged conduct constitutes violations of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e-5 and e-6, and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.  (*Id.*).

Nichols and Townsend have denied the allegations in the Complaint.  Townsend also contends that it is not a successor to Nichols.  (Docket ## 44, 45).

---

[1] For the purposes of this motion, the identities of the charging party and the claimants have been sealed by Order of this Court.  (Docket # 66).  Accordingly, the charging party will be referred to hereinafter as the "Charging Party."  The remaining claimants will be referred to by number (*e.g.*, "Claimant # 2") as necessary for clarity.

2

The instant motions to compel filed by Nichols and Townsend seek the same

relief.[2]  (Docket ## 51, 57).  Specifically, defendants seek to compel the EEOC to produce the

following documents:

> Any and all documents directly or indirectly relating to the
> examination, diagnosis, or treatment of each and every claimant by
> a physician, psychiatrist, psychologist, social worker, counselor or
> other medical or mental health practitioner who examined,
> diagnosed or treated each and every claimant since January 1,
> 1999.

(Docket # 58-3, Exhibit ("Ex.") B, Request No. 1).  Defendants also seek to compel the EEOC to

respond to an interrogatory requesting that it:

> Identify . . . each physician, psychiatrist, psychologist, social
> worker, counselor or other medical or mental health practitioner
> who examined, diagnosed or treated each and every claimant from
> January 1, 1999 through the present and, with respect to each
> practitioner identified, set forth the date(s) and purpose(s) of each
> consultation, describe any and all diagnoses made, describe the
> type and duration of each type of treatment recommended, and
> dates during which any condition existed.

(Docket # 58-3, Ex. A, Interrogatory No. 5).  Finally, defendants seek to compel the claimants to

execute authorizations to their medical and mental health providers to release the requested

information.  (Docket # 58-3, Ex. B, Request No. 1; Docket # 51, Ex. P).

At and following oral argument, Nichols agreed to exclude mental health

professionals from the scope of the challenged interrogatory and document request.  (Docket # 65

at 3).  Townsend has not agreed to that limitation, although it has agreed to execute a protective

---

[2]  The only manner in which the relief sought by both defendants differed was that Nichols sought discovery
sanctions against the EEOC.  (Docket # 57).  I denied that application from the bench following oral argument.
(Docket # 62).

order to safeguard the privacy of any medical records and information produced. (Docket # 64 at 5).

## Summary of Claimants' Allegations and Relevant Document Production

On behalf of each claimant, the EEOC's Complaint asserts, *inter alia*, claims for "non-pecuniary losses, including pain, suffering, and humiliation." (Docket # 41 at ¶ D). According to the EEOC, eight of the ten claimants did not seek any medical or psychological treatment regarding the emotional distress they allegedly suffered while working for Nichols. (*See* Docket # 61, ("Chandy Aff.") at ¶ 8). The two who did were the Charging Party, who consulted with her primary care physician, and Claimant # 2, who treated with two different mental health counselors. (Chandy Aff. at ¶¶ 9-10).

With respect to the Charging Party, the EEOC has represented that on July 14, 2003, she spoke to her physician[3] and advised her that she was suffering verbal and physical sexual harassment at work. (Chandy Aff. at ¶ 9). Her doctor prescribed medication for anxiety, but she never had the prescription filled because she did not have health insurance. (*Id.*). The EEOC represents that the Charging Party's physician also referred her to a counselor, but she did not pursue the referral due to the lack of insurance. (*Id.*). The EEOC has produced to defendants one page of the Charging Party's medical records that reflects her physician's notes of their July 14, 2003 visit. (Docket # 51-3, Ex. B). According to the EEOC, the one page produced is the only record of the Charging Party's consultation with her physician on July 14, 2003.

---

[3] The identity of the physician has also been sealed pursuant to the Order to Seal. (Docket # 66).

