UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

                                    Plaintiff,

                                                    Index No.:  05-CV-6482(CJS)(MWP)

            vs.

NICHOLS GAS & OIL, INC. and
TOWNSEND OIL CORPORATION
d/b/a TOWNSEND OIL & PROPANE,

                                    Defendants.

_____

**DEFENDANT TOWNSEND OIL'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

**THE WOLFORD LAW FIRM LLP**
**James S. Wolford, Esq.**
**Christopher D. Lindquist, Esq.**
**600 Reynolds Arcade Building**
**16 East Main Street**
**Rochester, New York  14614**
**Telephone:  (585) 325-8000**

*May 22, 2009*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................iii

PRELIMINARY STATEMENT ............................................................ 1

STATEMENT OF FACTS................................................................... 3

ARGUMENT.................................................................................... 6

    POINT I    **Townsend, As A Mere Purchaser Of Assets, Is Not Liable For The Liabilities Of Nichols Gas** ............................. 6

        1.    Townsend did not agree to assume any liabilities................................................................... 8

        2.    The asset purchase was not a "de facto merger"................................................................... 8

        3.    Townsend is not a "mere continuation" of Nichols Gas.......................................................... 9

    POINT II    **The EEOC's"Substantial Continuity" Allegations Against Townsend Fail As A Matter Of Law** ................. 9

        A.    Bestfoods and the Limited Scope of "Successor" Liability ............................................... 10

        B.    The Limited Application Of The "Substantial Continuity" Doctrine............................................. 12

            1.    The "Substantial Continuity" Doctrine Under The NLRA ...................................... 12

            2.    The "Substantial Continuity" Doctrine Under Title VII .......................................... 15

        C.    Compensatory And Punitive Damages Are Not Available Against A Mere Purchaser Of Assets Under Title VII ....................................... 17

ii

**POINT III**   **Even Under The "Substantial Continuity" Test, Townsend Is Entitled To Summary Judgment** ........................... 20

        A.     Continuity ........................................................................ 22

        B.     Ability To Provide Relief ...................................................... 24

        C.     Notice ............................................................................. 25

**CONCLUSION** ...................................................................................... 26

## TABLE OF AUTHORITIES

**CASES:**                                                              **Page**

Abdel-Khalek v. Ernst & Young LLP
    1999 WL 190790 (S.D.N.Y. 1999) ................................................................21

Albemarle Paper Co. v. Moody
    422 U.S. 405 (1975).................................................................................. 16

Anderson v. Liberty Lobby, Inc.
    477 U.S. 242 (1986)..................................................................................6

B.F. Goodrich v. Betkoski
    99 F.3d 505 (2d Cir. 1996).........................................................................7

Cargo Partner AG v. Albatrans, Inc.
    207 F. Supp. 2d 86 (S.D.N.Y. 2002) ............................................................7

Celotex Corp. v. Catrett
    477 U.S. 317 (1986)..................................................................................6

EEOC v. Anchor Sign Corp.
    1988 WL 141031 (E.D. Va. 1988) .............................................................23

EEOC v. Barney Skanska Const. Co.
    2000 WL 1617008 (S.D.N.Y. 2000) .................................................. 21, 23, 24

EEOC v. MacMillan Bloedel Containers, Inc.
    503 F.2d 1086 (6th Cir. 1974)..................................................16, 17, 20, 21, 22

EEOC v. Waffle House, Inc.
    534 U.S. 279 (2002)..........................................................................16, 18

Fall River Dyeing & Finishing Corp. v. NLRB
    482 U.S. 27 (1987)..................................................................................14

Ford Motor Co. v. EEOC
    458 U.S. 219 (1982).............................................................................15, 16

Forde v. Kee Lox Man. Co., Inc.,
    584 F.2d 4 (2d Cir. 1978) .......................................................................17, 22

iv

## **CASES:** **Page**

Golden State Bottling Co. v. NLRB
     414 U.S. 168 (1973)................................................................................14, 24

Graham v. James
     144 F.3d 229 (2d Cir. 1998).................................................................6, 7

Howard Johnson Co. v. Detroit Local Joint Exec. Bd.
     417 U.S. 249 (1974)................................................................................17, 22

In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.
     2008 WL 3163634 (S.D.N.Y. 2008) ....................................................7

John Wiley and Sons, Inc. v. Livingston
     376 U.S. 543 (1964)................................................................................13, 22

Landgraf v. USI Film Prod.
     511 U.S. 244 (1994)................................................................................18, 19

Long v. AT&T Inf. Sys., Inc.
     733 F. Supp. 188 (S.D.N.Y. 1990) ....................................................21

New York v. Nat. Svc. Indus., Inc.
     460 F.3d 201 (2d Cir. 2006).................................................................8

New York v. Nat. Svc. Indus., Inc.
     352 F.3d 682 (2d Cir. 2003)..................................7, 8, 9, 11, 12, 13, 19

NLRB v. Burns Inter. Sec. Scv., Inc.
     406 U.S. 272 (1972)................................................................................13

Rojas v. TK Comm., Inc.
     87 F.3d 745 (5th Cir. 1996).................................................................24, 25

Schumacher v. Richards Shear Co.
     59 N.Y.2d 239 (1983)..............................................................................7

Textile Workers Union of Am. v. Lincoln Mills of Alabama
     353 U.S. 448 (1957)................................................................................13

United States v. Bestfoods
     524 U.S. 51 (1998)..........................................................10, 11, 16, 19

v

**CASES:**                                                              **Page**

United States v. Burke
    504 U.S. 229 (1992)...........................................................................18

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted on behalf of Townsend Oil Corp. ("Townsend") in support of its motion for summary judgment seeking dismissal of the claims brought against it by plaintiff, the Equal Employment Opportunity Commission ("EEOC").

