UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

EQUAL EMPLOYMENT OPPORTUNITY                    :
COMMISSION,                                     :
                                                :       Civil Action No.
                                                :       05-CV-6482 (CJS) (MWP)
                    Plaintiff,                  :
                                                :
v.                                              :
                                                :       (REDACTED VERSION
NICHOLS GAS & OIL, INC. and                     :       FILED ELECTRONICALLY
TOWNSEND OIL CORPORATION                        :       PURSUANT TO CONF. ORDER)
d/b/a/ TOWNSEND OIL & PROPANE,                  :
                                                :
                    Defendants                  :
-------------------------------------------------------------x


**PLAINTIFF EEOC'S MEMORANDUM OF LAW IN OPPOSITION TO TOWNSEND
OIL CORPORATION, d/b/a, TOWNSEND OIL & PROPANE'S
MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF EEOC'S
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................iii-iv

I.   INTRODUCTION...........................................................................................1

II.  FACTUAL BACKGROUND............................................................................2

   A.   The Charging Party And Nine Additional Claimants Faced Egregious
        Sexual Harassment While Employed By Nichols Gas............................2

   B.   Townsend Admits It Had Notice Of The EEOC Charge & Lawsuit
        At The Time It Purchased Nichols Gas And Proceeded With the Sale
        Nonetheless Based On A Stated Desire To Expand Its Business.................3

   C.   Townsend Maintained A Continuity Of Operations Following Its
        Purchase of Nichols Gas...............................................................5

   D.   Nichols Gas Cannot Provide Monetary or Injunctive Relief.....................7

III. ARGUMENT..................................................................................................9

   A.   Title VII Successor Liability Is Based On Notice Of Allegations To
        The New Owner, Continuity Of Operations Following The Sale, And The
        Predecessor's Inability To Provide Financial And/Or Injunctive Relief.......10

   B.   Based On These Well Settled Legal Standards Of Title VII
        Successor Liability, Townsend's Motion For Summary
        Judgment Must Be Denied............................................................12

        1.   Townsend Is Bound By The Law Of The Case; Magistrate
             Judge Payson Has Already Rejected Townsend's Arguments
             In This Litigation...............................................................12

        2.   Defendant Again Attempts To Rely On Inapplicable Law: *Forde*
             Remains The Law Of The Second Circuit Governing Title VII
             Successor Liability..............................................................15

        3.   Title VII Successor Liability Does Not Require That Townsend
             Employed Claimants Or Participated In Any Wrongdoing.................16

        4.   Townsend's Argument That Title VII Successor Liability Only Allows
             For Injunctive Relief Defies One Of The Key Rationales Underlying The
             Premise of This Doctrine – That Claimants Must Not Be Left Without
             Financial Relief After Facing Employment Discrimination.................17

i

**C.**    **Based On These Well Settled Legal Standards Of Title VII
Successor Liability EEOC's Cross-Motion for Summary
Judgment Must Be Granted Because All Required Factors
Are Present Here**.................................................................................17

1.    Townsend Had Undisputed, Clear and Sufficient Notice Regarding
the EEOC Charge, Determination & Litigation ...........................17

2.    Townsend Maintained A Substantial Continuity Of Business
Operations Following Its Purchase Of Nichols Gas & Oil, Inc. ...........18

3.    Nichols Gas Is Unable To Provide Sufficient Financial Or
Injunctive Relief In This Matter..............................................20

**IV.**   **CONCLUSION**.................................................................23

## TABLE OF AUTHORITIES

*Abdel-Khalek v. Ernst & Young LLP,*
97-4514, 1999 U.S. Dist. LEXIS 2369, at *1 (S.D.N.Y. Mar. 5, 1999)............11, 15, 18, 20, 21

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)..........................................9

*Arizona v. California,* 460 U.S. 605, 618 (1983).......................................12, 13

*Brzozowski v. Corr. Physician Servs.,* 360 F.3d 173 (3d Cir. 2004)..................................11

*Chao v. Concrete Mngt. Resources, L.L.C.,*
Civ. 08-2501, 2009 U.S. Dist. LEXIS 18619 (D. Kan. March 5, 2009) ...........................12

*Cobb v. Contract Transport, Inc.,* 452 F.3d 543 (6th Cir. 2006)....................................15

*Criswell v. Delta Air Lines, Inc.,* 868 F.2d 1093 (9th Cir. 1989)....................................11

*De Johnson v. Holder,* 564 F.3d 95 (2d Cir. 2009)......................................13

*Dobrich v. General Dynamics Corp.,* 106 F. Supp. 2d 386 (D. Conn. 2002).......................21

*EEOC v. Barney Skanska Constr. Co.,*
99-Civ-2001, 2000 U.S. Dist. LEXIS 15713 (S.D.N.Y. Oct. 27, 2000)............................15

*EEOC v. Cox,*
Civ. 3-99-1184, 2001 U.S. Dist. LEXIS 25673 (M.D. Tenn. July 2, 2001)..................17, 22

*EEOC v. Everdry Marketing & Management, Inc., et al.,*
556 F. Supp. 2d 213 (W.D.N.Y. 2008)......................................................21

*EEOC v. G-K-G, Inc.,* 39 F.3d 740 (7th Cir. 1994)......................................9, 11

*EEOC v. Local 638,*
71-cv-2877, 1988 U.S. Dist. LEXIS 1862 (S.D.N.Y. Mar. 9, 1988)..............................3, 22

*EEOC v. MacMillan Bloedel Containers, Inc.,* 503 F.2d 1086 (6th Cir. 1974)...............passim

*EEOC v. Nichols Gas & Oil, Inc.,* 518 F. Supp. 2d 505 (W.D.N.Y. 2007)...................passim

*EEOC v. Rockwell,* 36 F. Supp. 2d 1056 (N.D. Ill. 1999)............................................22

*EEOC v. Sage Realty Corp.,* 87 F.R.D. 365 (S.D.N.Y. 1980)..............................11, 16-17

*EEOC v. Sage Realty Corp.,* 507 F. Supp. 599 (S.D.N.Y. 1981)............................11, 18

iii

*EEOC v. Stephen T. Cox, Inc.*,
3-99-1184, 2001 U.S. Dist. LEXIS 25674 (M.D. Tenn. July 3, 2001)...........................17, 22

*EEOC v. SWP, Inc.*, 153 F. Supp. 2d 911 (N.D. Ind. 2001)..............................................19

*Fall River Dyeing v. Nat'l Labor Relations Bd.*, 482 U.S. 27 (1987)................................19

*Fennell v. TLB Plastics Corp.*,
Civ. 84-8775, 1989 U.S. Dist. LEXIS 8738 (S.D.N.Y. July 28, 1989).....................11, 17, 20

*Forde v. Kee Lox Manuf.*, 584 F.2d 4 (2d Cir. 1978).................................................passim

*Golden State Bottling Co. v. NLRB*, 414 U.S. 168 (1973)................................................10

*Gorham-Dimaggio v. Countrywide Home Loans, Inc.*,
08-019, 2009 U.S. Dist. LEXIS 52078 (N.D.N.Y. June 19, 2009)....................................13

*Hughley v. GM.*, 67 F.3d 129 (6th Cir. 1995)...........................................................11

*In re National Airlines, Inc.*, 700 F.2d 695 (11th Cir. 1983)........................................11

*John Wiley & Sons v. Livingston*, 376 U.S. 543 (1964).................................................10

*Kolosky v. Anchor Hocking Corp.*, 585 F. Supp. 746 (W.D. Pa. 1983)...............................22

*L.I. Head Start Child Dev. Servs. v. Econ. Opportunity Comm'n*,
558 F. Supp. 2d 378 (E.D.N.Y. 2008)....................................................................13

*Marcella v. Capital Dist. Physician's Health Plan, Inc.*,
293 F.3d 42 (2d Cir. 2002)..............................................................................14