4

With respect to Claimant # 2, the EEOC represents that she spoke to her physician on August 13, 2002, concerning "work-related stress" that she was experiencing in her job at Nichols. (Chandy Aff. at ¶ 10). The EEOC has produced the one page of her medical records that reflects that visit. The record indicates that she was given three weeks of samples of anti-anxiety medication. According to the EEOC, Claimant # 2 does not recall whether she continued to take this medication after the samples ran out. (*Id.*).

The EEOC also represents that Claimant # 2 was referred by her physician to mental health counseling in the Spring of 2001 to address issues purportedly unrelated to her employment that have not been identified by the EEOC. (Chandy Aff. at ¶ 11). According to the EEOC, she attended two counseling sessions, but does not recall whether she discussed her employment with Nichols. (*Id.*). Claimant # 2 attended approximately two more counseling sessions with a different counselor in late 2002 or early 2003. (*Id.*). As with the earlier sessions, the impetus for the treatment were issues allegedly unrelated to employment, although Claimant # 2 recalls that she may have spoken to the counselor about her experiences while working for Nichols. (*Id.*). The EEOC has not produced any records relating to any counseling sessions attended by Claimant # 2.

## DISCUSSION

The threshold requirement of discoverability under the Federal Rules of Civil Procedure is whether the information sought is "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). To be discoverable, the information "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

*Id.* The relevance standard, therefore, is commonly recognized as one that is necessarily broad in scope in order "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted). *See Daval Steel Products, a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991) (parties entitled to discovery of any matter that appears "reasonably calculated to lead to the discovery of admissible evidence").

In assessing a motion to compel, "the appropriateness of requested medical discovery . . . must be demonstrated separately for each plaintiff." *Kunstler v. City of New York*, 2006 WL 2516625, *3 (S.D.N.Y. 2006). The EEOC urges that the requested information should be protected from disclosure by each claimant because each has asserted only a garden-variety emotional distress claim and intends to offer no testimony or records of medical or mental health providers in support of such a claim. By contrast, defendants maintain that all claimants should be compelled to disclose their medical records because the material sought is relevant and not privileged. Townsend further urges this Court to require production of information and records concerning Claimant # 2's counseling sessions because, in Townsend's view, her claim of emotional distress waives the otherwise applicable privilege against disclosure.

In resisting disclosure, the EEOC places principal reliance on the Second Circuit's recent decision in *Sims v. Blot*, 534 F.3d 117 (2d Cir. 2008), to assert that (1) the records defendants seek are protected from disclosure under the federal psychotherapist-patient privilege recognized by the Supreme Court in *Jaffee v. Redmond*, 518 U.S. 1 (1996), and (2) none of the claimants waived her privilege by seeking compensatory damages for "garden variety" emotional

6

distress.  Before I can determine whether the emotional distress claims asserted by any or all of

the claimants amount to a waiver, I must initially determine whether the records are indeed

privileged.  It is to that question that I first turn.

## I.  Psychotherapist-Patient Privilege

In *Jaffee v. Redmond*, the Supreme Court held that "confidential communications

between a licensed psychotherapist and her patients in the course of diagnosis or treatment are

protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence."  518

U.S. 1, 15 (1996).  Rule 501 provides in relevant part:

> [T]he privilege of a witness, person, government, State, or political
> subdivision thereof shall be governed by the principles of the
> common law as they may be interpreted by the courts of the United
> States in the light of reason and experience.

Fed. R. Evid. 501.  The Court in *Jaffee* also recognized the scope of the psychotherapist privilege

to include "confidential communications made to licensed social workers in the course of

psychotherapy."  *Id.*  Thus, the privilege protects against compelled testimony concerning

conversations between the patient and the licensed therapist, as well as compelled disclosure of

notes taken during their counseling sessions.  *Id.* at 18.