The EEOC, on behalf of various "complaining parties," seeks to impose liability on Townsend for alleged Title VII violations committed by co-defendant Nichols Gas & Oil, Inc. ("Nichols Gas"). The EEOC does not allege that Townsend violated Title VII. Indeed, none of the "complaining parties" has ever worked for Townsend. Nonetheless, the EEOC contends that Townsend should be liable for the alleged Title VII violations of Nichols Gas because Townsend purchased certain assets of Nichols Gas in 2005.

The EEOC seeks this highly inequitable result despite the well-settled common law rule that a mere purchaser of assets does not assume the liabilities of the seller absent extraordinary circumstances (e.g., fraud or collusion) that are not present here. Townsend's purchase of certain assets of Nichols Gas was an arm's length transaction between two completely separate business entities. Accordingly, there is no legal basis to impose Title VII liability on Townsend under the well-settled common law rules of successor liability [see Point I, infra].

The EEOC apparently intends to argue that Title VII liability should be imposed on Townsend under the so-called "substantial continuity" doctrine, which is more lenient than the well-settled common law rules. Although the doctrine in the past has been applied to Title VII claims, more recent United States Supreme Court precedent holds

2

that this more lenient test cannot be used to impose Title VII liability on a mere purchaser of assets such as Townsend [see Point II (A), infra].

Even if the "substantial continuity" doctrine for Title VII claims has survived this more recent case law, given the history of the doctrine and the legislative history of Title VII, it is clear that the doctrine is rooted in the equitable powers of the federal courts, and it may be used to impose only equitable relief against a "successor" who has continued a business using the same employees.  Also, because the doctrine itself is an equitable remedy, it may not be used to impose compensatory or punitive damages (as opposed to "equitable" relief) against an alleged successor such as Townsend [see Point II (B) and (C), infra].

Finally, even under the more lenient "substantial continuity" test, Townsend is entitled to summary judgment because it would be highly inequitable to hold Townsend liable for the Title VII violations of Nichols Gas.  Townsend never employed any of the complaining parties.  Townsend is not alleged to have violated Title VII.  Townsend is not alleged to have benefitted from the alleged violations.  There is absolutely no basis to grant equitable relief against Townsend.  Nichols Gas is capable of paying compensatory damages.  Any award against Townsend would be unnecessary and unjust [see Point III, infra].

3

## STATEMENT OF FACTS

**Background**.   Townsend provides various energy products to thousands of homes, businesses, farms and industries throughout Western New York [SMF ¶ 6]. Townsend also has a full-time service department that services and installs furnaces, boilers, fireplace inserts, room heaters and hot water tanks [SMF ¶ 7].   Townsend serves twelve counties in New York on a full-time basis and provides fuel to commercial business, private homes and service stations [SMF ¶ 9].   Kevin P. Brady is the president and sole officer and director of Townsend, and has been since he purchased the company in 1978 [SMF ¶ 5].

**Asset Purchase**.   On or about November 30, 2005, Townsend entered into an "Asset Purchase Agreement" with Wayne Nichols for the purchase of certain assets of Nichols Gas [SMF ¶ 14].   At the time, Wayne Nichols was the owner and President of Nichols Gas.

Pursuant to the terms of the Asset Purchase Agreement, Nichols Gas received over $1.4 million for the following: certain fuel stocks, certain real property, a customer list, miscellaneous inventory, past accounts receivables, office supplies, service parts, propane tanks, pumps, and four vehicles [SMF ¶¶ 62-67].   Nichols Gas also agreed to not compete with Townsend with respect to the customers contained on the customer list [SMF ¶ 62].

Townsend's purchase of certain assets of Nichols Gas did not significantly change Townsend's business operations.   Prior to entering into the Asset Purchase Agreement, Townsend's assets included forty to fifty delivery trucks and vehicles, a

4

120,000 gallon bulk plant, fuel storage tanks, pumps and other similar assets, a three story administrative building in Leroy, and its own customer lists [SMF ¶ 53].

Before and after the asset purchase, Nichols Gas and Townsend were completely separate business entities [SMF ¶¶ 49-56].   They have never had any common shareholders, officers or directors and no common ownership of any kind [SMF ¶ 49].   Other than the Asset Purchase Agreement, there has never been any relationship between the two companies and they have always been separate and distinct [SMF ¶ 50].   Nichols Gas has never had an interest in Townsend, was never a parent or subsidiary of Townsend, and Townsend has never had operations related to the business of Nichols Gas [SMF ¶¶ 49-50].   Nichols Gas and Townsend have never had common management or a centralized control of labor relations, and Nichols Gas was never an agent of Townsend [SMF ¶ 51].

Even their business models were vastly different.   Nichols Gas, like Townsend, supplied fuel to individuals and commercial business [SMF ¶ 52].   However, Townsend was a much larger business and offered many other services not offered by Nichols Gas, such as the service and installation of furnaces, boilers, fireplace inserts, room heaters and hot water tanks [SMF ¶ 52].