*McCarthy v. Manson*, 714 F.2d 234 (2d Cir. 1983)......................................................14

*Molfese v. Fairfaxx Corp.*,
No. 3:05cv317, 2006 U.S. Dist. LEXIS 32468 (D. Conn. May 12, 2006).............................16

*New York v. Nat. Servs. Indus., Inc.*, 352 F.3d 682 (2d Cir. 2003)........................14, 15, 16

*NLRB v. Hudson River Aggregates, Inc.*, 639 F.2d 865 (2d Cir. 1981)...............................18

*Novella v. Westchester County*,
No. 2192, 2007 U.S. Dist. LEXIS 66235 (S.D.N.Y. Sept. 10, 2007)..................................13

*Oliver v. Cole Gift Centers, Inc.*, 85 F. Supp.2d 109 (D. Conn. 2000)...............................21

*Parker v. Metro. Transp. Auth.*, 97 F. Supp. 2d 437 (S.D.N.Y. 2000)...............................15

*Quinn v. Nassau County Police Dep't*, 53 F. Supp. 2d 347 (E.D.N.Y. 1999)......................21

*Rojas v. TK Commc'n.*, 87 F.3d 745 (5th Cir. 1996)....................................................12

*Rowe Entm't, Inc. v. William Morris Agency*,
98-8272, 2005 U.S. Dist. LEXIS 75 (S.D.N.Y. Jan. 5, 2005).......................................16

*Scottish Air Int'l v. British Caledonian Group, PLC*, 152 F.R.D. 18 (S.D.N.Y. 1993).............13

*Shales v. Lanas Construction, Inc.*,
No. 07-2970, 2009 U.S. Dist. LEXIS 17482 (N.D. Ill. March 4, 2009)............................18

*Stevens v. Coach U.S.A.*, 386 F. Supp. 2d 55 (D. Conn. 2005)......................................16

*Thomas v. Arn*, 474 U.S. 140 (1985)................................................................14

*Trujillo v. Longhorn Mfg. Co., Inc.*, 694 F.2d 221 (10th Cir. 1982)................................11

*United States v. Adegbite*, 877 F.2d 174 (2d Cir. 1989)................................................13

*United States v. Bestfoods*, 524 U.S. 51 (1998).........................................passim

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245 (2d Cir. 1992)....................13

*Wells v. Continental Baking Co.*, 43 Fair Empl. Prac. Cas. (BNA) 1185 (W.D.N.Y. 1987) ......11

*Worth v. Tyler*, 276 F.3d 249 (7th Cir. 2001).........................................................15

## I.   INTRODUCTION

Plaintiff EEOC commenced an action against Nichols Gas & Oil ("Nichols Gas") in September 2005 on behalf of a class of female employees alleging that Nichols Gas engaged in sexual harassment, retaliation, and constructive discharge in violation of Title VII of the Civil Rights Act of 1964.  On October 1, 2007 EEOC filed an Amended Complaint naming Townsend Oil Corporation d/b/a Townsend Oil & Propane ("Townsend") as a Title VII successor defendant to Nichols Gas.[1]  Townsend has now moved for summary judgment claiming and EEOC hereby opposes Townsend's Motion and cross-moves for summary judgment.  EEOC seeks a determination that Townsend is an appropriate Title VII successor defendant to Nichols Gas under well-settled legal principles, and given that there are no relevant material facts in dispute.

In an opinion denying Townsend's Motion to Dismiss, Magistrate Judge Payson rejected the arguments proposed by Townsend in the instant motion and held that Townsend was an appropriate successor defendant under the Title VII substantial continuity test.  *See EEOC v. Nichols Gas & Oil, Inc.*, 518 F. Supp. 2d 505, 514 (W.D.N.Y. 2007).  In the opinion, Judge Payson stated that it is well-settled law that whether an entity is a Title VII successor defendant depends on: notice of the claims to the new owner, continuity of operations following the sale, and inability of the predecessor to provide financial and equitable relief.  *Id.* at 510-12. [2]

Significantly, Townsend does not dispute that it received notice of the EEOC charge or lawsuit prior to the purchase of Nichols Gas.  *See* Townsend Memorandum of Law in Support of

---

[1] The Purchase Agreement indicates that Townsend bought Nichols Gas on November 30, 2005. *See* Chandy Decl., Ex. B at 1; EEOC Response to ¶1 of Plaintiff EEOC's Rule 56.1 Response to Townsend's Undisputed Material Facts ("EEOC Response") & Plaintiff EEOC's Supplemental Facts in Support of its Cross-Motion for Partial Summary Judgment ("EEOC Supp. Facts"). Throughout its moving papers, Townsend incorrectly refers to the title of this sales contract as an "Asset Purchase" when in fact it is clearly entitled, "Purchase Agreement."

[2] Successor liability under Title VII is often referenced as the "substantial continuity" doctrine. *Nichols* at 512. This test contains three factors, the second of which is identical to the name of the doctrine. To avoid confusion, EEOC refers to the doctrine as "Title VII successor liability."

Motion for Summary Judgment ("Townsend Memo") at 25; EEOC Supp. Facts ¶¶ 1-12.  The

record also contains ample undisputed evidence that Townsend substantially continued the

business operations of its predecessor, Nichols Gas. EEOC Supp. Facts ¶¶ 13-41.  Townsend

cannot dispute hiring all of Nichols Gas employees, including Wayne Nichols and continuing to

work with his wife, Theresa Nichols.  Townsend cannot deny that it purchased Nichols Gas' real

property and equipment and that it continued to sell gas and oil and related services.  Finally,

with regard to the predecessor's ability to provide relief, Townsend is unable to demonstrate that

Nichols Gas had sufficient funds to resolve this lawsuit at the time of the sale, or that it has

sufficient funds at this time.  EEOC Supp. Facts ¶¶ 42-54.  To the contrary, the facts are

undisputed that Nichols Gas indicates that ██████████ available to provide relief as of 2008.

EEOC Supp. Facts ¶54.  Thus, following discovery on the issues relevant to Title VII successor

liability, Townsend raises no disputed material facts concerning the above factors and the Court

should deny Townsend's Motion for Summary Judgment and grant EEOC's Cross-Motion for

Partial Summary Judgment finding that Townsend is an appropriate Title VII successor

defendant.

## II.      FACTUAL BACKGROUND

### A.      The Charging Party And Nine Additional Claimants Faced Egregious Sexual Harassment While Employed By Nichols Gas

The Complaint in this matter, filed on September 14, 2005, alleged that Nichols Gas

subjected claimants to frequent and pervasive sexual harassment, that claimants complained

about this egregious sexual harassment, that Nichols Gas made no efforts to prevent or eradicate

this offensive behavior, and instead that it constructively discharged them or retaliated against

them.  The sexual harassment allegations primarily focus on the owner Mr. Nichols, including

his unwelcome groping of female employees' breasts and buttocks, and his ongoing sexually

explicit propositions and comments including, "suck my cock so I can go home with lipstick on

the end of it and make my wife jealous," "I could come over and fuck your brains out" and

requests for "blow-jobs." EEOC alleges that female employees were referred to as "whore" and

"stupid bitch" and references were continually made about their bodies, using language such as

"ass" and "tits." The egregious harassment resulted in Mr. Nichols' pleading guilty ███████

██████████████████████ and an ██████████ for the Charging Party.

*See* Declaration of Sunu P. Chandy in Opposition to Townsend's Motion for Summary Judgment

and in Support of Plaintiff's Cross-Motion for Partial Summary Judgment ("Chandy Decl."), Ex.

A, █████████████████ at 1; EEOC Supp. Facts ¶¶ 59-60.

The sexual harassment in this case was egregious, underscoring the importance of

ensuring relief for the claimants at the resolution of this matter. The policy considerations

underlying Title VII successor liability highlight federal courts' belief that employees who suffer

employment discrimination should not be left without relief. As one court has noted:

> To hold a successor liable for a judgment against its predecessor may seem unduly harsh
> upon the successor who did not participate in any discriminatory acts. Yet the courts have
> held that where there is substantial employer continuity, the right of a victim of
> discrimination to a remedy outweighs these considerations. . . .