In recognizing a federal psychotherapist-patient privilege, the Court noted that the

privilege was one of the nine specifically-enumerated testimonial privileges contained in an

earlier draft of Rule 501 that was rejected in favor of the more flexible, current version of Rule

501.  *Id.* at 14 ("[t]he uniform judgment of the States [in legislating a psychotherapist-patient

privilege] is reinforced by the fact that a psychotherapist privilege was among the nine specific

7

privileges recommended by the Advisory Committee"). According to the Court, the

psychotherapist-patient privilege "is 'rooted in the imperative need for confidence and trust.'"

*Id.* at 10 (quoting *Trammel v. United States*, 445 U.S. 40, 51 (1980)). As the Court reasoned,

"the mere possibility of disclosure [of confidential communications made during counseling

sessions] may impede development of the confidential relationship necessary for successful

treatment" of the "sensitive . . . problems for which individuals consult psychotherapists." *Id.*

       The Court explicitly distinguished between treatment by a psychotherapist and

treatment by a medical, non-mental health provider. As it observed, "by contrast" to the

therapist's treatment, "[t]reatment by a physician for physical ailments can often proceed

successfully on the basis of a physical examination, objective information supplied by the

patient, and the results of diagnostic tests." *Id.* Indeed, a physician-patient privilege was not one

of the nine privileges recognized in the earlier draft of Rule 501 and has not traditionally been

recognized at common law. *See, e.g.*, *Whalen v. Roe*, 429 U.S. 589, 602 n.28 (1977) ("[t]he

physician-patient evidentiary privilege is unknown to the common law"); *Northwestern Mem'l

Hosp. v. Ashcroft*, 362 F.3d 923, 925-26 (7th Cir. 2004) (noting absence of federal medical

records privilege); *Kunstler v. City of New York*, 2006 WL 2516625 at *6 n.7 (noting federal

courts' rejection of the physician-patient privilege).

       Although *Jaffee* makes clear that the psychotherapist-patient privilege extends

only to communications between a patient and a licensed mental-health professional during the

course of treatment, *see In re Sealed Case (Medical Records)*, 381 F.3d 1205, 1214 (D.C. Cir.

2004) ("[t]he federal psychotherapist privilege recognized in *Jaffee* extends no further than

confidential communications between licensed mental health professionals and their patients"

8

(citing *Jaffee v. Redmond*, 581 U.S. at 15)), the EEOC nonetheless urges this Court to interpret the psychotherapist privilege as shielding from disclosure the medical records made and maintained by the Charging Party's and Claimant # 2's physicians. Specifically, the EEOC argues that the Second Circuit's later decision in *Sims v. Blot*, 534 F.3d 117 (2d Cir. 2008), holds that medical records, like psychiatric records, are protected from disclosure under a federal privilege. In support of its contention, the EEOC points out that the records sought from the New York State Office of Mental Health in *Sims* included, in addition to psychological records, medical records such as "x-rays, charts and diagrams, laboratory and pathological reports and tests." *Sims*, 534 F.3d at 124. The EEOC reasons that because the court found that the records sought were protected by the psychotherapist-patient privilege, the court must have implicitly extended the privilege to cover medical records.

I disagree. First, the court in *Sims* clearly and consistently refers to the privilege at issue as the psychotherapist-patient privilege, not the physician-patient privilege. *Id.* at 119, 128-37, 141-42. Second, the records at issue in *Sims* were records maintained by the New York State Office of Mental Health ("OMH"), a mental health provider. *Id.* at 124. The fact that the request for the release of information from a mental health provider also includes items like X-rays does not, in my view, transform the request of a mental health provider into one of a medical, non-mental health provider. Third, throughout the decision, the court refers to the documents at issue as "psychiatric treatment records," "mental health records" and "psychiatric records." *Id.* at 119, 130, 134, 136-42. While defendant's request may have encompassed a broad group of records from OMH, including those that may be characterized as medical records,

9

the decision is silent as to whether any such "medical" records actually existed or were subject to dispute.