Townsend did not acquire all of the assets of Nichols Gas [SMF ¶ 19]. Townsend did not purchase all of the fuel inventory and office supplies of Nichols Gas [SMF ¶ 22].   Eight to ten vehicles, various office furniture, certain inventory, and computers were also not purchased [SMF ¶ 19].

5

Nichols Gas even continued as a separate entity after the Asset Purchase Agreement was executed [SMF ¶ 57]. Wayne Nichols, the owner of Nichols Gas before and after the asset sale, changed the name of the corporate entity to J.N.-IV Corp. [SMF ¶ 57]. This business entity still does business to this day and apparently is the successor to Nichols Gas [SMF ¶¶ 58-59].

The Asset Purchase Agreement did not require the transfer of any employees from Nichols Gas to Townsend, and Townsend had no obligation to hire any former employees of Nichols Gas [SMF ¶ 23]. Townsend had approximately 45 employees [SMF ¶ 10]. Although eleven employees of Nichols Gas became employees of Townsend, most of those employees no longer worked with Townsend five months after execution of the Asset Purchase Agreement [SMF ¶ 27]. The Nichols Gas employees who claim they were the victims of sexual harassment never worked for Townsend and did not work for Nichols Gas at the time of the asset purchase [SMF ¶¶ 47-48].

**EEOC Action**. The EEOC filed the Complaint in this action against only Nichols Gas only on or about September 14, 2005 [SMF ¶ 11]. The Complaint was based on events that allegedly occurred as far back as 1999. The EEOC did not seek relief on behalf of the complaining parties until September 2005 [SMF ¶ 11]. In January 2007, the EEOC moved to amend its Complaint to add Townsend as a party defendant on the theory that Nichols Gas had "merged with," or been "purchased by," Townsend [SMF ¶ 38]. Nichols Gas and Townsend opposed the motion [SMF ¶¶ 39-40]. The EEOC's motion was granted [SMF ¶ 41]. Discovery continued, and now Townsend moves for summary judgment dismissal of the claims against it.

6

## **ARGUMENT**

Townsend is entitled to summary judgment because the record evidence establishes that the EEOC's claims fail as a matter of law.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986)(defendant may establish entitlement to summary judgment by showing absence of evidence to support essential elements of plaintiff's claims).   In order to survive summary judgment, the EEOC must come forward with admissible evidence that would support judgment in its favor.  This it is unable to do.

## **POINT I**

### **TOWNSEND, AS A MERE PURCHASER OF ASSETS, IS NOT LIABLE FOR THE LIABILITIES OF NICHOLS GAS**.

A mere purchaser of assets, such as Townsend, cannot be legally responsible for the liabilities of the seller of those assets.  This bedrock principle of corporate law cannot be lightly set aside.  The narrow exceptions to this rule apply only where there is common ownership between the buyer and seller (not present here), or where the buyer and seller engage in fraud or collusion in an attempt to escape valid liabilities (not even alleged here).  As detailed below, none of the possible exceptions apply to this case, requiring dismissal of the "successor" liability claims against Townsend.

"It is well settled that under both New York state and federal law, the general rule is that a corporation that acquires the assets of another corporation is not liable for the torts of its predecessor."  Graham v. James, 144 F.3d 229, 240 (2d Cir. 1998); see

7

Schumacher v. Richards Shear Co., 59 N.Y.2d 239, 244 (1983) (same).   This rule

"extends to all debts and obligations, not just tort liability."   In re Methyl Tertiary Butyl

Ether Prods. Liab. Litig., 2008 WL 3163634 at *3 n. 29 (S.D.N.Y. 2008).   The rationale

for the rule is that "liabilities adhere to the corporate entity."   Thus, in the context of an

asset purchase, the following principles apply:

> [T]he seller maintains its own corporate identity; the seller's
> shareholders do not retain an interest in the transferred
> assets, **and the seller's creditors must continue to look**
> **to the seller (and the consideration it received) to satisfy**
> **their claims.**

Cargo Partner AG v. Albatrans, Inc., 207 F. Supp. 2d 86, 94 (S.D.N.Y. 2002)(emphasis

added).

In this case, Townsend merely purchased certain assets of Nichols Gas.

Townsend and Nichols Gas are and always have been distinct legal entities.   The

complaining parties, as alleged creditors of Nichols Gas, must look to Nichols Gas – not

Townsend – to satisfy their claims.   Although there are certain narrow exceptions to this

rule, none apply to this case.

A purchaser of assets may become liable for obligations of the seller only in

following circumstances: 1) the buyer expressly or impliedly agrees to assume the

subject liabilities; 2) the transaction may be viewed as a de facto merger or

consolidation; 3) the successor is the "mere continuation" of the predecessor; or, 4) the

transaction is fraudulent.   See New York v. National Services Industries, Inc., 352 F.3d

682, 685 (2d Cir. 2003), citing B.F. Goodrich v. Betkoski, 99 F.3d 505, 515 (2d Cir.

1996).

8

Here, no fraud is alleged, nor is there any factual basis for a fraud allegation. Thus, Townsend may be liable for the alleged Title VII violations of Nichols Gas only if: 1) Townsend agreed to assume the potential Title VII liability of Nichols Gas; 2) the Asset Purchase Agreement constituted a "de facto merger" of Nichols Gas into Townsend; or 3) Townsend is a "mere continuation" of Nichols Gas.  See National Services Industries, Inc., 352 F.3d at 685.  As detailed below, none of these exceptions apply.