*EEOC v. Local 638*, 71-2877, 1988 U.S. Dist. LEXIS 1862, at \*34 (S.D.N.Y. Mar. 9, 1988).

> **B.    Townsend Admits It Had Notice Of The EEOC Charge & Lawsuit At
> The Time It Purchased Nichols Gas And Proceeded With the Sale
> Nonetheless Based On A Stated Desire To Expand Its Business**

Townsend does not deny having notice of the EEOC Charge or lawsuit before purchasing

Nichols Gas. *See* Townsend Memo at 25; *Nichols Gas & Oil*, 518 F. Supp. 2d at 512; Chandy

Decl., Ex. B, Purchase Agreement at 24; Brady Dep. 38:2-16; T.N. Dep., p 47:15-48:12; Bray

Dep., 131:16-19;[3] EEOC Supp. Facts ¶¶ 1-12. The Purchase Agreement lists the following:

---

[3] Plaintiff EEOC deposed Mr. Nichols, the president of Nichols Gas (both as a
Fed.R.Civ.30(b)(6) deponent and separately as a fact witness), Mrs. Nichols (who was
responsible for preparing the entity's financial statements), Kevin Brady, President of Townsend,
and Bryan Bray, an employee who previously worked for Nichols Gas and, after the sale, worked

Elisa Foss v. Nichols Gas & Oil, Inc.
Charge No. 165-2003-00767
Date of Filing of EEOC Charge: Sept. 12, 2003
Date of Probable Cause Determination: June 9, 2005
Complaint filed in United States District Court, Western District of New York on
September 14, 2005, Docket No. 6:05-cv-06482-CJS(P)

*See* Chandy Decl., Ex. B, Purchase Agreement at 24. Further, Mr. Nichols states that that he had

conversations with Kevin Brady, the President of Townsend, about the allegations. W.N. Dep.

12/6/06, 178:17-19; 180:20-182:8, 184:19-22. Mr. Nichols states, "Certainly we chatted about

it... the whole thing in general [the allegations, the EEOC charge, the Court complaint]." W.N.

Dep. 12/6/06, 181:21-182:8. Mr. Nichols states that the case "wasn't a big secret, you know.

Everybody knew about it." W.N. Dep. 12/6/06, 185:21-24. In fact, Mr. Nichols states that the

allegations were "general knowledge throughout the industry." W.N. Dep. 12/6/06, 186:4-5.

Steve Roth, a sales manager at Townsend, viewed television news coverage of the EEOC lawsuit

in late October or early November of 2005 and notified Brady about the news coverage

approximately thirty days before Townsend entered into the Purchase Agreement with Nichols

Gas. *See* EEOC Supp. Facts ¶ 6; Brady Dep. 38:17-39:14.

Brady's only explanation for proceeding with the sale even with knowledge of the

allegations against Nichols Gas was his desire to expand Townsend's business into a new

market. Brady Dep., 100:15-24. Brady also had notice from at least one customer who indicated

that Mr. Nichols had sexually propositioned her and promised to clear her debts with the

company in exchange for sex. Brady Dep., p 8:5-25, 91:22-92:7. This customer heard that

Townsend had purchased Nichols Gas, and she left Brady a voicemail message expressing her

---

for Townsend in a managerial capacity. The five depositions are attached to James Wolford's
Declaration and included with Townsend's Motion for Summary Judgment. EEOC cites to these
depositions as follows: Wolford Decl., Ex. 4 - Mr. Nichols ("W.N.Dep. 12/6/06 or 12/7/06"), Ex.
5 - Mrs. Theresa Nichols ("T.N. Dep."), Ex. 7 - Bryan M. Bray ("Bray Dep."), and Ex. 8 - Kevin
Brady ("Brady Dep.").

outrage that anyone would go into business with Mr. Nichols. *Id.* Brady did not return her

telephone call or do anything to follow up with her regarding these concerns. Brady Dep. 9:16-

11:18; 12:15-23; 60:8-13; 92:15-18. To the contrary, despite knowledge of the EEOC Charge

and lawsuit and a complaint by a separate customer, Brady retained Mr. Nichols on his staff for

approximately a one-year period following Townsend's purchase of Nichols Gas. EEOC Supp.

Facts ¶ 16; Chandy Decl., Ex. E, Mr. Nichols Employment Agreement, 1; Brady Dep., 43:15-

19; W.N. Dep. 12/6/06, 187:12-16; Bray Dep., 37:8-13; T.N. Dep., 49:17-20; 52:6-9; 52:23-53:2.

### C.   Townsend Maintained A Continuity Of Operations Following Its Purchase Of Nichols Gas

Townsend maintained a substantial continuity of operations following its purchase of

Nichols, including all rights to the name Nichols Gas & Oil, Inc. Chandy Decl., Ex. B, Purchase

Agreement, 1; Brady Dep., 64:4-7; W.N. Dep. 12/06/06, 235:17-19.[4] Specifically, the President

of Townsend agreed to keep all of the former Nichols Gas employees and Mr. Nichols states:

"That was the deal. . . I just insisted that they keep every employee." W.N. Dep. 12/6/06,

200:19-20. At the time Townsend purchased Nichols Gas, Mr. Brady and Mr. Nichols sent a

letter to their customers stating: "[T]here are no planned changes in personnel at the Nichols

facility. You will still be able to call in and talk to the same individuals you are accustomed to

on a local basis." *See* Chandy Decl., Ex. C, Customer Letter at 1. The letter continues:

"[P]ayments will be accepted at both facilities [one being the Macedon facility] and personnel at

either facility will be able to answer any questions you may have concerning your account." *Id.*

The letter concludes: "If you have any questions please feel free to call either the Macedon

office... or our Leroy office." *Id.* In the letter Mr. Nichols states: "My wife Terry and I have

enjoyed serving you for the past thirteen years and look forward to continuing our relationship

---

[4] Accordingly, Mr. Nichols created a new name for his new business, JN-IV, which he used for lawn maintenance work, and to attempt to collect debts. W.N. Dep. 12/6/06, 270:6-11, 272:3-14.

for many years to come.  I will be remaining active in the sales and customer service department of Townsend Oil and Propane." *Id.* at 2.  On the same page, Brady wrote: "I, the employees of Townsend Oil and Propane and our new employees from Nichols Gas and Oil welcome you as a customer and look forward to serving your needs." *Id.* at 2.  Mr. Brady states that this letter was intended in his own words, to convey continuity to the customers following Townsend's purchase of Nichols Gas.  Brady Dep. 104:9-25.

Prior to the sale of Nichols Gas, Mr. Nichols primarily worked as a salesman.  W.N. Dep. 12/6/06, p 46:24-47:2, 109:23-25.  Mr. Nichols states: "A lot of my work was focused on the customer and selling."  W.N. Dep. 12/6/06, p 46:24-47:12, 109:23-5.  Following the sale, Mr. Nichols remained in his role as salesman as a Townsend employee.  *Id.* at 187:12-6; Bray Dep., 37:8-13; T.N. Dep. p 49:17-20; 52:6-9; Brady Dep., 43:15-19.  Mr. Nichols states that Townsend purchased his "expertise" as part of the sale. W.N. Dep. 12/6/06, 169:4-5.  Mr. Nichols continued to work at the Macedon facility following the sale of Nichols Gas from December 1, 2005 until his separation from Townsend on or about October 31, 2006.  Chandy Decl., Ex. E, Mr. Nichols Employment Agreement,  1; W.N. Dep. 12/6/06, 187:17-188:2, 197:15-20; Bray Dep.,  37:8-13; 43:23-44:2; T.N. Dep., p 49:17-20; 52:6-9; 52:23-53:2; Brady Dep.,  43:15-19; 44:14-21; 48:9-13.