Rather, as framed by the court, *Sims* addressed "the novel and far-reaching question of whether a plaintiff's claim for injuries that include only the garden-variety emotional injury that would ordinarily result [from the challenged conduct] constitutes a forfeiture of his psychotherapist-patient privilege." *Id.* at 129. In other words, the issue presented was not whether the psychotherapist-patient privilege should be extended to cover medical records, but whether the assertion of "garden variety" emotional distress serves to waive that privilege.[4]

For these reasons, I decline to read *Sims* as expanding the scope of the psychotherapist-patient privilege recognized in *Jaffee* to include medical providers who are not psychotherapists, even if the treatment sought from the medical provider was a referral to a mental health professional or a prescription for medication to treat depression or anxiety. On the record in this case, I find that the only claimant likely to have properly asserted a psychotherapist-patient privilege is Claimant # 2 because she is the only claimant who was treated by a mental health provider. The EEOC has disclosed that she sought treatment on approximately two occasions from two different therapists[5] during the period between 2001 and 2003 and may have discussed the alleged workplace harassment with at least one of these therapists. I now turn to the question of whether Claimant # 2 has waived her privilege as to information and records of her counseling sessions.

---

[4] That issue, as it pertains to this case, is addressed *infra* at Section II.

[5] The record does not disclose whether either of Claimant # 2's counselors were licensed therapists. The EEOC is directed to submit to the Court by no later than **March 20, 2009**, an affidavit of Claimant # 2 stating whether her counselors were licensed psychotherapists or social workers.

## II. Waiver

In *Jaffee*, the Supreme Court declined to subject the psychotherapist-patient privilege to a judicial balancing test to determine whether it should yield in a particular case to the interests of disclosure of relevant evidence. 518 U.S. at 17. As the Court reasoned, "[m]aking the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege." *Id.* Thus, the psychotherapist privilege may be regarded as an absolute. *In re Consolidated RNC Cases*, 2009 WL 130178, *5 (S.D.N.Y. 2009). Nevertheless, "[l]ike other testimonial privileges, the patient may of course waive the protection" of the psychotherapist privilege. *Jaffee*, 581 U.S. at 15 n.14.

Prior to *Sims*, two divergent views existed within this Circuit concerning the circumstances necessary to effect a waiver of the psychotherapist privilege. *In re Consolidated RNC Cases*, 2009 WL 130178, at *5-6 (S.D.N.Y. 2009) (collecting cases); *Kunstler*, 2006 WL 2516625 at *7 (collecting cases). Some courts employed a "broad" waiver analysis, pursuant to which "a plaintiff was deemed to have waived the privilege merely by alleging that she had suffered emotional or psychological injuries of any type, thus placing her mental or emotional condition at issue in the litigation." *In re Consolidated RNC Cases*, 2009 WL 130178 at *5. Under this approach, the mere allegation of emotional distress was viewed as sufficient to justify discovery into that party's psychological records to determine whether events other than the challenged conduct may have caused or exacerbated the party's distress. *See Green v. St. Vincent's Medical Center*, 252 F.R.D. 125, 128 (D. Conn. 2008).