1.    *Townsend did not agree to assume any liabilities*.    Pursuant to the unambiguous terms of the Asset Purchase Agreement, Townsend did not agree to assume any liability of Nichols Gas.  Section Ten of the Asset Purchase Agreement explicitly states that Townsend did not assume any liabilities of Nichols Gas [SMF ¶ 37].

2.    *The asset purchase was not a "de facto merger.*"  A "de factor merger" involves continuity of ownership, management, personnel, physical location, assets, and general business operation, and an assumption by the purchaser of liabilities necessary to carry on the business.  See New York v. National Service Industries, Inc., 460 F.3d 201, 209 (2d Cir. 2006).  This exception cannot apply unless there is some ownership interest in common before and after the transaction.  See id. at 215.  Although the EEOC conclusorily alleges that "Townsend [ ] purchased Defendant Nichols Gas" [Am. Compl. ¶ 6], this allegation is belied by the plain language of the Asset Purchase Agreement, and finds no support in the record [SMF ¶¶ 16-22].  There has never been any common ownership between Nichols Gas and Townsend [SMF ¶ 49].  Accordingly, this exception cannot apply.

9

3.    _Townsend is not a "mere continuation" of Nichols Gas_.    The "mere continuation" test gives rise to successor liability only where there is "a single corporation after the transfer of assets, with an identity of stock, stockholders, and directors between the successor and predecessor corporations."    National Services Industries, Inc., 352 F.3d at 685.    Similar to the de facto merger exception, this exception cannot apply because there has never been any common ownership between Townsend and Nichols Gas [SMF ¶ 49].

## POINT II

## THE EEOC'S"SUBSTANTIAL CONTINUITY" ALLEGATIONS AGAINST TOWNSEND FAIL AS A MATTER OF LAW.

In addition to the EEOC's erroneous factual allegations regarding the nature of the transaction between Nichols Gas and Townsend, the EEOC apparently relies upon the wrong legal standard in its pursuit of Townsend.    The EEOC ignores, or seeks to avoid, the general common law rules detailed above, which are based on the well-settled and equitable premise that an innocent party should not be held liable for the wrongdoing of others, especially where the party is not alleged to have benefitted from the alleged wrongdoing.

Instead, the EEOC apparently seeks to rely on the "substantial continuity" doctrine [Am. Comp. ¶¶ 7-12].    This much more lenient standard has been applied by the Supreme Court in certain cases to impose equitable remedies on "successors" under the National Labor Relations Act ("NLRA").    Some federal courts in the past have also applied this standard to Title VII cases.    However, recent precedent from the

10

Supreme Court and the Second Circuit indicates that the "substantial continuity" doctrine should not be applied to Title VII claims because it ignores the well-settled common law rules of successor liability identified above.

At a minimum, Title VII compensatory and punitive damages are not available against "successors" under the "substantial continuity" doctrine.  The doctrine derives solely from the federal courts' equitable powers to fashion remedies to address NLRA and Title VII violations.   However, compensatory and punitive damages are not equitable remedies.  Indeed, these "non-equitable" damages were not available for Title VII violations until 1991 – well after certain federal courts determined that the "substantial continuity" doctrine might be appropriate for Title VII cases.  Moreover, the 1991 amendments to Title VII authorize compensatory damages against only those defendants who have engaged in "unlawful intentional discrimination," which Townsend certainly has not.  Accordingly, there is no legal basis to assess these damages against a completely innocent party such as Townsend

A.    *Bestfoods* **and the Limited Scope of "Successor" Liability.**

With respect to liability created by a federal statute such as Title VII, the Supreme Court has held, where the statute does not specifically address the issue of successor liability, the federal courts are prohibited from disregarding the "time-honored common law rules" identified above in Point I, <u>supra</u>.  <u>See</u> <u>United States v. Bestfoods</u>, 524 U.S. 51, 63 (1998).  The Second Circuit has confirmed that the "substantial continuity" doctrine is not part of the general common law and cannot be used to circumvent the well settled rule that a mere purchaser of assets cannot be liable for

obligations of the seller.   These principles preclude the EEOC from invoking the "substantial continuity" doctrine in an attempt to impose Title VII liability on Townsend for the prior violations of Nichols Gas.

The <u>Bestfoods</u> case involved whether a parent corporation could be liable for the CERCLA violations of its subsidiary.  <u>Id</u>. at 70.  The Supreme Court determined that, unless Congress states otherwise, the above-cited common law rules operate to prohibit the federal courts from expanding successor liability under federal statutes:

> CERCLA is thus like many another congressional enactment in giving no indication that the entire corpus of state corporation law is to be replaced simply because a plaintiff's cause of action is based upon a federal statute, and the failure of the statute to speak to a matter as fundamental as the liability implications of corporate ownership demands application of the rule that in order to abrogate a common-law principle, the statute must speak directly to the question addressed by the common law.

<u>Id</u>. at 63 (internal citations and quotations omitted).  Thus, in <u>Bestfoods</u> the Supreme Court rejected the district court's expanded test for "successor" liability under CERCLA because that test "disregard[ed] entirely . . . [the] time-honored common law rule[s]." <u>Id</u>. at 70.