Mrs. Nichols also provided consulting services to Townsend and continued to do work at the Macedon facility following the sale.  Chandy Decl., Ex. F, Theresa Nichols Consulting Agreement, 1; Brady Dep., 57:9-15; W.N. Dep. 12/6/06, p 194:21-24, 276:14-24; T.N. Dep., 43:3-8.

After Townsend purchased Nichols Gas, Townsend listed the Macedon facility address on its website. Chandy Decl., Ex. D, Website, 1.  The physical structure was maintained in largely the same form, except for minor cosmetic changes, and Mr. Nichols describes the

Macedon facility the day after the sale, "On the next day, everything remained the same." W.N.
Dep. 12/06/06, 192:24-25. When Mr. Nichols began working for Townsend he reported to the
same office within the Macedon facility where he had worked before the sale. W.N. Dep.
12/6/06, 187:17-188:2, 197:15-20, 247:24-248:2; Bray Dep., 37:8-13; 43:23-44:2; T.N. Dep., p
49:17-20; 52:6-9; 52:23-53:2; Brady Dep., 43:15-19; 44:14-21; 48:9-13.

Following the sale, the former Nichols Gas employees continued with the same type of
operations – to sell gas and oil and related customer service. Chandy Decl., Ex. B, Letter at 1;
Bray Dep., 39:3-10. Bryan Bray, states that following the purchase by Townsend, "We remained
a gas and oil company….Conducted business as usual. Made deliveries." Bray Dep. 39:23-24,
40:3-4. Mr. Nichols describes the work, stating: "How much can you offer somebody? You sell
them fuel and service. I mean I didn't give them a roast beef dinner with it," confirming that the
nature of the business remained the same after Townsend purchased Nichols Gas. *Id.*

Townsend also obtained as part of the purchase: numerous tanks and vehicles, inventory
and supplies including office supplies, truck repair and maintenance parts, shop supplies, truck
wheels and tires, liquid fuels, pump parts, the customer lists, various products such as fuels and
oils, furniture, and most of the other items contained at the Macedon facility. Chandy Decl., Ex.
B, Purchase Agreement at 17; Brady Dep. 32:7-12; 34:25-36:6; T.N. Dep., 19:15-17. W.N. Dep.
12/6/06, 235:7-8; 236:6-10; 241:5-8; Bray Dep., 160:20-24.

Thus, following Townsend's purchase of Nichols Gas, it continued to sell gas and oil and
related services using the same employees and equipment, in the same manner, in the same
physical location, at 922 Route 31F in Macedon, New York. See EEOC Supp. Facts ¶¶13-41;
Brady Dep., 63:7-13; Bray Dep., 36:3-8; W.N. Dep. 12/6/06, p 193:2-195:13.

### D.   Nichols Gas Cannot Provide Monetary or Injunctive Relief

Nicholas Gas is unable to provide financial or injunctive relief in this matter. See EEOC

Supp. Facts ¶¶ 42-54. The cash and assets of Nichols Gas (now held under the name JN-IV

since Townsend purchased the name, "Nichols Gas & Oil, Inc.") are valued at "very close to

zero." T.N. Dep. 60:24-61:4. Moreover, J.N.-IV is not collecting any amounts owed to the

entity. T.N. Dep., 60:4-9. On April 15, 2008, the most recent date for which Nichols Gas

produced financial documents, J.N.-IV held total assets █████████Chandy Decl., Ex. H, Apr. 15,

2008 Statement at 1. Mrs. Nichols stated that J.N.-IV does not have the funds to resolve this

lawsuit. T.N. Dep., 80:9-19. At the time of Townsend's purchase of Nichols Gas, J.N.-IV held

total assets valued ████████ and total liabilities valued ████████ resulting in insufficient

assets to resolve this matter, even at that time. Chandy Decl., Ex. H, Dec. 1, 2005 Statement at 1-

2. Further, at the time of Townsend's purchase of Nichols Gas, it did not transfer money to

Nichols. Brady Dep., 64:14-18; W.N. Dep. 12/6/06, 246:16-19; T.N. Dep., 72:2-3.

 Nichols Gas is also unable to grant injunctive relief because it no longer has employees

and all of its former employees became employees of Townsend. Thus such relief, such as

policy changes and training, must be instituted through Townsend. Employees of Nichols Gas

worked in an environment where they kept calendars of pictures with scantily clad women at the

workplace in the trucks and locker room at the Macedon facility. W.N. Dep. 12/7/06, 53:3-

54:17, 55:6-10, 56:19-25, 57:15-17, 60:16-17; Bray Dep., p 83:8-84:14. Mr. Nichols admits that

he never asked the male employees to remove these calendars from the trucks. W.N. Dep.

12/7/06, 63:5-7. Mr. Nichols also admits making sexual jokes with male employees and that

they would talk about women with whom they wanted to have sex and about their sex lives. *Id.*

at 106:3-108:23. Mr. Nichols mentions that several of the male employees would engage in this

kind of sexual talk at the Macedon facility. *Id.* at 111:20-112:6. Mr. Nichols admits cursing in

the workplace on a daily basis, using terms such as "hell, damn, fuck, shit," "ass," "bitch" and he

can't deny using the word "tit" and claimants have stated that this created an offensive and

harassing work environment which was directed at female employees W.N. Dep. 12/7/06, 64:2-10, 64:4-10, 82:12-14, 82:24-83:15; 96:20-22.  Mr. Nichols also admits to referring to one of the claimants as "the bitch." *Id.* at 96:20-22.

Given Townsend's decision to proceed with this sale and to hire Mr. Nichols despite knowledge of these allegations, and the continuity of operations, including the hiring of Nichols Gas' male employees, EEOC contends that such training and policy changes would be appropriate.  Additionally, injunctive relief is necessary at Townsend in that Mr. Nichols worked for Townsend for about one year along with the other male employees who previously worked for Nichols Gas. See EEOC Supp. Facts ¶¶ 55-60.  Accordingly, it is important for EEOC to obtain injunctive relief against Townsend as part of any resolution of this matter, in order to prevent any on-going or future sexual harassment.

## II.    ARGUMENT

Summary judgment is appropriate when there is "no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *See also EEOC v. G-K-G, Inc.*, 39 F.3d 740, 748-49 (7th Cir. 1994) (affirming summary judgment finding Title VII successor liability based on substantial continuity doctrine where successor had notice, retained most staff and did not institute any major changes).

Further, the Federal Rules of Civil Procedure provide that if a party prevails on partial summary judgment *(i.e.*, summary judgment of one or more issues), the court shall issue an order specifying what facts are not genuinely at issue and  the "facts so specified must be treated as established in the action." Fed. R. Civ. 56(d).  As discussed below, because there is no genuine issue as to the material facts relevant to Title VII successor liability, EEOC requests that the Court deny Townsend's Motion for Summary Judgment and grant EEOC's Cross-Motion for

Partial Summary Judgment holding that Townsend is an appropriate Title VII successor

defendant.

      A.      **Title VII Successor Liability Is Based On Notice Of Allegations To The New Owner, Continuity Of Operations Following The Sale, And The Predecessor's Inability To Provide Financial Or Injunctive Relief**

     Title VII successor liability is a well-settled exception to the general rule that, in an asset

sale, the purchasing corporation does not assume the liabilities of the selling corporation. *See*

*Forde v. Kee Lox Manuf.*, 584 F.2d 4, 6 (2d Cir. 1978) (a finding of successor liability requires

substantial continuity of the operations and the workforce), citing, *EEOC v. MacMillan Bloedel*

*Containers, Inc.*, 503 F.2d 1086 (6th Cir. 1974).  This approach is derived from the United States

Supreme Court labor law cases. *See e.g., John Wiley & Sons v. Livingston*, 376 U.S. 543 (1964)

(arbitration provisions should be applied to successor), *Golden State Bottling Co. v. NLRB*, 414

U.S. 168 (1973) (successor corporation had notice of unfair labor practices committed by

predecessor and was required to reinstate employee with backpay).[5]

     The *MacMillan* court outlined the relevant factors for determining whether one company

can be liable for Title VII discrimination claims as the successor of another:

> 1) whether the successor company had notice of the charge, 2) the ability of the
> predecessor to provide relief, 3) whether there has been a substantial continuity of
> business operations, 4) whether the new employer uses the same plant, 5) whether he uses
> the same or substantially the same work force, 6) whether he uses the same or
> substantially the same supervisory personnel, 7) whether the same jobs exist under
> substantially the same working conditions, 8) whether he uses the same machinery,
> equipment and methods of production and 9) whether he produces the same product.