11

The second approach adopted a narrower view of waiver, pursuant to which a plaintiff was not deemed to have waived the privilege by alleging only "garden variety" emotional distress. *See, e.g., Kunstler*, 2006 WL 2516625 at *9 (rejecting "the notion that a plaintiff's demand for emotional-distress damages necessarily triggers a waiver of the privilege for her psychotherapy records"), *adopting report and recommendation*, 242 F.R.D. 261, 264 (S.D.N.Y. 2007); *Rulhmann v. Ulster County Dep't of Social Servs.*, 194 F.R.D. 445, 450-51 (N.D.N.Y. 2000). Under this approach, courts must distinguish between garden variety claims and claims for more "severe" emotional distress, such as those involving a diagnosis of a specific psychiatric disorder. *Cf. EEOC v. Grief Brothers Corp.*, 218 F.R.D. 59, 61-62 (W.D.N.Y. 2003) (plaintiff placed his emotional condition in issue by claiming to have suffered severe depression and serious emotional distress as a result of the alleged harassment and seeking damages for costs of medical treatment); *Sidor v. Reno*, 1998 WL 164823, *2 (S.D.N.Y. 1998) (plaintiff's challenges to employer's justification for termination – that plaintiff was a danger to herself and others – placed her mental state in issue); *see Kunstler*, 2006 WL 2516625 at *7 (collecting cases). Garden variety claims refer to claims for "compensation for nothing more than the distress that any healthy, well-adjusted person would likely feel as a result of being so victimized"; claims for serious distress refer to claims for "the inducement or aggravation of a diagnosable dysfunction or equivalent injury." *Kunstler*, 2006 WL 2516625 at *7, 9.

In *Sims*, the Second Circuit acknowledged this divergent doctrinal approach to waiver and adopted the narrower view. 534 F.3d at 134, 141. There, the Court held that the *pro se* prisoner had not waived his psychotherapist-patient privilege because he had asserted no more than a garden variety claim for emotional distress, that is, a claim of emotional injury for

12

damages "ordinarily associated with a conventional claim for pain and suffering." *Id.* at 120, 141. Although he had testified at a deposition regarding some anxiety as a result of the alleged assault, he later explicitly withdrew any claim for serious distress and reaffirmed his intent to pursue only a garden variety distress claim and not to offer privileged communications in support of his claim. *Id.* at 124-25. That withdrawal, coupled with the absence of any mention in his complaint of emotional distress and the fact that he was unrepresented at his deposition, led the court to conclude that waiver of the privilege should not be inferred "in the interests of fairness." *Id.* at 135, 136, 138, 140-42.

On the record before me in this case, I must determine whether Claimant # 2 (the only claimant to have treated with a mental health professional) has waived her psychotherapist-patient privilege. I note at the outset that the Complaint does not allege any specific injuries for Claimant # 2, and only asserts claims on behalf of Claimant # 2 (like the other nine claimants) for "non-pecuniary losses, including pain, suffering and humiliation." (Docket # 41). Claimant # 2 has not alleged that she suffered severe emotional distress. *Cf. Green v. St. Vincent's Medical Center*, 252 F.R.D. at 129 (applying *Sims* to find that the plaintiff's emotional condition was at issue in case where she pursued claims for negligent and intentional infliction of emotional distress and sought recovery for "severe" emotional distress); *In re Consolidated RNC Cases*, 2009 WL 130178, at *7 (causes of action alleging "severe emotional distress, emotional injuries, psychological harm, mental anguish, embarrassment, humiliation, shock, fright, and apprehension" are not "garden variety claims").

In addition, the EEOC has explicitly disavowed any emotional distress claims other than garden variety claims that Claimant # 2 could have made. (Docket # 74). As the

13

EEOC has represented in connection with this motion, it does not intend to offer at trial any

psychological or medical testimony or records to support her claims of emotional distress.

(Chandy Aff. ¶ 12). *See Sims*, 534 F.3d at 132 ("Fairness considerations arise when the party

attempts to use the privilege both as a shield and a sword[;] a party cannot partially disclose

privileged communications or affirmatively rely on privileged communications to support its

claim or defense and then shield the underlying communications from scrutiny by the opposing

party") (internal quotations omitted).

On this record, I find that Claimant # 2 has not waived her psychotherapist-patient

privilege, and information about and documents reflecting her mental health counseling sessions

are therefore protected from disclosure.[6]

## III.   Rule 26 (c)

Having determined that the records of Claimant # 2's counseling sessions are

protected from disclosure, I turn to the final question of whether the treatment records of any of

the claimants' medical, non-mental health providers should be produced and, if so, whether their

production should be subject to any protective order under Fed. R. Civ. P. 26(c).