The Second Circuit has relied on the principles espoused in <u>Bestfoods</u> to find that the "substantial continuity" doctrine – which the EEOC relies in this case in an attempt to hold Townsend liable – is **not** part of the general federal common law and, absent Congressional authorization, it may **not** be invoked to impose statutory liability on the mere purchaser of assets.  Indeed, in <u>New York v. National Services Industries, Inc.</u>, 352 F.3d 682 (2d Cir. 2003), the Second Circuit, relying on <u>Bestfoods</u>, abrogated

12

its prior ruling that had used the "substantial continuity" test for CERCLA liability.  <u>See</u>

<u>National Services Industries</u>, 352 F.3d at 685:

> [T]he substantial continuity test **is not a sufficiently well established part of the common law** of corporate liability to satisfy <u>*Bestfoods*</u>' dictate that common law must govern.

<u>National Services Industries</u>, 352 F.3d at 685 (emphasis added).  The EEOC's attempt

to impermissibly expand Title VII liability must be rejected.

**B.     <u>The Limited Application Of The "Substantial Continuity" Doctrine</u>.**

In holding that the "substantial continuity" doctrine is not part of the common law,

the Second Circuit acknowledged that the test was "well established in the area of labor

law."   <u>See</u> <u>National Services Industries</u>, 352 F.3d at 686.   This statement merely

acknowledges that the Supreme Court has interpreted the NLRA as providing

Congressional authority for the federal courts to fashion remedies to fulfill the purposes

of the statute.    Pursuant to this authority, the Supreme Court has endorsed the

"substantial continuity" doctrine to permit certain equitable relief against "successors"

under the NLRA.

Because the "substantial continuity" doctrine derives solely from the equitable

powers of the federal courts, it may be applied only to further the goals of Title VII in an

equitable manner.   In this case it would be highly inequitable to impose liability on an

innocent party such as Townsend.

1.     <u>The "Substantial Continuity" Doctrine Under The NLRA</u>.

The substantial continuity doctrine under the NLRA was developed by the

Supreme Court pursuant to the federal courts' equitable authority under Section 301 of

13

the NLRA to "fashion a body of federal law for the enforcement of [ ] collective bargaining agreements." National Services Industries, 352 F.3d at 686, quoting Textile Workers Union of Am. v. Lincoln Mills of Alabama, 353 U.S. 448, 451 (1957). The test is not part of federal common law, "but rather represent[s] law fashioned for the purpose of enforcing [NLRA] section 301." Id. Thus, the Second Circuit's reference in National Services Industries to a "labor law" exception to the general successor liability rules did not refer to all instances where the employer-employee relationship was implicated, but only cases arising under the NLRA.

The cases underlying the application of the "substantial continuity" doctrine to the NLRA make clear that it is a limited equitable remedy, not a wholesale departure from the common law that imposes liability on innocent parties. In John Wiley and Sons, Inc. v. Livingston, 376 U.S. 543 (1964), the Supreme Court found that, where a company that was obligated to arbitrate disputes under a collective bargaining agreement merged with another company which had no such duty, the post-merger employer had a duty to arbitrate. This duty was based on "the preference of national labor policy for arbitration" and the principle that a collective bargaining contract "is not an ordinary contract." Id. at 550.

Likewise, in NLRB v. Burns International Security Services, Inc., 406 U.S. 272 (1972), the Supreme Court recognized that the substantial continuity doctrine was to be narrowly applied to fulfill the goals of the NLRA. The Court held that a successor employer may be required to bargain with the existing union. Notably, the successor was not bound by the substantive provisions of the existing collective bargaining

14

agreement.  The successor was merely required to recognize the union for bargaining purposes. Id. at 287-288.

This limited nature of the doctrine was further confirmed in Fall River Dyeing & Finishing Corp. v. NLRB, 482 U.S. 27 (1987), where the successor had purchased a portion of a recently shutdown dying works, and hired enough of the former company's unionized employees to make up a majority of its workforce.  The NLRB ordered the new employer to bargain with the union and the Supreme Court affirmed the NLRB's order.  The Supreme Court endorsed this result because it furthered the NLRA's policy of "industrial peace."  Id. at 43-44.  Again, substantive obligations of the union contract were not imposed on the successor – only a duty to negotiate.

Monetary relief was permitted against a "successor" in Golden State Bottling Co. v. NLRB, 414 U.S. 168 (1973), but even that case falls well short of supporting the notion that a federal court may completely ignore the common law principles stated above to impose liabilities on a completely innocent purchaser of assets.  In that case, the NLRB had ordered Golden State and "its officers, agents, successors, and assigns" to reinstate with back pay an employee whose discharge was found by the Board to have been an unfair labor practice.  In a subsequent back-pay specification proceeding, the NLRB found that equitable relief was available against the purchaser of the business because it had continued the business without interruption or substantial changes in method of operation or supervisory personnel.  Furthermore, the purchaser knew of the outstanding NLRB order at the time of the acquisition.  See Golden State, at 170.

15

The Supreme Court's decision to uphold the NLRB's findings was based on its equitable powers to further the goals of the NLRA. Id. at 182. The court noted "the employees' legitimate expectation is that the unfair labor practices will be remedied," and the prospect that "a successor's failure to do so may result in labor unrest." Id. at 184. Upon "balancing the equities," the court concluded that the successor could be enjoined to reinstate the employee with back pay because the successor was "in the best position to remedy such unfair labor practices most effectively" and the successor was the "beneficiary of the unremedied unfair labor practices." See id. at 171-172, n. 2.