     District courts in the Second Circuit must apply the *MacMillian* factors in determining

---

[5] Townsend's argument that Title VII plaintiffs do not require similar protections as do union employees under labor law is without merit as this standard has been applied repeatedly and without concern in cases involving employment law statutes as discussed below. As Townsend admits on page 15 of its memo, the successor liability doctrine based on the substantial continuity test was developed with the goal of "protecting victimized employees." This applies to victims of employment discrimination, including sexual harassment, equally as it does in the labor law context.

whether entities are successor corporations for purposes of liability under federal employment discrimination law. *Abdel-Khalek v. Ernst & Young LLP*, No. 97-4514, 1999 U.S. Dist. LEXIS 2369, at \*18-24 (S.D.N.Y. Mar. 5, 1999) (ADA case); *Wells v. Continental Baking Co.*, 43 Fair. Empl. Prac. Cas. (BNA) 1185, 1185 (W.D.N.Y. 1987); *EEOC v. Sage Realty Corp.,* 87 F.R.D. 365, 371-72 (S.D.N.Y. 1980), (granting motion to add successor corporation) *and related proceeding,* 507 F. Supp. 599, 612 (S.D.N.Y. 1981) (finding new entity was a successor under *MacMillan* factors given that it hired over ninety percent of predecessor's employees and employees used same equipment and performed similar duties); *Fennell v. TLB Plastics Corp.*, No. 84-8775, 1989 U.S. Dist. LEXIS 8738, at \*5-12 (S.D.N.Y. July 28, 1989) (granting motion to add successor defendant given substantial continuity of business operations, successor's notice of plaintiff's claims and predecessor's inability to provide relief). The *Fennell* court noted that a court "must make its decision by balancing the interests of the plaintiff and the national policy of abhorrence toward employment discrimination against the interest of the successor." *Id.* at \*6 (citations omitted).

Federal courts nationwide follow this approach holding that successor liability in the employment law context is determined by the substantial continuity doctrine. *Brzozowski v. Corr. Physician Serv.*, 360 F.3d 173, 178 (3d Cir. 2004); *Rojas v. TK Commc'n.*, 87 F.3d 745, 750 (5th Cir. 1996); *Hughley v. GM*, 67 F.3d 129, 137 (6th Cir. 1995); *EEOC v. G-K-G, Inc.*, 39 F.3d at 748; *Criswell v. Delta Air Lines, Inc.*, 868 F.2d 1093, 1094 (9th Cir. 1989); *Trujillo v. Longhorn Mfg. Co., Inc.*, 694 F.2d 221, 224-25 (10th Cir. 1982); *In re Nat. Airlines, Inc.*, 700 F.2d 695, 698 (11th Cir. 1983). Townsend has cited no cases in support of its argument that these principles of successor liability based on the substantial continuity doctrine (*MacMillan* factors) are inapplicable in the employment law context and EEOC was unable to find cases where federal courts reject this approach. To the contrary, courts are extending this theory

throughout federal labor and employment statutes stating, for example:

> [T]he same analysis utilized by federal courts in justifying the extension of potential liability to successor employers under the NLRA, Title VII, 42 U.S.C. 1981, the ADEA, ERISA and the Multiemployer Pension Plan Amendments Act (MPPAA) justified the application of the successorship doctrine under the FLSA as well. . . [and] the fundamental purpose of the FLSA is as fully deserving of protection as the labor peace, anti-discrimination, and worker security policies' underlying other statutes.

*Chao v. Concrete Mgmt. Resources, L.L.C.*, No. 08-2501, 2009 U.S. Dist. LEXIS 18619, at *8-9

(D. Kan. Mar. 5, 2009) (citations omitted).[6]

**B.      Based On These Well Settled Legal Standards Of Title VII Successor Liability, Townsend's Motion For Summary Judgment Must Be Denied**

Townsend argues that common law principles of limited liability should apply instead of

Title VII successor liability based on the substantial continuity doctrine, that the *MacMillan*

factors no longer apply based on more recent environment law decisions, that it should not be

liable given that it did not employ the claimants or participate in any wrongdoing, and that even

if Title VII successorship liability applies, that it only allows for injunctive relief.  These

arguments all lack merit as discussed in turn below.

**1.      Townsend Is Bound By The Law Of The Case; Magistrate Judge Payson Already Rejected Townsend's Arguments In This Litigation**

Judge Payson has already followed the well-established legal principles set forth above

and ruled, in this litigation, that Title VII successor liability is governed by the *MacMillan*

factors.  *See Nichols Gas & Oil, Inc.*, 518 F. Supp. 2d at 511-12.  The U.S. Supreme Court

defines law of the case as, "when a court decides upon a rule of law, that decision should

---

[6] Thus, the cases cited on pages 6-9 of Townsend's memo concerning common law rules of successor liability and the exceptions thereto are inapplicable in the labor and employment context. EEOC does not contend that the standard common law exceptions to liability are present here. Rather, EEOC contends, and as was already determined by Judge Payson, that Title VII successor liability is analyzed using the *MacMillan* factors and substantial continuity doctrine.

continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983).  Grounds for reconsideration include: "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992); *See also De Johnson v. Holder*, 564 F.3d 95, 99-100 (2d Cir. 2009) (following law of the case); *United States v. Adegbite*, 877 F.2d 174,178 (2d Cir. 1989) (same).  The law of the case doctrine "expresses the practice of the courts generally to refuse to reopen what has been decided." *L.I. Head Start Child Dev. Servs. v. Econ. Opportunity Comm'n*, 558 F. Supp. 2d 378, 408 (E.D.N.Y. 2008) (citations omitted); *Novella v. Westchester County*, No. 02-2192, 2007 U.S. Dist. LEXIS 66235, at *8 (S.D.N.Y. Sept. 10, 2007) (courts must adhere to its earlier decisions unless there are cogent or compelling reasons not to).  The underlying purposes of the doctrine are to maintain fairness and consistency, to avoid relitigating issues that were already decided, judicial economy and finality.  *Gorham-Dimaggio v. Countrywide Home Loans, Inc.*, No. 08-019, 2009 U.S. Dist. LEXIS 52078, at *28 n.11 (N.D.N.Y. June 19, 2009); *Scottish Air Int'l v. British Caledonian Group, PLC*, 152 F.R.D. 18, 25 (S.D.N.Y. 1993) (following law of the case since ruling was not "substantially erroneous" nor was reconsideration necessary to "avoid injustice").[7]

Judge Payson already rejected the arguments raised by Townsend in this motion as to the appropriate standard for Title VII successor liability.  The Court rejected Townsend's arguments that traditional corporate successor liability and its exceptions govern in the Title VII context; that successor liability based on the substantial continuity factors was limited to labor law and

---

[7] Determining the applicable legal standards for Title VII successor defendant remain the same throughout all stages of litigation. Accordingly, it is legally irrelevant that the Court's previous decision was in the context of denying Townsend's Motion to Dismiss and the parties are now at the summary judgment stage. As noted throughout, Title VII successor liability is governed by notice of the claim to the successor, continuity of operations after the sale, and inability of the predecessor to provide financial or injunctive relief, regardless of the stage of litigation.