Although the state of New York has legislated a physician-patient privilege, N.Y.

C.P.L.R. § 4504(a), "state privilege laws do not govern in federal question cases." *In re Zyprexa*

*Products Liability Litigation*, 254 F.R.D. 50, 52 (E.D.N.Y. 2008) (citing *Northwestern Mem'l*

*Hosp. v. Ashcroft*, 362 F.3d at 925-26; *von Bulow v. von Bulow*, 811 F.2d 136, 141 (2d Cir.

1987)); *Manessis v. New York City Dep't of Transportation*, 2002 WL 31115032, *2, n.1

---

[6] This determination is conditioned upon the filing by the EEOC of the affidavit described in n.5, *supra*.

(S.D.N.Y. 2002) (citing *Lupowitz v. Monetfiore Medical Center*, 1997 WL 4577, \*2 (S.D.N.Y.

1997)); *see generally* Fed. R. Evid. 501. Here, where the claims arise under federal law, the

claimants cannot claim protection under the New York physician-patient privilege. *Evanko v.*

*Electronic Systems Assoc., Inc.*, 1993 WL 14458, \*1 (S.D.N.Y. 1993) ("federal courts do not

recognize a physician-patient privilege") (citing *In re Doe*, 964 F.2d 1325, 1328-29 (2d Cir.

1992)). That said, the claimants do maintain privacy interests in their medical records due to the

sensitive nature of the information contained therein. *Manessis v. New York City Dep't of*

*Transportation*, 2002 WL 31115032 at \*2 (citing *Olszewski v. Bloomberg L.P.*, 2000 WL

1843236, \*2 (S.D.N.Y. 2000) (recognizing "a privacy interest in keeping one's medical and

mental health records confidential"); *Gill v. DeFrank*, 2000 WL 270854, \*12 (S.D.N.Y.)

(recognizing that plaintiff had a right to privacy in his medical records), *modified on other*

*grounds*, 2000 WL 897152 (S.D.N.Y. 2000).

Rule 26(c) of the Federal Rules of Civil Procedure provides that a court may

"issue an order to protect a party or person from annoyance, embarrassment, oppression, or

undue burden or expense." Fed. R. Civ. P. 26(c)(1). Such an order may forbid disclosure

altogether, or, among other measures, "limit[] the scope of disclosure or discovery to certain

matters." Fed. R. Civ. P. 26(c)(1)(A) and (D). Thus, "although Rule 26(c) contains no specific

reference to privacy or to other rights or interests that may be implicated, such matters are

implicit in the broad purpose and language of the Rule." *In re Sealed Case (Medical Records)*,

381 F.3d at 1215 (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 n.21 (1984));

*Kunstler*, 2006 WL 2516625 at \*11 ("courts are to give weight to legitimate privacy interests

even if the information in question is not protected by an enforceable privilege"). In other words,

15

Rule 26(c) authorizes the court to "fashion a set of limitations that allows as much relevant information to be discovered as possible, while preventing unnecessary intrusions into the legitimate interests – including privacy and other confidentiality interests – that might be harmed by the release of the material sought." *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000).

In addition to considering the privacy interests at stake, the Court should consider the expense and burden of the discovery sought, *see EEOC v. Sheffield Financial, LLC*, 2007 WL 1726560, *6 (M.D.N.C. 2007) ("a party's written consent for the release of medical records represents the least expensive and most efficient means of procuring information from medical or counseling providers") (internal quotation omitted); the relevance and importance of the discovery to the issues at stake in the litigation, *see* Fed. R. Civ. P. 26(b)(2); and, whether a state evidentiary privilege exists, *see In re Sealed Case (Medical Records)*, 381 F.3d at 1216 (citing *Northwestern Mem'l Hosp.*, 362 F.3d at 924-27).