Thus, the history of the doctrine makes clear that the "substantial continuity" doctrine was developed by the Supreme Court to further the policies of the NLRA: avoiding of labor unrest; encouraging the exercise of bargaining rights guaranteed by the NLRA; and protecting victimized employees. See id. at 182. Because of its equitable nature, the doctrine has not been used to impose unlimited and unspecified liabilities onto "successors," but has been employed to permit the NLRB and the federal courts to use their equitable powers to remedy unfair labor practices – but only where the necessary relief can be implemented at a minimal cost to the innocent successor.

    2.    The "Substantial Continuity" Doctrine Under Title VII.

In light of the equitable nature of the "substantial continuity" doctrine, it cannot be employed to indiscriminately impose Title VII liability or innocent parties. "Title VII's primary goal, of course, is to end discrimination; the victims of job discrimination want jobs, not lawsuits. But when unlawful discrimination does occur, Title VII's secondary, fallback purpose is to compensate the victims for their injuries." Ford Motor Co. v.

16

EEOC, 458 U.S. 219, 230 (1982).   To accomplish this goal, the remedies available under Title VII were explicitly modeled after those available under the NLRA:

> Section 706(g) [providing for equitable remedies under Title VII] was expressly modeled on the analogous remedial provision of the [NLRA]. . . . The principles developed under the NLRA generally guide, but do not bind, courts in tailoring remedies under Title VII.

Ford Motor Co., 458 U.S. at 226 (internal quotation omitted).   In determining the appropriate equitable remedies that might be available under Title VII, the Supreme Court has recognized that the federal courts should be mindful of the rights of "innocent third parties."  Id. at 239-240.

Unlike the NLRB's broad authority to fashion remedies to further the purposes of the NLRA, the administrative body charged with enforcing Title VII, the EEOC, has no such authority.  The Title VII provisions permitting equitable relief make clear that the court, not the EEOC, decides whether a particular remedy is "appropriate" in any given case.  See EEOC v. Waffle House, Inc., 534 U.S. 279, 301 (2002), quoting Albemarle Paper Co. v. Moody, 422 U.S. 405, 415-416 (1975) ("The [Title VII] scheme implicitly recognizes that there may be cases calling for one remedy but not another, and . . . these choices are, of course, left in the first instance to the district courts").  Thus, the EEOC has the right to bring suit, but no authority to prescribe or select remedies.

Prior to Bestfoods and the 1991 amendments to Title VII that now permit compensatory and punitive damages, the argument was successfully made that the "substantial continuity" test under the NLRA was suitable for Title VII.  In EEOC v. MacMillan Bloedel Containers, Inc., 503 F.2d 1086 (6th Cir. 1974), the Sixth Circuit

17

determined that the NRLA's "substantial continuity" test could be adapted to Title VII. Noting that remedies under Title VII were modeled after the NLRA, the Sixth Circuit emphasized that "the liability of a successor is not automatic, but must be determined on a case by case basis." Id. at 1094. More importantly, the court in MacMillan indicated that successor liability under Title VII was justified where "it is the **successor** who has benefited from the discriminatory employment practices of its predecessor." Id. at 1092 (emphasis added). The Sixth Circuit adopted the nine-factor test used to determine successor liability under the NLRA. Id.

Following the Sixth Circuit's lead, the "substantial continuity" test was applied in Title VII cases by various federal courts, including the Second Circuit. For instance, in Forde v. Kee Lox Manufacturing Company, Inc., 584 F.2d 4 (2d Cir. 1978), the Second Circuit held that a purchaser of assets could not be liable for the Title VII violations of the seller because there was no "substantial continuity in the identity of the work force across the change in ownership." Id. at 6, quoting Howard Johnson Co. v. Detroit Local Joint Executive Board, 417 U.S. 249 (1974) (NLRA case).

Given this history of the doctrine, and the history of Title VII, this extremely limited equitable remedy cannot apply to Townsend in this matter, as detailed below in Point III, infra.

### C. Compensatory And Punitive Damages Are Not Available Against A Mere Purchaser Of Assets Under Title VII.

The EEOC's claim for compensatory and punitive damages against Townsend fails as a matter of law. The only authority to apply the doctrine derives from the court's equitable powers. Compensatory and punitive damages are not equitable remedies.

18

Even if they were, it would be highly inequitable to impose them on an innocent purchaser of assets.  In any case, the 1991 amendments to Title VII permit such damages against only those who actually engage in intentional discrimination, not mere "successors" or a purchaser of assets.

Title VII was enacted in 1964, providing for private actions by individual employees and public actions by the Attorney General in cases involving a "pattern or practice" of discrimination.  In 1972, Congress amended Title VII to authorize the EEOC to bring its own enforcement actions, and further authorized the courts to enjoin unlawful employment practices and to order various forms of equitable relief.  In 1991, Congress again amended Title VII to allow, for the first time, the recovery of compensatory and punitive damages against employers that engage in "intentional discrimination."  See generally Waffle House, 534 U.S. at 286-287.

Prior to the 1991 amendments, Title VII provided for only "equitable" remedies. Landgraf v. USI Film Products, 511 U.S. 244, 252 (1994).  Compensatory damages were not available.  Monetary relief was available only through back pay, which generally included "only an amount equal to the wages the employee would have earned from the date of discharge to the date of reinstatement, along with lost fringe benefits such as vacation pay and pension benefits."  United States v. Burke, 504 U.S. 229, 239 (1992).