did not apply to employment law; and that the Supreme Court decision in *United States v. Bestfoods*, 524 U.S. 51 (1998) and the Second Circuit case of *New York v. National Service Industries*, 352 F.3d 682 (2d Cir. 2003) in any way altered the principles of Title VII successor liability, which is based on substantial continuity. Judge Payson stated:

> I cannot concur with Townsend, however, that *Bestfoods* should be read so broadly as to abrogate the principle recognized in *Forde* that the "substantial continuity" test applies to determine successor or derivative corporate liability in a Title VII case. Indeed, the Second Circuit has declined to read *Bestfoods* as overruling the application of the substantial continuity test in all cases arising under statutes that do not expressly provide for successor liability. . . . Specifically, in *National Services,* while the court acknowledged that the doctrine of substantial continuity is not so well-established to be considered "part of general federal common law," it recognized that, by contrast, "the substantial continuity doctrine is well established in the area of labor law." A question left open by *National Services* is whether the substantial continuity doctrine is also well-established in the area of Title VII employment law. . . .I conclude that it is. First, a substantial and consistent body of caselaw has evolved over several decades applying the doctrine of substantial continuity in Title VII cases. . . . Second, such a rule promotes many of the same interests that the Supreme Court has found sufficiently strong to justify application of the substantial continuity test in the labor law context....Those same interests are served by Title VII and likewise counsel application of the substantial continuity test to determine successor liability in Title Vii cases.

*Nichols Gas & Oil, Inc.*, 518 F. Supp. 2d at 511-12.

Neither defendant objected to Judge Payson's September 28, 2007 ruling which permitted EEOC to add Townsend as a successor defendant. Chandy Decl. ¶ 11. A party may object to a magistrate judge's ruling within ten days of being served with a copy of the decision. Fed. R. Civ. 72. This rule has been upheld as promoting the efficient use of judicial resources. *See Thomas v. Arn*, 474 U.S. 140, 152-53 (1985). A party's failure to object to a decision of the magistrate judge results in forfeiture of subsequent district court review. Fed. R. Civ. 72(a). The Second Circuit state that when "a party fails to object timely to a magistrate's recommended decision, it waives any right to further judicial review of that decision." *McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir. 1983) ; *Marcella v. Capital Dist. Physician's Health Plan, Inc.*, 293

F.3d 42, 46-47 (2d Cir. 2002) (notes exception for subject matter jurisdiction but cites general

rule). Thus, under law-of-the-case doctrine, Townsend is not permitted to now re-litigate the

appropriate legal standard for Title VII successor liability which was already decided by Judge

Payson to be based on the well-settled substantial continuity doctrine.

> 2.    Defendant Again Attempts To Rely On Inapplicable Law: *Forde*
>       Remains The Law Of The Second Circuit Governing Title VII
>       Successor Liability

In the instant motion, Townsend again mistakenly argues that the substantial continuity

standards guiding Title VII successor liability have been abrogated in the Title VII context

following the Supreme Court's decision in *Bestfoods,* 524 U.S. 51 and the Second Circuit case,

*National Service Industries,* 352 F.3d 682. Again, EEOC contends that these cases  are

inapplicable to Title VII and do not alter the well-settled principle that Title VII successor

liability is based on substantial continuity and the *MacMillan* factors. *Forde,* 584 F.2d 4.

Townsend again incorrectly argues that *Bestfoods* stands for the proposition that the

substantial continuity test found in *MacMillan* is no longer valid unless the test is specified in the

statute at issue. However, following *Bestfoods,* courts in this and other circuits continue to

follow the substantial continuity doctrine/the *MacMillan* factors in Title VII cases. *See, e.g.*

*Abdel-Khalek,* 1999 U.S. Dist. LEXIS 2369, at *18-24; *EEOC v. Barney Skanska Constr. Co.,*

No. 99-2001, 2000 U.S. Dist. LEXIS 15713, at *5-8 (S.D.N.Y. Oct. 27, 2000); *Parker v. Metro.*

*Trans Auth.,* 97 F. Supp. 2d 437, 451-52 (S.D.N.Y. 2000); *Cobb v. Contract Transport Inc.* 452

F.3d 543, 550-57 (6th Cir. 2006); *Brzozowski v. Corr. Physician Servs.,* 360 F.3d 173, 177-79

(3d Cir. 2004); *Worth v. Tyler,* 276 F.3d 249, 259-61 (7th Cir. 2001). In *National Services*

*Industries,* the Second Circuit merely stated that, "after *Bestfoods,* the substantial continuity test

cannot be applied to determine successor liability under CERLA." *Nat. Servs. Indus.* at 683.

The Second Circuit reiterated that the substantial continuity test for successor liability is well

established in the labor law context. *Id.* Townsend argues that the Court's mention of labor law cases, and not Title VII cases, indicates that the substantial continuity/*MacMillan* factors no longer apply to Title VII and courts must follow the more general rules for successor liability.

This interpretation has no merit and federal courts in this Circuit continue to follow *MacMillan* as required by *Forde. See, e.g., Rowe Entm't. Inc. v William Morris Agency,* No. 98-8272, 2005 U.S. Dist. LEXIS 75, at *305-07 (S.D.N.Y. Jan. 5, 2005); *Molfese v. Fairfaxx,* No. 3:05-317, 2006 U.S. Dist. LEXIS 32468, at *7-8 (D. Conn. May 12, 2006); *Stevens v. Coach U.S.A.,* 386 F. Supp. 2d 55, 65-66 (D. Conn. 2005 Sept. 8, 2005) (applying *MacMillan* factors in FMLA case). Thus, the CERLA opinions cited by Townsend are irrelevant and the standards therein do not govern Title VII successor liability which continues to be governed by the substantial continuity doctrine/*MacMillan* factors.[8]

### 3.   Title VII Successor Liability Does Not Require That Townsend Employed Claimants Or Participated In Any Wrongdoing

Townsend's argument that it did not employ the claimants or have any involvement in the sexual harassment is irrelevant to Title VII successor liability which is based on the substantial continuity doctrine. By definition, a successor entity is one that purchased the predecessor and Title VII successor liability does not require any showing of wrong-doing.[9] *See Sage Realty,* 87

---

[8] In stating that Title VII successor liability based on substantial continuity has been altered by *Bestfoods,* Townsend argues that common law successor liability requires a finding of "common ownership." However, the *MacMillan* factors/substantial continuity test in *Forde* clearly indicates that Title VII successor liability requires no showing of common ownership.

[9] Although legally unnecessary for a finding of Title VII successor liability, for purposes of injunctive relief, it should be noted that Townsend is hardly an innocent entity involved in an arms-length asset purchase. To the contrary, this successor had far more notice than many of the cases where courts find Title VII successor liability. It is undisputed that Townsend had notice directly from the previous owner and through others. Additionally, at the time of the sale, there was an EEOC action publicly filed in federal court, not solely an EEOC Charge of Discrimination. Townsend also had notice from a customer soon after the sale. Nonetheless, Townsend proceeded to expand its business through its purchase of Nichols Gas and by taking advantage of the knowledge and expertise of Mr. Nichols and his former staff as well as their name and customer contacts and customer relationships.

F.R.D. at 371 (rejecting argument that proposed successor defendant was innocent of discrimination and thus not liable as a successor corporation).  As noted by one court, "A successor employer may be held liable for the intentional discrimination of its predecessor....The Plaintiff need not prove that the successor intended to discriminate....A basic assumption of successor liability is that the successor is an innocent party who may nevertheless be required to compensate the injured employee." *EEOC v. Stephen T. Cox, Inc.,* No. 3-99-1184, 2001 U.S. Dist. LEXIS 25674, at *25 (M.D. Tenn. July 3, 2001).