In this case, defendants argue that they are entitled to the claimants' medical records because the records may reveal some alternative explanation for the emotional distress allegedly suffered by the claimants.[7] Of course, defendants' "contention that any physical malady might cause emotional distress . . . scarcely gives defendants a license to rummage through all aspects of the plaintiff's life in search of a possible source of stress or distress." *Evanko*, 1993 WL 14458 at *2 (S.D.N.Y. 1993); *see also Manessis*, 2002 WL 31115032 at *2

---

[7] Nichols argues that the Charging Party and Claimant # 2 have waived any privacy interests in their medical records as a result of the EEOC's production of a one-page record for each of them. I find no merit in this argument. As I understand the record, the EEOC has produced the only records that exist of the Charging Party's and Claimant # 2's consultations with their physicians during which work-related stress was discussed. Based upon this understanding, I do not find that the EEOC's disclosure of that one condition (work-related emotional stress) waives the claimants' privacy interests in other medical conditions. *See Evanko v. Electronic Systems Assoc.*, 1993 WL 14458 at *2 (rejecting argument that disclosure of medical records relating to certain conditions waives privacy interest in records for other conditions).

16

(plaintiff's emotional distress claim did not give defendants "an unfettered right to pursue discovery into [the plaintiff's] entire medical history"). I easily conclude that the claimants have demonstrated the existence of genuine privacy interests in the information and records sought by defendants. Whether and how these interests should be protected requires consideration of the other factors discussed above.

First, the requests pose little burden to the claimants. The execution of medical releases is clearly not burdensome. Nor do I find onerous the requirement of answering one interrogatory for each claimant.

Second, on the record as it has been developed, I find that disclosure of some records in the claimants' medical histories is appropriate, but not the wholesale disclosure of all medical records for the ten-year period that defendants seek (which in the case of some claimants predates their employment by three years and in the case of most claimants postdates their employment by at least five years). Here, two of the claimants consulted with their primary care physicians about work-related stress; five of the remaining eight have described physical manifestations of the emotional distress they allegedly suffered, such as anxiety attacks, nausea, sweats, severe headaches, insomnia, stomach aches and problems. Specifically, the record in this case contains summaries of EEOC interviews with those five describing the above-identified symptoms. (*See* Docket # 51, Exs. D, H, I, J and K)

In fairness, defendants should be entitled to examine any medical records of the Charging Party, Claimant # 2 and the other five claimants whose summaries have been submitted that (1) reflect consultation with or treatment by a medical provider for complaints of emotional distress regardless of the cause; (2) reflect medical conditions the symptoms of or treatment for

17

which could have resulted in the same type of physical symptoms that claimants have described. Because of the broad range and generalized nature of the symptoms, and the difficulty of determining (at least by a layperson) the range of possible symptoms of various medical conditions and the possible side effects of medication, fairness requires that the medical records of those seven claimants be disclosed for a relevant period of time. Balancing the competing interests in this case, I find that the relevant time period for each claimant extends from one year prior to through one year subsequent to her employment with Nichols.

With respect to the three claimants whose interview summaries have not been produced, defendants may depose them concerning any physical symptoms of stress they experienced. Depending upon their testimony, they too may be required to authorize the release of their medical records for the time period set forth herein.

To ensure that the claimants' privacy interests are properly protected, the parties are directed to confer and submit a proposed confidentiality stipulation and order governing the production and use of the medical information and records to be disclosed. The proposed order shall be submitted for the Court's review by **March 20, 2009**. Within ten days of the Court's entry of such an Order, the Charging Party, Claimant # 2 and the other five claimants shall provide executed authorizations to defendants.

18

## CONCLUSION

For the foregoing reasons, it is my Decision and Order that the defendants'

motions to compel **(Docket ## 51, 57, 68, 69)** be **GRANTED in part and DENIED in part**.

**IT IS SO ORDERED.**

*Marian W Payson*

MARIAN W. PAYSON
United States Magistrate Judge

Dated:  Rochester, New York
        March 9 , 2009

19