19

The addition of compensatory and punitive damages remedy in 1991 significantly expanded the monetary relief potentially available to plaintiffs who would have been entitled to only back pay under prior law:

> [T]he circumscribed remedies available under Title VII before the 1991 Act stand in marked contrast not only to those available under traditional tort law, but under other federal antidiscrimination statutes, as well.  . . . [T]he 1991 Act effects a major expansion in the relief available to victims of employment discrimination.

Landgraf, 511 U.S. at 255.

Thus, the case law applying the substantial continuity doctrine to Title VII evolved prior to 1991, when both Title VII and the NLRA afforded only "equitable" remedies.  No authority was granted to the federal courts under the 1991 amendments to Title VII to impose liability for compensatory damages on a "successor."   Indeed, the 1991 amendments permit the federal courts to impose compensatory and punitive damages on only those who have "engaged in unlawful intentional discrimination."   42 U.S.C. 2000e-5.

Townsend is not alleged to have engaged in any such conduct.   Pursuant to Bestfoods and National Services Industries, there is no legal authority to impose compensatory and punitive damages on a completely innocent party such as Townsend.

20

## POINT III

### EVEN UNDER THE "SUBSTANTIAL CONTINUITY" TEST, TOWNSEND IS ENTITLED TO SUMMARY JUDGMENT.

Even if the "substantial continuity" doctrine were applied in this case, Townsend is entitled to summary judgment.  As noted above, the doctrine derives from the court's equitable powers, which must be employed to further the goals of Title VII.  Townsend is not alleged to have violated Title VII or engaged in any discriminatory practice.  None of the "complaining parties" have ever been employed by Townsend.  "Equitable relief" against Townsend is completely unnecessary and would not serve any of the laudatory goals of Title VII.  Compensatory and punitive damages are not available as a matter of law.  Townsend is entitled to summary judgment.

In the Title VII context, the "substantial continuity" test guides the Court to engage in a balancing of the equities to determine whether a "successor" should be held to answer for the violations of another.  As noted above, the test was intended to be employed on a case by case basis, MacMillan, 503 F.2d at 1090, and is limited by the scope of the equitable powers of the courts [see Point II (B), supra].

The "substantial continuity" doctrine has been associated with a nine-factor test borrowed from the NLRA context, as outlined by the Sixth Circuit in MacMillan:

> (1) whether the successor company had notice of the charge; (2) the predecessor's ability to provide relief; (3) whether there has been substantial continuity of business operations; (4) whether the successor uses the same facility; (5) whether the successor uses the same or substantially the same work force; (6) whether the successor uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether the successor uses the same

21

> machinery, equipment, and methods of production; and (9) whether
> the successor produces the same product.

EEOC v. Barney Skanska Const. Co., L 1617008, at *2 (S.D.N.Y. 2000), citing

MacMillan, 503 F.2d at 1094; see Abdel-Khalek v. Ernst & Young LLP, 1999 WL

190790, at *7 (S.D.N.Y. April 7, 1999) (citing nine-factor MacMillan test).

No one factor is controlling, and the inquiry is "fact-specific." Barney Skanska

Const. Co., WL 1617008, *2. Furthermore, the burden is on the EEOC to establish that

these factors warrant holding the alleged successor liable for the violations of the

predecessor. See e.g. Barney Skanska, at *3 ("The EEOC has the burden of

affirmatively alleging that Skanska had notice of the claim."). Of these nine factors, the

following are considered most important:  1) notice of the "charge"; 2) continuity of the

business; and, 3) the ability to provide relief. Id. at *3-*5; see Long v. AT&T Information

Systems, Inc., 733 F. Supp. 188, 208 (S.D.N.Y. 1990)(notice and the ability of the

predecessor to provide relief have been deemed "critical" to this inquiry).

Weighing these factors, it would be highly inequitable to impose "successor"

liability on Townsend.  Townsend did not merely continue the business of Nichols Gas.

Townsend, the much larger business, simply purchased a large portion of the assets of

Nichols Gas.

The alleged victims of discrimination have never worked for Townsend.

Equitable relief against Townsend would be completely pointless.  Townsend is not

alleged to have violated Title VII.  There is nothing to "remedy" with respect to

Townsend.  Moreover, Nichols Gas was paid substantial sums by Townsend for the

assets that were purchased, establishing that Nichols Gas is or was able to satisfy any

22

award of damages. Although, as noted above, damages are unavailable against Townsend as a matter of law, but even if they were available equity would preclude imposition of such a penalty.

### A.   Continuity

The Second Circuit has held that "[f]or an employer to be considered a successor there must be 'substantial continuity of identity in the business enterprise before and after a change.'" Forde v. Kee Lox Mfg. Co., 584 F.2d 4, 5-6 (2d Cir. 1978), quoting John Wiley & Sons v. Livingston, 376 U.S. 543, 551 (1964). This requires a "substantial continuity in the identity of the work force across the change in ownership." Id., quoting Howard Johnson Co. v. Detroit Local Joint Executive Bd., 417 U.S. 249, 263 (1974). Indeed, the "substantial continuity" factors relate to whether Townsend "continued" Nichols Gas with the same plant, same work force, same supervisory personnel, same jobs under the same working conditions, same machinery and equipment, and producing the same product. See MacMillan, at 1094.