> 4.   Townsend's Argument That Title VII Successor Liability Only Allows For Injunctive Relief Defies One Of The Key Rationales Underlying The Premise of This Doctrine – That Claimants Must Not Be Left Without Financial Relief After Facing Employment Discrimination

Courts apply Title VII successor liability (substantial continuity doctrine) so that employees who face discrimination are not left without remedy.  One court states, successor liability is "liberally imposed" in the labor and employment context.  *Fennell,* 1989 U.S. Dist. LEXIS 8738, at *6.  As the *MacMillan* court noted,

> Title VII was designed to eliminate discrimination in employment and the courts were given broad equitable powers to eradicate the present and future effects of past discrimination. . . . Failure to hold a successor employer liable for the discriminatory practices of its predecessor could emasculate the relief provisions of Title VII by leaving the discriminatee without a remedy or with an incomplete remedy.

*MacMillan,* 503 F.2d at 1091.  Thus, Townsend's argument that successor liability based on the substantial continuity doctrine only provides for injunctive relief, or minimal monetary relief in the labor law context, must be rejected.

> C.   **Based On These Well Settled Legal Standards Of Title VII Successor Liability EEOC's Cross-Motion for Summary Judgment Must Be Granted Because All Required Factors Are Present Here**

>> 1.   Townsend Had Undisputed, Clear and Sufficient Notice Regarding the EEOC Charge, Determination & Litigation

Townsend does not dispute that it had notice of this EEOC action at the time that it purchased Nichols Gas. *See* Townsend Memo at 25. As discussed, the EEOC Charge and litigation are listed in the Purchase Agreement between Townsend and Nichols Gas & Oil, Inc. *See* Chandy Decl., Ex. B, Purchase Agreement at 24; EEOC Supp. Facts ¶¶ 1-12. Additionally, Mr. Nichols spoke directly to Brady about this matter and states the allegations were "not a big secret," and "everybody knew about it," for it was "general knowledge throughout the industry." W.N. Dep. 12/6/06, 178:17-19; 180:22-25, 181:21-182:8, 184:19-22; 185:23-24; 186:4-5. Thus the first prong of successor liability is satisfied and there is no dispute of fact on this issue.

        2.      Townsend Maintained A Substantial Continuity Of Business
                Operations Following Its Purchase Of Nichols Gas

In making determinations of successor liability, courts consider whether a purchasing employer uses the same plant, the same or substantially the same work force, whether the same jobs exist under substantially the same working conditions, whether the employees use the same machinery, equipment and methods of production, and whether they produce the same product. *MacMillan,* 503 F.2d at 1094. The Second Circuit has stated that in making successor liability determinations, "continuity in the identity of the work force is one of the most important considerations." *NLRB v. Hudson River Aggregates, Inc.*, 639 F.2d 865, 869 (2d Cir. 1981). Courts also consider whether the successor acquired the predecessor's personnel and equipment. *See Sage Realty Corp.,* 507 F. Supp. 599 at 612. Further, courts review whether the employees have the same duties, work in the same offices and continue to perform the same functions. *See e.g., Abdel-Khalek*, 1999 U.S. Dist. LEXIS 2369, at *22. Courts find continuity where successors continue contracts entered by the predecessors and work with the same customers. *Shales v. Lanas Const., Inc.,* No. 07-2970, 2009 U.S. Dist. LEXIS 17482, at *18 (N.D. Ill. Mar. 4, 2009). Courts analyze whether a successor continues operations in generally the same way

and find successor liability even if there are some differences in production. *See Fall River Dyeing v. NLRB,* 482 U.S. 27, 44 (1987) (rejecting argument that a change to a different type of dyeing meant there was no substantial continuity of operations), *EEOC v. SWP, Inc.*, 153 F. Supp. 2d 911, 923 (N.D. Ind. 2001) (refusing to give credence to argument that successor made "higher end" cabinetry as compared to predecessor's cabinets and finding that the two entities produced the "same product").

As described above, after November 30, 2005 when Townsend purchased Nichols Gas, Townsend maintained clear and substantial continuity of business operations at the 922 Route 31F facility in Macedon, New York. EEOC Supp. Facts ¶¶ 13-41. Townsend is unable to rebut the evidence in the record in support of this factor, including the fact that it retained all of the Nichols Gas employees following the sale to Townsend. Brady Dep., p 45:19-46:5; W.N. Dep. 12/6/06, 200:11-20. The employees were engaged in the same business before and after the sale, which in Mr. Nichol's own words was "to sell . . . fuel and service." W.N. Dep. 12/6/06, 203:3. The employees continued to perform the same jobs under the same working conditions using the same machinery and equipment including the same vehicles, fuels and oils and related supplies. Brady Dep. 35:9-36:6; T.N. Dep., 19:15-17.

Mr. Nichols himself remained at the facility as a salesman and was engaged in the same type of work he had done prior to the sale and remained in the same office within the facility. Chandy Decl., Ex. E, Mr. Nichols Employment Agreement, 1; Brady Dep., 43:15-19; 44:3-5; W.N. Dep. 12/6/06, 187:12-16, 247:24-248:2; T.N. Dep., p 49:17-20; 52:6-9; 52:23-53:2; Bray Dep., 37:8-13. Townsend purchased Mr. Nichol's "expertise" as part of the sale. W.N. Dep. 12/6/06, 169:4-5. Mr. Nichols continued to work at the Macedon facility following the sale of of Nichols Gas to Townsend from December 1, 2005 until his separation from Townsend on or about October 31, 2006. Chandy Decl., Ex. E, Mr. Nichols Employment Agreement, 1; W.N.

-19-

Dep. 12/6/06, 187:12-16, 197:15-20, 247:24-248:2; Bray Dep., 37:8-13; 43:23-44:2; T.N. Dep., p 49:17-20; 52:6-9; 52:23-53:2; Brady Dep., 43:15-19; 44:14-21; 48:9-13. Similarly, following the sale, Townsend arranged for Mrs. Nichols to work for Townsend as a consultant. Chandy Decl., Ex. F, Theresa Nichols Consulting Agreement, 1; Brady Dep., 57:9-15; W.N. Dep. 12/6/06, p 194:21-24, 276:14-24; T.N. Dep., p 42: 7-25, 43:3-13; 44;10-13.

Thus, there was a clear and substantial continuity of operations at the facility following the date when Townsend purchased Nichols Gas. At most, Townsend has raised facts in dispute that are minor in light of the ample evidence favoring a finding of substantial continuity in business operations. For instance, Townsend disputes the exact number of vehicles purchased by Townsend and whether Nichols Gas sold certain vehicles in an auction. These disputes are insufficient to raise a "genuine issue as to any material facts" as to the substantial continuity of operations.

3.    Nichols Gas Is Unable To Provide Sufficient Financial Or
Injunctive Relief In This Matter

The public policy considerations underlying Title VII successor liability - affording plaintiffs relief for unlawful employment discrimination - requires a determination of the predecessor's ability to actually provide relief. Thus, it is critical to review what funds are available from the predecessor to resolve the case at the time of the resolution. *See, e.g., Abdel-Khalek*, 1999 U.S. Dist. LEXIS 2369, at *21 and *Fennell*, 1989 U.S. Dist. LEXIS 8738, at *11. Deposition testimony from Mrs. Nichols confirms that Nichols Gas did not have the funds to pay the settlement necessary for EEOC to resolve this matter at the time of the sale, or currently, on behalf of the ten women, each of whom faced sexual harassment, constructive discharge, and/or retaliation.

Title VII allows EEOC to seek $50,000 each in compensatory and punitive damages from an employer of Nichols Gas' size on behalf of each of the ten employees covered by this lawsuit.