In evaluating these factors, it is important to note that Townsend and Nichols Gas were always two separate businesses. There was no "merger" as the EEOC alleges – only an asset purchase. Townsend was a much larger business that purchased certain assets from Nichols Gas [SMF ¶¶ 49-56]. After the purchase of those assets, Townsend was the same company that it had always been. Nichols Gas continued on with its separate corporate existence, auctioned off some of its remaining assets, and eventually became J.N. – IV Corp. [SMF ¶¶ 57-59]. Nichols Gas did not become Townsend, and Townsend is not the former Nichols Gas.

23

In <u>EEOC v. Barney Skanska Const. Co.</u>, 2000 WL 1617008, (S.D.N.Y. 2000), the Southern District found that successor liability could not be imposed in the context of an asset purchase where, as here, "[a]ssets that were included in the Agreement were spelled out in the attached schedules" and the asset purchase agreement contained no provision regarding the hiring of any of the seller's employees by the purchaser.  <u>See</u> <u>id</u>. at *4.  Indeed, in this case, none of the "complaining parties" ever came to work for Townsend [SMF ¶¶ 47-48].

After the asset purchase 11 Nichols Gas employees came to work for Townsend, but these were in addition to the 45 employees that already worked for Townsend [SMF ¶¶ 54-55].   Moreover, Townsend cannot be a "successor" because there was no continuity of management or ownership.  Townsend's management stayed the same, and Wayne Nichols (the manager of Nichols Gas), did not assume any management duties at Townsend [SMF ¶¶ 28-31].  Moreover, Townsend was not required to hire any of Nichols Gas employees [SMF ¶ 23].  <u>See</u> <u>Barney Skanska Const. Co.</u>, 2000 WL 1617008, at *4-*5(no transfer of employees weighs against "successor" liability); <u>see also</u> <u>EEOC v. Anchor Sign Corp.</u>, 1988 WL 141031, at *5 (E.D. Va. 1988) (no successor liability where alleged wrongdoer had "merely disposed of certain of its assets" when it sold them to the successor).

24

**B.** **Ability to Provide Relief**

To hold Townsend liable as a successor, the EEOC must demonstrate that Nichols Gas was unable to provide the requested relief when this action was commenced and that Townsend could provide the relief at minimal cost. See EEOC v. Barney Skanska Const. Co., 2000 WL 1617008, at *5 (S.D.N.Y. 2000)(even where predecessor had been dissolved by the time of the summary judgment motion, proper inquiry was whether the predecessor could provide the requested relief at the time the action was commenced by the EEOC); see also Golden State Bottling, 414 U.S. at 171-172 (successor liability may be imposed where successor can provide relief at minimal cost).

There is no alleged ongoing violation of Title VII, so injunctive relief is unnecessary. The EEOC is also unable to justify imposing relief against Townsend because Nichols Gas was paid substantial sums in an arms length sale of its assets, indicating that the wrongdoer is able to compensate its alleged victims [SMF ¶¶ 60-68]. Even if Nichols Gas may be unable to currently provide relief, that is not basis to hold Townsend liable. The "substantial continuity" test does not seek to impose liability at any cost, but only where it is equitable. Absent some allegation of a fraudulent transfer (which is not made here), it makes no sense to hold Townsend liable simply because Nichols Gas, the wrongdoer, may not be able to pay. See Rojas v. TK Communications, Inc., 87 F.3d 745, 750-751 (5th Cir. 1996)(summary judgment was properly granted to alleged successor).

25

Indeed, in Rojas, even where the purchaser of the business had notice of the alleged violations and continued the business after the purchase, the Fifth Circuit affirmed summary judgment in favor of the alleged successor, explaining that it would be unjust to impose liability on the alleged successor "for the mere purpose of enhancing [complainant's] ability to collect a money judgment." Id. at 750. That appears to be the EEOC's goal in this action against Townsend. The EEOC's attempt to hold Townsend liable should be rejected because this result would be highly inequitable, and thus completely at odds with the substantial continuity doctrine.

Although the EEOC apparently believes that injunctive relief against Townsend is warranted on the ground that any injunctive relief against Nichols Gas will be meaningless, it would be equally meaningless to issue an injunction against Townsend where there is no allegation of wrongdoing by Townsend. A prerequisite to injunctive relief is that some harmful action is imminent. There is no plausible argument for any equitable relief against Townsend.

C.    **Notice**.

Townsend does not contest that "notice" of the EEOC's pending action was given prior to the asset sale. However, this is only one factor and, given the circumstances of this case, it would be highly inequitable to require Townsend to pay for the violations of Nichols Gas merely because it knew about the EEOC charges against Nichols Gas prior to the asset purchase. See Rojas, 87 F.3d at 751.

26

## CONCLUSION

For the foregoing reasons, as well as for the reasons set forth in the accompanying attorney's declaration and Local Rule 56.1 Statement of Undisputed Material Facts, it is respectfully requested that the Court grant Townsend's motion for summary judgment.

Dated:    May 22, 2009

s/ James S. Wolford
James S. Wolford, Esq.
Christopher D. Lindquist, Esq.
**THE WOLFORD LAW FIRM** LLP
*Attorneys for Defendant Townsend Oil
Corporation, d/b/a Townsend Oil & Propane*
600 Reynolds Arcade Building
16 East Main Street
Rochester, New York 14614
Telephone:  (585) 325-8000
e-mail:  jwolford@wolfordfirm.com