In addition, EEOC is seeking $50,000 in total backpay based on constructive discharge and retaliation claims for the claimants. Chandy Decl., ¶ 5. As such, the total amount of financial damages EEOC seeks in this matter is in the range of $550,000.[10]

The record supports a finding that Nichols Gas did not have the funds to resolve this suit at the time of the sale and does not have the facts at this time. See EEOC Supp. Facts ¶¶ 42-54. Townsend draws the Court's attention to the sums it was to pay Nichols Gas at the time of the November 13, 2005 sale. However, funds were not actually transferred to Nichols at that time. *Id.* At the time Townsend purchased Nichols Gas, Townsend did not transfer any money to Nichols Gas. Brady Dep., 64:14-18; W.N. Dep. 12/6/06, 246:16-9; T.N. Dep., 72:2-3. Mrs. Nichols testified, "I can tell you at the time of the sale there were ███████████████" T.N. Dep. 72: 2-3. Mr. Nichols states, "I know that I walked out of that closing ████████ ████ We had debts to pay." W.N. Dep. 12/6/06, 246:16-24, 247:10. Moreover, even the predecessor's receipt of monies at the sale or receipt of any on-going payments do not mean there is actual availability of funds to provide relief to claimants at the case's resolution. *Abdel-Khalek*, 1999 U.S. Dist. LEXIS 2369 at *21; *See also Trujillo*, 694 F.2d at 225 (upholding district court's ruling on successor liability noting that "the predecessor's receipt of the sale proceeds and its right to continuing payments do not alone demonstrate its abilities to pay the judgment" when there are other liabilities).

As of April 15, 2008, the most recent date for which Nichols Gas produced financial

---

[10] This amount is reasonable in light of similar emotional distress jury verdicts in the Second Circuit. *See EEOC v. Everdry Marketing & Mgmt., Inc., et al.*, 556 F. Supp. 2d 213, 216 and 222 (W.D.N.Y. 2008) (court reduced award to the statutory cap of $50,000 each for at least four of the claimants in Title VII sexual harassment suit with similar allegations); *Dobrich v. Gen. Dynamics Corp.*, 106 F. Supp. 2d 386, 396 (D. Conn. 2002) (court reduced award to statutory cap of $300,000 in a one person Title VII case); *Oliver v. Cole Gift Centers, Inc.*, 85 F. Supp. 2d 109, 112 (D. Conn. 2000) (award reduced to statutory cap of $300,000 in a one person Title VII suit); *Quinn v. Nassau County Police Dep't*, 53 F. Supp. 2d 347, 362-63 (E.D.N.Y. 1999) (court upheld $250,000 emotional distress award in a one person discrimination case).

documents it held total assets█████████Chandy Decl., Ex. H, Apr. 15, 2008 Statement at 1;

T.N. Dep., p 76:4-8, 77:9-10; 79:24-80:2.  Nichols Gas does not have any other bank accounts

where it is holding money or other assets, other than through JN-IV. T.N. Dep. p 75:18-25, 76:1-

3. Nichols Gas does not have any other assets or access to any other money which can be used to

resolve this litigation. T.N. Dep. 77: 14-18, 80:9-19. J.N.-IV is not collecting any accounts

receivable and there is no income. T.N. Dep., 60:4-9 Mrs. Nichols states that the cash and assets

of J.N.-IV are valued████████████' T.N. Dep., p 60:24-61:4.

Courts also allow plaintiffs to add successor entities in order to obtain injunctive relief.

*Kolosky v. Anchor Hocking Corp.*, 585 F. Supp. 746, 747-48, n.1 (W.D. Pa. 1983) ("Plaintiffs

seek to join Anchor Glass as a defendant in this case for the purpose of obtaining prospective

injunctive relief against the successor corporation . . . . A successful plaintiff is entitled to

injunctive relief under Title VII"); *EEOC v. Rockwell Int'l Corp.,* 36 F. Supp. 2d 1056, 1057

(N.D. Ill. 1999) (though the predecessor could  provide financial relief, the successor was

required as a defendant in order to provide critical injunctive relief); *Local 638*, 1988 U. S. Dist.

LEXIS 1862, at *38 (the predecessor could not provide relief since it ceased to exist); *Cox*, 2001

U.S. Dist. LEXIS 25673, at *5 ("Plaintiff's allegations suggest that the prohibited conduct . . .

was committed by male employees at all levels and therefore any injunctive relief would

necessarily be directed toward modifying the behavior of these male employees and their current

employer.").

Here, Nichols Gas is unavailable to provide injunctive relief-a critical component of any

EEOC resolution and necessary to prevent future violations of Title VII-because it no longer

exists as a gas and oil company with employees.  Townsend admits that it continued to employ

all of the previous Nichols Gas employees after the sale.  Brady Dep., p 45:19-46:5; W.N. Dep.

12/6/06, 200:11-20.  It is also undisputed that Mr. Nichols, the primary alleged harasser named

by the claimants, worked for Townsend for approximately one year following the sale. Chandy

Dep.cl., Ex. E, Mr. Nichols Employment Agreement, 1; Brady Dep., 43:15-19; 44:14-21; 48:9-

13; 52:2-6; W.N. Dep. 12/6/06, 187:12-16, 197:15-20; Bray Dep., 37:8-13; 43:23-44:2; T.N.

Dep., 49:17-20; 52:6-9; 52:23-53:2.

As noted above, the Nichols Gas employees worked in an environment where they kept

calendars of pictures with scantily clad women at the workplace. W.N. Dep. 12/07/06, 53:3-

54:3; Bray Dep., p 83:8-84:14. Mr. Nichols also admits making sexual jokes with the male

employees, and that the male employees talked about women with whom they wanted to have

sex and about their sex lives. *Id.* at 106:3-108:23. Mr. Nichols mentions that several of the male

employees engaged in this kind of sexual talk at the Macedon facility. *Id.* at 111:20-112:6. Mr.

Nichols was ██████████████████████████████████ in relation to his

conduct to the Charging Party in this case and she obtained ██████████████████████

W.N. Dep. 12/7/06, p 189:24-25, 191:3, 192: 3-12, 193: 7-11, 196: 21-23, 198:21-24. Given

Townsend's decision to proceed with this sale and to hire Mr. Nichols despite knowledge of the

allegations, and the continuity of operations, including the hiring of Nichols Gas' employees,

EEOC contends that such training and policy changes would be appropriate. [11]

### IV.    CONCLUSION

Based on the applicable legal standards of Title VII successor liability (substantial

continuity doctrine) and law of the case, Townsend is clearly an appropriate Title VII successor

defendant to Nichols Gas. *See Nichols Gas & Oil, Inc.* 518 F. Supp. 2d 505. As stated by the

court in *MacMillan*, "The primary concern, however, is to provide the discriminatee with full

---

[11] It should be noted that EEOC is not required to demonstrate that <u>any</u> sexually harassing
conduct occurred following the sale of Nichols Gas to Townsend, as this is not one of the factors
of consideration for a finding of Title VII successor liability. EEOC simply puts these facts
forward to bolster its position that in addition to Townsend providing financial relief to the
claimants, it would also be appropriate for Townsend to provide some measure of injunctive.

relief. Such relief may be awarded against the successor." *MacMillan* at 1092. The undisputed facts concerning Townsend's written and verbal notice of the sexual harassment charges and existence of this lawsuit prior to purchasing Nichols Gas; the undisputed facts demonstrating a strong and substantial continuity of business operations; and the undisputed material facts demonstrating the inability of the predecessor to provide relief demonstrate that Townsend is a proper Title VII successor defendant to Nichols Gas. Accordingly, Plaintiff EEOC respectfully requests that this Court deny Townsend's Motion for Summary Judgment and grant Plaintiff EEOC's Cross-Motion for Partial Summary Judgment.

Dated: <u>August 13, 2009</u>
      New York, New York

Respectfully submitted,

SUNU P. CHANDY
Senior Trial Attorney
United States EEOC
33 Whitehall Street, 5th Floor
New York, New York 10004
Telephone No: 212-336-3706
Facsimile No.: 212-336-3623
Email Address: sunu.chandy@eeoc.gov

-24-