UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

EQUAL EMPLOYMENT OPPORTUNITY          :
COMMISSION,                           :
                                      :       Civil Action No.
                                      :       05-CV-6482 (CJS) (MWP)
                                      :
                 Plaintiff,           :
                                      :
v.                                    :
                                      :       ████████████████████
                                      :       (REDACTED VERSION
NICHOLS GAS & OIL, INC. and           :       FILED ELECTRONICALLY
TOWNSEND OIL CORPORATION              :       PURSUANT TO CONF. ORDER)
d/b/a/ TOWNSEND OIL & PROPANE,        :
                                      :
                 Defendants           :
-------------------------------------------------------------x

## PLAINTIFF EEOC'S RULE 56.1 RESPONSE TO TOWNSEND'S UNDISPUTED MATERIAL FACTS & PLAINTIFF EEOC'S SUPPLEMENTAL UNDISPUTED FACTS IN SUPPORT OF ITS CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Local Rule 56.1(b), Plaintiff Equal Employment Opportunity Commission ("EEOC"), hereby submits its Response to Townsend Oil Corporation d/b/a Townsend Oil & Propane's ("Townsend's") Undisputed Material Facts and EEOC's Supplemental Undisputed Facts in Support of Plaintiff EEOC's Cross-Motion for Partial Summary Judgment.

## SUMMARY

Plaintiff EEOC commenced an action against Nichols Gas & Oil ("Nichols Gas") in September 2005 on behalf of a class of female employees, alleging that Nichols Gas subjected the claimants to sexual harassment, retaliation, and constructive discharge in violation of Title VII of the Civil Rights Act of 1964.  EEOC filed an Amended Complaint adding Townsend as a Title VII Successor Defendant to Nichols Gas on October 1, 2007.  See EEOC Response to Townsend's Facts ("EEOC Response") ¶ 38-46.

Townsend purchased Nichols Gas on or about November 30, 2005 including purchasing Nichols Gas' name, customer list, physical building, tanks and vehicles, inventory, supplies, and maintenance parts and shop supplies. See EEOC Supplemental Facts ("Supp. Facts") ¶¶13-41. Townsend retained all of the previous employees of Nichols Gas when it purchased Nichols Gas on November 30, 2005. *Id.* at ¶¶ 32-24. Townsend also continued the employment of the named harasser, Nichols Gas' owner, Mr. Nichols, and his wife, Mrs. Theresa Nichols, for at least a one year period following the sale. *Id.* at ¶¶ 35-40. After Townsend purchased Nichols Gas, Townsend maintained a physical office on the real property that it had purchased from Nichols Gas. *Id.* at ¶¶ 23-28. Townsend also offered delivery and service from this former Nichols facility to former customers of Nichols Gas. *Id.* at ¶¶ 29-31. Townsend notified former customers of Nichols Gas that these customers could call the Macedon facility and speak to the same personnel to which the customers were accustomed before Townsend had purchased Nichols Gas. Declaration of Sunu P. Chandy submitted in support of EEOC's Opposition to Townsend's Motion for Summary Judgment and In Support of EEOC's Cross-Motion for Partial Summary Judgment ("Chandy Decl."), Ex. C, Customer Letter at 1; EEOC Supp. Facts ¶ 33. Mr. Brady states that this letter was intended, in his own words, to convey continuity to the customers following Townsend's purchase of Nichols Gas. Brady Dep. 104:9-25. Bryan Bray, a former Nichols Gas employee, who became a Townsend manager following the sale, states that following the purchase by Townsend, "We remained a gas and oil company....Conducted business as usual. Made deliveries." Bray Dep. p. 39:23-24, 40:3-4. [1] Mr. Nichols describes the

---

[1]   All deposition transcripts cited to in EEOC's papers have been submitted by Townsend with its Motion for Summary Judgment. Plaintiff EEOC deposed Mr. Nichols, the President of Nichols Gas (both as a Fed.R.Civ.P.30(b)(6) deponent and separately as a fact witness), his wife, Mrs. Nichols (who was responsible for preparing the entity's financial statements), Kevin Brady, President of Townsend, and Bryan Bray, an employee who previously worked for Nichols Gas

Macedon facility the day after the sale, "On the next day, everything remained the same." W.N.

Dep. 12/06/06, p. 192:24-25.

After Townsend purchased Nichols Gas on or about November 30, 2005, Mr. Nichols

created J.N.-IV to collect debts due to Nichols Gas, naming it J.N.-IV because the company was

no longer in the oil business and because Townsend had purchased the right to use the name of

Nichols Gas. EEOC Response to ¶ 57. Nichols Gas does not have sufficient funds to resolve

this lawsuit. EEOC Supp. Facts ¶¶ 42-54. J.N.-IV is not collecting any amounts that are owed to

the entity. At the time of Townsend's purchase of Nichols Gas, J.N.-IV also held cash and assets

that were insufficient to resolve this matter, and Townsend did not transfe███████ Nichols

Gas at the time of purchase. *Id.* at ¶ 42. As of April 15, 2008, the most recent date for which

Nichols Gas produced financial documents for J.N.-IV, Nichols Gas indicate that J.N.-IV held

total assets████████. EEOC Supp. Facts ¶54.

## EEOC'S RESPONSE TO TOWNSEND'S FACTS

### PARTIES

1.      Nichols Gas was formed sometime in 1995 and at all relevant times was solely

owned by its President, Wayne Nichols and located in Macedon, New York [Ex. 4, Nichols

Deposition Transcript conducted on December 6, 2006 ("Nichols Dep.") pp.20, 29].

**RESPONSE:** Plaintiff admits in part and denies in part. Plaintiff admits that Nichols

Gas was formed sometime in 1995 and was located in Macedon, New York until Townsend's

purchase of Nichols Gas. Plaintiff denies Defendant's assertion that Nichols Gas, at all relevant

---

and, after the sale, worked for Townsend in a managerial capacity. These depositions are all
attached to the Wolford Declaration submitted by Townsend and EEOC cites to these
depositions as follows: Wolford Decl., Ex. 4 - Mr. Nichols ("W.N.Dep. 12/6/06 or 12/7/06"), Ex.
5 - Mrs. Theresa Nichols ("T.N. Dep."), Ex. 7 - Bryan M. Bray ("Bray Dep."), and Ex. 8 - Kevin
Brady ("Brady Dep.").

times, was solely owned by its President, Mr. Nichols.  Pursuant to the Purchase Agreement

between Townsend Oil Corporation and Nichols Gas ("Purchase Agreement"), Townsend

bought Nichols Gas on or about November 30, 2005.  *See* Declaration of Sunu P. Chandy in

Support of Plaintiff EEOC's Opposition to Townsend's Motion for Summary Judgment

("Chandy Decl."), Ex. B, Purchase Agreement at 1.  Throughout its moving papers, Townsend

incorrectly refers to the title of this sales contract entitled, "Purchase Agreement" as an "Asset

Purchase."  Townsend purchased the name "Nichols Gas & Oil" under the Purchase Agreement.

Chandy Decl., Ex. B, Purchase Agreement at 1; Brady Dep., p. 64:4-7; "W.N. Dep. 12/6/06, p.

235:17-9.  Townsend also purchased Nichols Gas' customer list under the Purchase Agreement.

See Chandy Decl., Ex. B, Purchase Agreement at 18; Brady Dep. p. 32:4-12; 36:7-11; W.N. Dep.

12/6/06, p. 235:20-2.  Townsend purchased Nichols Gas' physical building and its tanks and

vehicles at the time of the sale.  Chandy Decl., Ex. B, Purchase Agreement at 1, 17; Brady Dep.

pp. 32:7-12; 34:25-35:8; W.N. Dep. 12/6/06, p. 235:7-8; 236:6-10; 241:5-8; T.N. Dep., p. 19:15-

17; Bray Dep., p. 39:3-24.  Townsend also purchased Nichols Gas' inventory, supplies, and

maintenance parts and shop supplies.  Chandy Decl., Ex. B, Purchase Agreement at 17; Brady

Dep. p. 35:9-36:6; T.N. Dep., p. 19:15-17; See also EEOC Supp. Facts ¶¶ 13-41. Townsend

purchased Nichols Gas, meaning, as stated by Mr. Nichols, that this included: the facility, the

trucks, the fuel, the oil, the building, and the customer list. W.N. Dep.12/6/06:164:24-165:7,

168:17-169:4.

Townsend agreed to continue the employment of every employee of Nichols Gas when it

purchased Nichols Gas on November 30, 2005 and it had no planned changes in personnel.

Brady Dep., pp. 45:19-46:5, 63:7-13; W.N. Dep. 12/6/06, p. 200:11-23.  Employees of Nichols

Gas continued to work for Townsend at the Macedon facility after the sale. Brady Dep., p. 63:7-

13; Bray Dep., p. 36:3-8; W.N. Dep. 12/6/06, pp. 193:2-195:10.  Approximately one month after

the sale, at least nine of eleven former Nichols Gas employees continued to work as Townsend

employees at the Macedon facility. Brady Dep., p. 47:5-10; 63:14-16.

Prior to the sale of Nichols Gas to Townsend, Mr. Nichols, in his role as President,

primarily worked as a salesman for the company. W.N. Dep. 12/6/06, pp. 46:24-47:12, 109:23-

25. A large part of the work of Mr. Nichols "was focused on the customer and selling" and his

duty to bring in sales. W.N. Dep. 12/6/06, pp. 46:24-47:12, 109:23-25. Following the sale of

Nichols Gas, Mr. Nichols became an employee of Townsend and remained in his role as

salesman. Chandy Decl., Ex. E, Mr. Nichols Employment Agreement at 1; Brady Dep., p.

43:15-19; 44:3-5; W.N. Dep. 12/6/06, p. 187:12-16, 247:24-248:2; T.N. Dep., pp. 49:17-20;

52:6-9; 52:23-53:2; Bray Dep., p. 37:8-13.  Townsend purchased Mr. Nichol's "expertise" as

part of the sale. W.N. Dep. 12/6/06, p. 169:4-5. Mr. Nichols continued to work at the Macedon

facility following the sale of Defendant from December 1, 2005 until his separation from

Townsend on or about October 31, 2006.   Chandy Decl., Ex. E, Mr. Nichols Employment

Agreement at 1; W.N. Dep. 12/6/06, p. 187:12-16, 197:15-20, 247:24-248:2; Bray Dep., p. 37:8-

13; 43:23-44:2; T.N. Dep., pp. 49:17-20; 52:6-9; 52:23-53:2; Brady Dep., p. 43:15-19; 44:14-21;

48:9-13. When Mr. Nichols began working for Townsend on December 1, 2005, he reported to

his same office within the Macedon facility where he had worked from 1997 until the date of the

sale, November 30, 2005. W.N. Dep. 12/6/06, p. 192:14-17, 198:9-13; T.N. Dep., 84:7-11; Bray

Dep., p. 37:8-13.

After Townsend purchased Nichols Gas on November 30, 2005, Townsend hired Mr.

Nichols' wife, Theresa Nichols, as a consultant.  Chandy Decl., Ex. F, Theresa Nichols

Consulting Agreement, p. 1; Brady Dep., p. 57:9-15; W.N. Dep. 12/6/06, pp. 194:21-24, 276:14-

24; T.N. Dep., pp. 42: 7-25, 43:3-13; 44;10-13.

2.      Nichols was a smaller fuel supplier, primarily supplying households and small

businesses in the area surrounding Wayne County, New York [Nichols Dep. Pp. 27, 35; Ex. 7,

Transcript of Deposition of Bryan Bray, conducted on August 14, 2008 ("Bray Dep.") pp. 158-

159].

      **RESPONSE:** Plaintiff admits.

3.      At the time of the closing of the asset purchase, Nichols Gas had approximately

11 employees. Nichols Dep. P. 46; Ex. 9, Affidavit of Kevin P. Brady, sworn to June 4, 2007

("Brady Aff.") ¶ 15].

      **RESPONSE:** Plaintiff admits.

4.      After the asset purchase, Nichols Gas continued its corporate existence

and eventually changed its name to J.N.-IV [Nichols Dep. p. 286].

      **RESPONSE:** Plaintiff denies. Townsend purchased Nichols Gas on or about November

30, 2005 and the terms are contained in a Purchase Agreement. Chandy Decl., Ex. B, Purchase

Agreement at 1. From 1997 to the date of the sale, Nichols Gas maintained its operations at 922

Route 31F in Macedon, New York. W.N. Dep. 12/6/06, p. 29:11-16. After Townsend purchased

Nichols Gas, Townsend maintained a physical office at that location and listed that address on its

website. Chandy Decl., Ex. D, Website at 1. Townsend purchased the name "Nichols Gas &

Oil" under the Purchase Agreement. Chandy Decl., Ex. B, Purchase Agreement at 1; Brady

Dep., p. 64:4-7; W.N. Dep. 12/6/06, p. 235:17-9. Townsend also purchased Nichols Gas'

customer list under the Purchase Agreement. Chandy Decl., Ex. B, Purchase Agreement at 18;

Brady Dep. p. 32:4-5; 36:7-11; W.N. Dep. 12/6/06, p. 235:20-2. Townsend purchased Nichols

Gas' physical building and its tanks and vehicles at the time of the sale. Chandy Decl., Ex. B,

Purchase Agreement at 1, 17; Brady Dep. pp. 32:7-12; 34:25-35:8; W.N. Dep. 12/6/06, p. 235:7-8; 236:6-10; 241:5-8; T.N. Dep., p. 19:15-17; Bray Dep., p.40:5-15;  Townsend also purchased Nichols Gas' inventory, supplies, and maintenance parts and shop supplies at the time Townsend purchased Nichols Gas.  Chandy Decl., Ex. B, Purchase Agreement at 17; Brady Dep. p. 35:9-36:6; T.N. Dep., p. 19:15-17.

Mr. Nichols created J.N. IV to engage in a lawn care business and to attempt to collect debts due to Nichols Gas. W.N. Dep. 12/6/06, p.272:2-13.  Mr. Nichols also named the company J.N.-IV because Townsend had purchased the exclusive right to use the name "Nichols Gas & Oil." W.N. Dep. 12/6/06, p. 270:6-11. Mr. Nichols named the company J.N.-IV because the company was no longer in the oil business.  T.N.Dep. p. 158:12-14.

5.      Townsend is owned by Kevin P. Brady, who is the President and sole officer and director of Townsend.  He has held these positions since he purchased the company in 1978 [Brady Aff. ¶ 1].

**RESPONSE:** Plaintiff admits.

6.      At all relevant times, Townsend was a full service heating fuel and lubricant supplier to thousands of homes, businesses, farms and industries throughout Western New York [Brady Aff. ¶ 2].

**RESPONSE:** Plaintiff admits.

7.      Townsend has a full-time service department that services and installs furnaces, boilers fireplace inserts, room heaters and hot water tanks [Brady Aff. ¶ 4; Ex. 8, Transcript of Deposition of Kevin P. Brady, conducted on August 15, 2008 ("Brady Dep."), pp. 29-31].

**RESPONSE:** Plaintiff admits.

8.      Townsend's principal place of business is located in Leroy, New York [Brady Aff. ¶ 1].

**RESPONSE:** Plaintiff admits.  See also EEOC Supp. Facts ¶¶ 23-28.

9.      Townsend at all relevant times has served twelve Counties in Western New York on a full-time basis and provides fuel to commercial business, private homes and service stations [Brady Aff. ¶ 5].

**RESPONSE:** Plaintiff admits.

10.     As of 2005, Townsend employed approximately 45 employees [Brady Aff. ¶ 16].

**RESPONSE:** Plaintiff admits.

## THE EEOC ACTION

11.     The EEOC commenced this action against Nichols Gas in September 2005 [Docket No. 1, EEOC Complaint].

**RESPONSE:** Plaintiff admits.

12.     The EEOC alleged that Nichols Gas, through its owner Mr. Nichols and other "male employees," had violated Section 703(a) of Title VII by subjecting the complaining parties to sexual harassment "[s]ince at least January 1999" [Docket 1, EEOC Complaint ¶ 7].

**RESPONSE:** Plaintiff admits.

13.     The EEOC's claims against Nichols Gas were based on Sections 706 and 707 of Title VII of the Civil Rights Act of 1964 and Section 102 of the Civil Rights Act of 1991 [Docket 1, EEOC Complaint ¶ 1].

**RESPONSE:** Plaintiff admits.

## TOWNSEND PURCHASED NICHOLS GAS

14.     On or about November 30, 2005, Townsend entered into an Asset Purchase

Agreement with Mr. Nichols for the purchase of certain assets of Nichols Gas ("Asset Purchase Agreement") [Brady Aff. Ex. 1].

**RESPONSE:** Plaintiff denies.  On or about November 30, 2005, Townsend entered into a Purchase Agreement with Mr. Nichols and Nichols Gas.  The document is entitled "Purchase Agreement" and not "Asset Purchase Agreement."  See Chandy Decl., Ex. B, Purchase Agreement at 1.  Pursuant to this Purchase Agreement, Townsend bought Nichols Gas.  *Id.* Townsend purchased the name "Nichols Gas & Oil" under the Purchase Agreement.  *Id.*; Brady Dep., p. 64:4-7; W.N. Dep. 12/6/06, p. 235:17-19.  Townsend also purchased Nichols Gas' customer list under the Purchase Agreement.  Chandy Decl., Ex. B, Purchase Agreement at 18; Brady Dep. p. 32:4-5; W.N. Dep. 12/6/06, p. 235:20-2.  Townsend purchased Nichols Gas' physical building and their tanks and vehicles at the time of the sale.  Chandy Decl., Ex. B, Purchase Agreement at 1, 17; Brady Dep. pp. 32:7-12; 34:25-35:8; W.N. Dep. 12/6/06, p. 235:7-8; 236:6-10; 241:5-8; T.N. Dep., p. 19:15-17; Bray Dep., p. 39:3-24.  Townsend also purchased Nichols Gas' inventory, supplies, and maintenance parts and shop supplies at the time Townsend purchased Nichols Gas.  Chandy Decl., Ex. B, Purchase Agreement at 17; Brady Dep. p. 35:9-36:6; T.N. Dep., p. 19:15-17.  Townsend, under the Purchase Agreement, bought Nichols Gas, and not simply its assets.  Chandy Decl., Ex. B, Purchase Agreement at 1.

15.    According to the parties, the Asset Purchase Agreement was not a merger between Nichols Gas and Townsend, but was merely "an asset sale" [Ex. 4, Nichols Dep. pp. 172-173; Ex. 5, Transcript of Deposition of Theresa Nichols, conducted on August 13, 2008 ("T. Nichols. Dep."), p. 19].

**RESPONSE:** Plaintiff denies.  On or about November 30, 2005, Townsend entered into a Purchase Agreement with Mr. Nichols and Nichols Gas.  The document is entitled "Purchase

Agreement" and not "Asset Purchase Agreement." Chandy Decl., Ex. B, Purchase Agreement at 1. According to Townsend's own documents, Townsend's purchase of Nichols Gas constituted a merger of the two companies. Chandy Decl., Ex. C, Customer Letter at 1 ("Nichols Gas & Oil, Inc. of Macedon, NY has completed a merger with Townsend Oil Corp. of LeRoy, NY."). After November 30, 2005, Townsend ran the business of Nichols Gas. T.N. Dep., p. 18:20-21; Bray Dep., p. 39:24 ("We remained a gas and oil company."). Townsend also purchased Nichols Gas' customer list under the Purchase Agreement. Chandy Decl., Ex. B, Purchase Agreement at 18; Brady Dep. p. 32:4-5; W.N. Dep. 12/6/06, p. 235:20-2. After Townsend purchased Nichols Gas, Townsend offered delivery and service from the Macedon facility to former Nichols Gas customers. Chandy Decl., Ex. C, Customer Letter at 1; Bray Dep., p. 39:3-10. Townsend continued to receive payments from these customers at the Macedon facility. Chandy Decl., Ex. C, Customer Letter at 1. In addition, Townsend accepted job applications at both its Leroy facility and its Macedon facility after Townsend purchased Nichols Gas. Chandy Decl., Ex. D, Website at 1.

Townsend agreed to continue the employment of every employee of Nichols Gas when it purchased Nichols Gas on November 30, 2005 and had no planned changes in personnel. Brady Dep., pp. 45:19-46:5, 63:7-13; W.N. Dep. 12/6/06, p. 200:11-23. Employees of Nichols Gas continued to work for Townsend at the Macedon facility after the sale. Brady Dep., p. 63:7-13; Bray Dep., p. 36:3-8; W.N. Dep. 12/6/06, pp. 193:2-195:10. Approximately one month after the sale, at least nine of eleven former Nichols Gas employees continued to work as Townsend employees at the Macedon facility. Brady Dep., p. 47:5-10; 63:14-16. See also EEOC Response to Townsend Fact ¶ 1, incorporated by reference.

Townsend notified former Nichols Gas customers that they could call the Macedon

facility and speak to the same personnel to which the customers were accustomed before

Townsend purchased Nichols Gas. Chandy Decl., Ex. C, Customer Letter at 1. Townsend

purchased the name "Nichols Gas & Oil" under the Purchase Agreement. Chandy Decl., Ex. B,

Purchase Agreement at 1; Brady Dep., p. 42:5-8; 64:4-7; W.N. Dep. 12/6/06, p. 235:17-9.

Townsend also purchased Nichols Gas' customer list under the Purchase Agreement. Chandy

Decl., Ex. B, Purchase Agreement at 18; Brady Dep. p. 32:4-5; W.N. Dep. 12/6/06, p. 235:20-2.

Townsend purchased Nichols Gas' physical building and its tanks and vehicles at the time of the

sale. Chandy Decl., Ex. B, Purchase Agreement at 1, 17; Brady Dep. pp. 32:7-12; 34:25-35:8;

W.N. Dep. 12/6/06, p. 235:7-8; 236:6-10; 241:5-8; T.N. Dep., p. 19:15-17; Bray Dep., p. 39:3-

24. Townsend also purchased Nichols Gas' inventory, supplies, and maintenance parts and shop

supplies at the time Townsend purchased Nichols Gas. Chandy Decl., Ex. B, Purchase

Agreement at 17; Brady Dep. p. 35:9-36:6; T.N. Dep. p. 19:15-17. See also EEOC response to

Townsend Fact ¶ 1, incorporated by reference; EEOC Supp. Facts ¶¶ 13-41.

16.     No shares of stock and no ownership interest in the business entities changed

hands (i.e., it was not "a stock sale") [Ex. 4, Nichols Dep. pp. 172-173; Ex. 5, T. Nichols. Dep. p.

19].

**RESPONSE:** Plaintiff denies. Mr. Nichols was the sole shareholder of Nichols Gas on

or about November 30, 2005. Chandy Decl., Ex. B, Purchase Agreement at 1. Under the

Purchase Agreement, Townsend bought Nichols Gas and assumed all ownership interest

previously held by Mr. Nichols. Chandy Decl., Ex. B, Purchase Agreement at 1. See also EEOC

Response to Townsend Facts ¶ 1, 14, incorporated by reference.

## TOWNSEND PURCHASED NICHOLS GAS

17.     Under the Asset Purchase Agreement, Townsend purchased from Nichols Gas

four trucks, a building, propane tanks, inventory, office supplies, machine parts, pumps, diesel oil and propane [Brady Dep. pp. 31-37; Brady Aff. ¶¶ 7, 8 & 10].

**RESPONSE:** Plaintiff admits Townsend purchased these items. See EEOC Response to Townsend Fact ¶ 1, incorporated by reference. Plaintiff denies that this was an Asset Purchase Agreement. On or about November 30, 2005, Townsend entered into a Purchase Agreement with Mr. Nichols and Nichols Gas. The document is entitled "Purchase Agreement" and not "Asset Purchase Agreement." Chandy Decl., Ex. B, Purchase Agreement at 1.

18.    Townsend also purchased a customer list and paid for a corresponding non-competition agreement from Nichols Gas [Brady Dep. pp. 31-34; Brady Aff. pp. 7, 8 & 10].

**RESPONSE:** Plaintiff admits in part and denies in part. Plaintiff admits that Townsend purchased a customer list from Nichols Gas. Plaintiff admits that Townsend purchased a non-competition agreement. Plaintiff denies that Townsend actually paid any money at the time of the sale for any of the items listed in the Purchase Agreement, including the non-competition agreement from Nichols Gas. See also EEOC Response to Townsend Fact ¶ 62, incorporated by reference; EEOC Supp. Facts ¶¶ 42.

19.    Townsend did not purchase all of the assets of Nichols Gas. Approximately eight to ten vehicles, some office furniture, certain inventory, and computers were not purchased [Brady Aff. PP 11-12].

**RESPONSE:** Plaintiff admits. See also EEOC Response to Townsend Undisputed Fact ¶ 1, incorporated by reference; EEOC Supp.Facts ¶¶ 13-41.

20.    Any assets not sold to Townsend were sold by Nichols to third parties. For instance, Nichols sold a truck to another party [Ex. 7, Bray Dep. p. 162].

**RESPONSE:** Plaintiff denies. Several trucks that were not sold to Townsend were

leased to Townsend. Chandy Decl., Ex. G, Vehicle Lease Agreement between Townsend and

Nichols Gas dated November 30, 2005 ("Vehicle Lease Agreement") at 1; Brady Dep., p. 107:6-

8; Bray Dep., pp. 41:17-42:2; T.N. Dep., pp. 49:21-50:21.

21.     In fact, nine months later Nichols Gas held an auction in August 2006 at the

Nichols Gas headquarters in Macedon, New York to sell assets that were not purchased by

Townsend, including various trucks and equipment [Brady Dep. pp. 73-74].

**RESPONSE:** Plaintiff admits. See also EEOC Response to Townsend Fact ¶ 20,

incorporated by reference.

22.     In addition to the numerous trucks and office equipment of Nichols Gas that

Townsend did not purchase, the Asset Purchase Agreement also afforded Townsend discretion

not to purchase other "Inventory and Supplies" and, indeed, Townsend did not purchase many of

those assets [Brady Aff. ¶¶ 6, 9 & 11].

**RESPONSE:** Plaintiff admits that Townsend had the discretion to purchase or not to

purchase other items and did not purchase some items. See EEOC Response to Townsend Facts

¶ 19-21, incorporated by reference. Plaintiff denies that this was an Asset Purchase Agreement.

On or about November 30, 2005, Townsend entered into a Purchase Agreement with Mr.

Nichols and Nichols Gas. The document is entitled "Purchase Agreement" and not "Asset

Purchase Agreement." Chandy Decl., Ex. B, Purchase Agreement at 1; See also EEOC

Response to Townsend Fact ¶ 21, incorporated by reference;

## MANAGEMENT & EMPLOYEES

23.     The Asset Purchase Agreement did not provide the transfer of any employees

from Nichols Gas to Townsend. Townsend had no obligation to hire any former employees of

Nichols Gas [Brady Aff. ¶ 15].

**RESPONSE:** Plaintiff admits in part and denies in part. Plaintiff denies that this was an

Asset Purchase Agreement. On or about November 30, 2005, Townsend entered into a Purchase

Agreement with Mr. Nichols and Nichols Gas. The document is entitled "Purchase Agreement"

and not "Asset Purchase Agreement." Chandy Decl., Ex. B, Purchase Agreement at 1. Plaintiff

admits that the Purchase Agreement did not provide for the transfer of employees from Nichols

Gas to Townsend. Plaintiff denies that Townsend had no obligation to hire former employees of

Nichols Gas because Townsend agreed to continue the employment of every employee of

Nichols Gas when it purchased Nichols Gas. Brady Dep., pp. 45:19-46:5; W.N. Dep. 12/6/06, p.

200:11-23. Employees of Nichols Gas continued to work for Townsend at the Macedon facility

after Townsend purchased Nichols Gas on November 30, 2005. Brady Dep., p. 63:7-13; Bray

Dep., p. 36:3-8; W.N. Dep. 12/6/06, pp. 193:2-195:13. Approximately one month after the sale,

at least nine of eleven former Nichols Gas employees worked as Townsend employees at the

Macedon facility. Brady Dep., p. 47:5-10; 63:14-16. Townsend had no planned changes in

personnel after it purchased Nichols Gas on or about November 30, 2005. Brady Dep., p. 63:7-

13.

Before Townsend purchased Nichols Gas, Mr. Nichols, in his role as President, worked

primarily as a salesman for the company. W.N. Dep. 12/6/06, pp. 46:24-47:12, 109:23-25. A

large part of the work of Mr. Nichols "was focused on the customer and selling" and his duty to

bring in sales. W.N. Dep. 12/6/06, pp. , 46:24-47:12, 109:23-25. Following the sale of Nichols

Gas, Mr. Nichols became an employee of Townsend and remained in his role as salesman.

Chandy Decl., Ex. E, Mr. Nichols Employment Agreement at 1; Brady Dep., p. 43:15-19; 44:3-

5; W.N. Dep. 12/6/06, p. 187:12-16; 247:24-248:2; T.N. Dep., pp. 49:17-20; 52:6-9; 52:23-53:2;

Bray Dep., p. 37:8-13; 164:3-7. Mr. Nichols states that Townsend purchased "his expertise" as

14

part of the sale. W.N. Dep. 12/6/06, p. 169:4-5. Mr. Nichols continued to work at the Macedon

facility following the sale of Defendant from December 1, 2005 until his separation from

Townsend on or about October 31, 2006. Chandy Decl., Ex. E, Mr. Nichols Employment

Agreement at 1; W.N. Dep. 12/6/06, p. 187:12-16, 197:15-20; 247:24-248:2; Bray Dep., p. 37:8-

13; 43:23-44:2; T.N. Dep., pp. 49:17-20; 52:6-9; 52:23-53:2; Brady Dep., p. 43:15-19; 44:14-21;

48:9-13. When Mr. Nichols began working for Townsend on December 1, 2005, he reported to

his same office within the Macedon facility where he had previously worked from 1997 until the

date of the sale, November 30, 2005. W.N. Dep. 12/6/06, p. 192:14-17, 198:9-13; T.N. Dep.,

84:7-11; Bray Dep., p. 37:8-13.

     After Townsend purchased Nichols Gas on November 30, 2005, Townsend hired Mrs.

Nichols as a consultant and she continued her work with bookkeeping and related financial

matters as she had done previously for Nichols Gas. Chandy Decl., Ex. F, Theresa Nichols

Consulting Agreement at 1; T.N. Dep., pp. 16:4-6, 17:6-14, 42:17-25, 43:3-13, 44:10-13; Brady

Dep., p. 57:9-15; W.N. Dep. 12/6/06, pp. 194:21-24, 276:14-24.

     24.    At the time the Asset Purchase Agreement was executed, Townsend had

approximately 45 employees [Brady Aff. ¶ 16].

     **RESPONSE:** Plaintiff denies that this was an Asset Purchase Agreement. On or about

November 30, 2005, Townsend entered into a Purchase Agreement with Mr. Nichols and

Nichols Gas. The document is entitled "Purchase Agreement" and not "Asset Purchase

Agreement." Chandy Decl., Ex. B, Purchase Agreement at 1. Plaintiff admits that Townsend

had 45 employees.

     25.    Eleven employees of Nichols Gas became employees of Townsend after the asset

purchase [Brady Aff. ¶ 16].

**RESPONSE:** Plaintiff denies that this was an Asset Purchase Agreement. On or about November 30, 2005, Townsend entered into a Purchase Agreement with Mr. Nichols and Nichols Gas. The document is entitled "Purchase Agreement" and not "Asset Purchase Agreement." Chandy Decl., Ex. B, Purchase Agreement at 1. Plaintiff admits that eleven employees of Nichols Gas became employees of Townsend after the sale. See also EEOC Response to Townsend Facts ¶ 1, 23, incorporated by reference.

26.     Of those eleven employees, only three were employed by Townsend as of June 2007 [Brady Aff. ¶ 16].

**RESPONSE:** Plaintiff admits but denies this is a material fact relevant to summary judgment. See also EEOC Response to Townsend Facts ¶ 1, 23, incorporated by reference.

27.     Five of the eleven Nichols Gas employees that went to Townsend no longer worked with Townsend five months after execution of the Asset Purchase Agreement [Brady Aff. ¶ 16].

**RESPONSE:** Plaintiff denies that this was an Asset Purchase Agreement. On or about November 30, 2005, Townsend entered into a Purchase Agreement with Mr. Nichols and Nichols Gas. The document is entitled "Purchase Agreement" and not "Asset Purchase Agreement." Chandy Decl., Ex. B, Purchase Agreement at 1. Plaintiff admits that some of the employees left the employ of Townsend after some months but denies this is a material fact relevant to summary judgment. See also EEOC Response to Townsend Facts ¶ 23, 26, incorporated by reference.

28.     Before and after the Asset Purchase Agreement, all management of Townsend and its administrative procedures and policies were handled through Townsend's principal place of business in Leroy, New York [Brady Aff. ¶ 14].

**RESPONSE:** Plaintiff admits in part and denies in part. Plaintiff denies that this was an Asset Purchase Agreement. On or about November 30, 2005, Townsend entered into a Purchase Agreement with Mr. Nichols and Nichols Gas. The document is entitled "Purchase Agreement" and not "Asset Purchase Agreement." Chandy Decl., Ex. B, Purchase Agreement at 1. Plaintiff admits that Townsend's principal place of business is located in Leroy, New York. Plaintiff denies that all management and administrative procedures and policies for Townsend were handled through Townsend's Leroy office because Townsend conducted business through its Macedon location after its purchase of Nichols Gas. Chandy Decl., Ex. B, Letter at 1; Brady Dep. p. 28:16-18; 63:7-13; Bray Dep., p. 36:3-8; W.N. Dep. 12/6/06, pp. 193:2-195:13. Townsend provided delivery and service from the Macedon facility after Townsend purchased Nichols Gas. Chandy Decl., Ex. B, Letter at 1; Bray Dep., p. 39:3-10. Townsend also accepted invoice payments at both its Leroy facility and its Macedon facility after Townsend purchased Nichols Gas. Chandy Decl., Ex. B, Letter at 1. Bryan M. Bray, a Nichols Gas employee, held a managerial role with Townsend after Townsend purchased Nichols Gas. Brady Dep., p. 78:14-21; W.N. Dep. 12/6/06, p. 196:9-18. Mr. Bray oversaw the operations at the Macedon facility. Brady Dep., p. 78:14-16; W.N. Dep. 12/6/06, p. 195:25-196:18. Mr. Nichols recommended the hiring and placement of Mr. Bray as a supervisor. Brady Dep., 78:17-21. Mr. Bray had authority to terminate employees and exercised this authority to terminate at least one employee in the Macedon facility. Bray Dep., pp. 155:15-156:2.

29.    Any customers of Nichols Gas that may have become customers of Townsend, after the Asset Purchase Agreement, have been serviced by Townsend through its Leroy facility [Brady Aff. ¶ 14].

**RESPONSE:** Plaintiff denies that this was an Asset Purchase Agreement. On or about November 30, 2005, Townsend entered into a Purchase Agreement with Mr. Nichols and Nichols Gas. The document is entitled "Purchase Agreement" and not "Asset Purchase Agreement." Chandy Decl., Ex. B, Purchase Agreement at 1. Plaintiff also denies in that Townsend purchased the customer list of Nichols Gas under the Purchase Agreement. See Chandy Decl., Ex. B, Purchase Agreement at 18; Brady Dep. p. 32:4-12; 36:7-11; W.N. Dep. 12/6/06, p. 235:20-2. After Townsend purchased Nichols Gas, Townsend offered delivery and service from its Macedon facility to former customers of Nichols Gas. Chandy Decl., Ex. C, Customer Letter at 1; Bray Dep., p. 39:3-10. Townsend continued to receive payments from these customers at the Macedon facility. Chandy Decl., Ex. C, Customer Letter at 1.

Townsend notified former customers of Nichols Gas that they could call the Macedon facility and speak to the same personnel to which the customers were accustomed before Townsend had purchased Nichols Gas. Chandy Decl., Ex. C, Customer Letter at 1. Mr. Brady states that this letter was to show the customers that there would be continuity in the operations following Townsend's purchase of Nichols Gas. Brady Dep. 104:9-25. Townsend agreed to continue the employment of every employee of Nichols Gas when it purchased Nichols Gas on November 30, 2005 and had no planned changes in personnel. Brady Dep., pp. 45:19-46:5, 63:7-13; W.N. Dep. 12/6/06, p. 200:11-23; Chandy Decl., Ex. C, Customer Letter at 1. Employees of Nichols Gas continued to work for Townsend at the Macedon facility after the sale. Brady Dep., p. 63:7-13; Bray Dep., p. 36:3-8; W.N. Dep. 12/6/06, pp. 193:2-195:10. Approximately one month after the sale, at least nine of eleven former Defendant Nichols employees continued to work as Townsend employees at the Macedon facility. Brady Dep., p. 47:5-10; 63:14-16.

30.     Townsend's management has always been physically located at Townsend's

offices in Leroy [Brady Aff. ¶ 14].

**RESPONSE:** Plaintiff denies.  Bryan M. Bray, a former employee of Nichols Gas, held a

managerial role with Townsend after Townsend purchased Nichols Gas.  Brady Dep., p. 61:17-

18.  Mr. Bray oversaw the operations at the Macedon facility.  Brady Dep., p. 78:14-16; W.N.

Dep. 12/6/06, p. 195:25-196:18.  Mr. Bray had authority to terminate employees and exercised

this authority to terminate at least one employee in the Macedon facility.  Bray Dep., pp. 155:15-

156:2.

31.     After the asset purchase, all supervisory personnel of Nichols Gas were changed

and no longer served in those roles [Brady Aff. ¶ 16].

**RESPONSE:** Plaintiff denies that this was an Asset Purchase Agreement.  On or about

November 30, 2005, Townsend entered into a Purchase Agreement with Mr. Nichols and

Nichols Gas.  The document is entitled "Purchase Agreement" and not "Asset Purchase

Agreement."  Chandy Decl., Ex. B, Purchase Agreement at 1.  Plaintiff also denies in that

Townsend placed Bryan M. Bray, a former employee of Nichols Gas, into a supervisory role

with Townsend after Townsend purchased Nichols Gas.  Brady Dep., p. 61:17-18; W.N. Dep.

12/6/06, p. 196:9-18.  Mr. Bray oversaw the operations at the Macedon facility.  Brady Dep., p.

78:14-16; W.N. Dep. 12/6/06, p. 195:25-196:18.  Mr. Bray had authority to terminate employees

and exercised this authority to terminate at least one employee in the Macedon facility.  Bray

Dep., pp. 155:15-156:2.

Townsend agreed to continue the employment of every Nichols Gas employee when it

purchased Nichols Gas on November 30, 2005.  Brady Dep., pp. 45:19-46:5; W.N. Dep. 12/6/06,

p. 200:11-23.  Employees of Nichols Gas continued to work for Townsend at the Macedon

facility after Townsend purchased Nichols Gas on November 30, 2005. Brady Dep., p. 63:7-13;

Bray Dep., p. 36:3-8; W.N. Dep. 12/6/06, pp. 193:2-195:10. See also EEOC Response to

Townsend Fact ¶ 1, incorporated by reference.

## TOWNSEND PURCHASED NICHOLS GAS' BUILDING

32.     The building purchased by Townsend from Nichols Gas was located in Macedon,

New York [Brady Aff. ¶ 14].

**RESPONSE:** Plaintiff admits.

33.     After the closing of the Asset Purchase Agreement, Townsend used the facility as

a distribution point for Townsend, and no management or administration of Townsend's business

was conducted at that location [Brady Aff. 14].

**RESPONSE:** Plaintiff denies that this was an Asset Purchase Agreement. On or about

November 30, 2005, Townsend entered into a Purchase Agreement with Mr. Nichols and

Nichols Gas. The document is entitled "Purchase Agreement" and not "Asset Purchase

Agreement." Chandy Decl., Ex. B, Purchase Agreement at 1. Plaintiff also denies in that

Townsend purchased Nichols Gas, Townsend offered delivery and service from its Macedon

facility to former customers of Nichols Gas. Chandy Decl., Ex. C, Customer Letter at 1; Bray

Dep., p. 39:3-10. Townsend continued to receive payments from these customers at the

Macedon facility. Chandy Decl., Ex. C, Customer Letter at 1. Townsend effected no personnel

changes. Brady Dep., p. 63:7-13; Chandy Decl., Ex. C, Customer Letter at 1. In fact, Townsend

notified former customers of Nichols Gas that these customers could call the Macedon facility

and speak to the same personnel to which the customers were accustomed before Townsend

purchased Nichols Gas. Chandy Decl., Ex. C, Customer Letter at 1. Mr. Nichols notes that the

layout at the Macedon facility generally remained the same following the sale of Nichols Gas to

Townsend. W.N. Dep. 12/6/06, p. 192:2-6.  Townsend placed Bryan M. Bray, an employee of

Nichols Gas, into a supervisory role with Townsend after Townsend purchased Nichols Gas, and

Mr. Bray oversaw the operations at the Macedon facility.  Brady Dep., pp. 61:17-18, 78:14-16.

34.     Indeed, Townsend removed Nichols Gas's computer systems, mechanics shop,

two-way radios, copier, and some office furniture from the premises [Brady Aff. 17].

**RESPONSE:** Plaintiff admits.  See also EEOC Supp. Facts ¶¶ 13-41.

35.     Townsend purchased new trucks, equipment, computers, phone systems,

computer network and system, and office equipment, and added a 24-hour employee on call

system for the facility [Brady Aff. ¶ 17].

**RESPONSE:** Plaintiff admits.  See also EEOC Supp. Facts ¶¶ 13-41.

36.     Townsend thereafter used the storage tanks at the Macedon location to store a

significant amount of motor oil [Nichols Dep. pp. 190 & 199].

**RESPONSE:** Plaintiff admits.  See also EEOC Supp. Facts ¶¶ 13-41.

### AS THE TITLE VII SUCCESSOR DEFENDANT TO NICHOLS GAS GAS, TOWNSEND IS LIABLE IN THIS MATTER NOTWITHSTANDING CONTRACT TERMS IN THE PURCHASE AGREEMENT CONCERNING LIABILITIES

37.     Pursuant to Section 10 of the Asset Purchase Agreement, Townsend and Nichols

Gas explicitly agreed that Townsend was not assuming the liabilities of Nichols Gas [Brady Aff.

Exhibit 1, pp. 8-9; Nichols Dep., p. 173].

**RESPONSE:** Plaintiff denies that this was an Asset Purchase Agreement.  On or about

November 30, 2005, Townsend entered into a Purchase Agreement with Mr. Nichols and

Nichols Gas.  The document is entitled "Purchase Agreement" and not "Asset Purchase

Agreement."  Chandy Decl., Ex. B, Purchase Agreement at 1.  Plaintiff admits that under the

Purchase Agreement that Townsend was not assuming the liabilities of Nichols Gas but denies

this is a material fact relevant to summary judgment.

## THE COURT GRANTED EEOC LEAVE TO AMEND ITS COMPLAINT TO ADD TOWNSEND AS A DEFENDANT UNDER PRINCIPLES OF SUCCESSOR LIABILITY

38.     In January 2007, the EEOC filed a motion to amend the Complaint to add

Townsend as a defendant [Docket No. 23].

**RESPONSE:** Plaintiff admits.

39.     Nichols Gas opposed the motion and oral argument was held before Magistrate

Judge Payson on April 4, 2007 [Docket Nos. 30 &32].

**RESPONSE:** Plaintiff admits.

40.     Townsend was also given the opportunity to oppose the motion [Docket Nos. 36-

38].

**RESPONSE:** Plaintiff admits.

41.     Magistrate Judge Payson ultimately granted the EEOC's motion to amend

[Docket No. 40].

**RESPONSE:** Plaintiff admits. See *EEOC v. Nichols Gas & Oil*, 518 F. Supp. 2d 505,

512 (W.D.N.Y. 2007).

42.     On October 1, 2007 the EEOC filed its Amended Complaint [Ex. 1, Docket No.

41, EEOC Amended Complaint].

**RESPONSE:** Plaintiff admits.

43.     The EEOC alleged that Townsend had "purchased" Nichols Gas on November 30,

2005 [Am. Compl. ¶¶ 6-8], and further alleged that Townsend is liable in this action "under the

principles of successor liability" [Am. Compl. ¶¶ 12-13].

**RESPONSE:** Plaintiff admits.

44.     The substance of the Title VII violations alleged in the Amended Complaint was

identical to those alleged in the EEOC's initial Complaint against Nichols Gas [Am. Compl. ¶¶

15-16].  However, the EEOC was now alleging that Nichols Gas and Townsend had both

engaged in this behavior [Am. Compl. ¶¶ 15-16].

**RESPONSE:** Plaintiff admits in part and denies in part.  Plaintiff admits that the sexual

harassment, retaliation and constructive discharge allegations were identical. Plaintiff denies that

it alleged that Townsend engaged in this behavior but admits that it amended the complaint to

add Townsend as a successor defendant to the litigation because Townsend is an appropriate

Title VII successor to Nichols Gas.  See also EEOC Response to ¶ 37, incorporated by reference.

45.    The EEOC's Amended Complaint was again based on Sections 706 and 707 or

Title VII and Section 102 of the Civil Rights Act of 1991 [Am. Complaint ¶ 1].

**RESPONSE:** Plaintiff admits.

46.    The EEOC sought the following relief against Nichols Gas and Townsend:

    a)    a permanent injunction enjoining them from engaging in any employment
practices that discriminate based on sex;

    b)    an Order requiring them to institute policies to eradicate the effects of their
alleged "past and present unlawful employment practices";

    c)    past and future pecuniary losses;

    d)    compensation for "pain, suffering and humiliation'" and

    e)    punitive damages

[Am. Compl. P. 5].

**RESPONSE:** Plaintiff admits.

## TITLE VII SUCCESSOR LIABILITY DOES NOT REQUIRE ANY WRONGDOING ON THE PART OF TOWNSEND OR ANY EMPLOYMENT RELATIONSHIP WITH THE TEN CLAIMANTS IN THIS MATTER

47.     Despite the EEOC's allegations that both Nichols Gas and Townsend violated Title VII, none of the "claimants" in the instant litigation have ever been employed by Townsend [Brady Aff. 18-19].

**RESPONSE:** Plaintiff admits in part, denies in part, and denies that this is a material fact relevant to summary judgment or relevant to the legal standards required for Title VII successor liability. Plaintiff admits that none of the claimants were employed by Townsend. Plaintiff denies that EEOC has alleged that both Nichols Gas and Townsend violated Title VII. Townsend is a Title VII defendant successor to Nichols Gas.  See *EEOC v. Nichols Gas & Oil*, 518 F. Supp. 2d 505, 512 (W.D.N.Y. 2007); See also EEOC Response to Townsend Fact ¶ 37, incorporated by reference.

48.     None of the "claimants" were employees of Nichols Gas at the time of the Asset Purchase Agreement [Brady Aff. ¶¶ 18-19; Ex. 3, EEOC's Response to Nichols Gas Interrogatories, dated September 18, 2006, Response to Interrogatories 6,7,9, 10].

**RESPONSE:** Plaintiff denies that this is a material fact relevant to summary judgment or relevant to the legal standards required for Title VII successor liability. See EEOC's Memorandum of Law at 16-17.

## TOWNSEND PURCHASED NICHOLS GAS & MAINTAINED A STRONG CONTINUITY OF BUSINESS OPERATIONS BY OPERATING FROM THE SAME PHYSICAL BUILDING, EMPLOYING ALL OF NICHOLS GAS' EMPLOYEES, PURCHASING NICHOLS GAS' INVENTORY & CONTINUING IN THE SAME LINE OF BUSINESS – SELLING GAS & OIL

49.     Nichols Gas and Townsend are completely separate entities that have never had any common shareholders, officers or directors, and have never had any common ownership of

any kind [Brady ¶¶ 23-25].

**RESPONSE:** Plaintiff admits that Nichols Gas and Townsend did not share owners, shareholders, officers, or directors at the time of the Purchase Agreement. Plaintiff denies that this is a material fact relevant to summary judgment or relevant to the legal standards required for Title VII successor liability. See also EEOC Response to Townsend Fact ¶ 37, incorporated by reference.

50.     Other than the asset purchase, there has never been any interrelationship between the two companies and they have always been separate and distinct [Brady Aff. ¶¶ 23-25].

**RESPONSE:** Plaintiff denies that this was an Asset Purchase Agreement. On or about November 30, 2005, Townsend entered into a Purchase Agreement with Mr. Nichols and Nichols Gas. The document is entitled "Purchase Agreement" and not "Asset Purchase Agreement." See Chandy Decl., Ex. B, Purchase Agreement at 1. Chandy Decl., Ex. B, Purchase Agreement at 1. Defendants indicated to their customers that Townsend's purchase of Nichols Gas constituted a merger of the two companies. Chandy Decl., Ex. C, Customer Letter at 1 ("Nichols Gas & Oil, Inc. of Macedon, NY has completed a merger with Townsend Oil Corp. of LeRoy, NY."). After November 30, 2005, Townsend ran the business of Nichols Gas. T.N. Dep., p. 18:20-21; Bray Dep., p. 39:24 ("We remained a gas and oil company."). After Townsend purchased Nichols Gas, Townsend offered delivery and service from the Macedon facility to former Nichols Gas customers. Chandy Decl., Ex. C, Customer Letter at 1; Bray Dep., p. 39:3-10. Townsend continued to receive payments from these customers at the Macedon facility. Chandy Decl., Ex. C, Customer Letter at 1.

Townsend agreed to continue the employment of every employee of Nichols Gas when it purchased Nichols Gas on November 30, 2005 and had no planned changes in personnel. Brady

Dep., pp. 45:19-46:5, 63:7-13; W.N. Dep. 12/6/06, p. 200:11-23.  Employees of Nichols Gas

continued to work for Townsend at the Macedon facility after the sale. Brady Dep., p. 63:7-13;

Bray Dep., p. 36:3-8; W.N. Dep. 12/6/06, pp. 193:2-195:10.  Approximately one month after the

sale, at least nine of eleven former Nichols Gas employees continued to work as Townsend

employees at the Macedon facility. Brady Dep., p. 47:5-10; 63:14-16.

 Townsend notified former customers of Nichols Gas that these customers could call the

Macedon facility and speak to the same personnel to which the customers were accustomed

before Townsend purchased Nichols Gas. Chandy Decl., Ex. C, Customer Letter at 1. Townsend

also purchased the name of Nichols Gas under the Purchase Agreement. Chandy Decl., Ex. B,

Purchase Agreement at 1; Brady Dep., p.64:4-7; W.N. Dep. 12/6/06, p. 235:17-9. Townsend

purchased Nichols Gas' customer list under the Purchase Agreement.  Chandy Decl., Ex. B,

Purchase Agreement at 18; Brady Dep. p. 32:4-12; W.N. Dep. 12/6/06, p. 235:20-2. Townsend

purchased the physical building and several tanks and vehicles previously owned by Nichols Gas

under the Purchase Agreement.  Chandy Decl., Ex. B, Purchase Agreement at 1, 17; Brady Dep.

pp. 32:7-9; 34:25-35:8; W.N. Dep. 12/6/06, p. 235:7-8; 236:6-10; 241:5-8. Townsend also

purchased Nichols Gas' inventory, supplies, and maintenance parts and shop supplies under the

Purchase Agreement.  Chandy Decl., Ex. B, Purchase Agreement at 17; Brady Dep. p. 35:9-36:6.

Townsend purchased Nichols Gas, meaning, as stated by Mr. Nichols, that this included: the

facility, the trucks, the fuel, the oil, the building, and the customer list. See, W.N.

Dep.12/6/06:164:24-165:7, 168:17-169:4.  See also EEOC Supp. Facts ¶¶ 13-41.

 51. Nichols Gas and Townsend have never had common management or centralized

control of labor relations between the two companies and Nichols Gas was never an agent of

Townsend [Brady AF. ¶¶ 23-25].

**RESPONSE:** Plaintiff admits but denies that this fact is relevant for summary judgment or the legal standard required for Title VII successor liability.

52.     Nichols Gas was a much smaller operation that supplied fuel products primarily to individual consumers.  Townsend, on the other hand, provided energy products and services to a vast array of commercial business, service stations and farms, as well as individuals [Brady Aff. ¶¶ 4-5, 14 & 17; Bray Dep., p. 158].

**RESPONSE:** Plaintiff admits.

53.     Prior to the closing, Townsend had its own fuel tanks, pumps (and other similar assets), a three story administrative building at its principal place of business in Leroy, New York, and its own customer lists [Brady Aff. ¶ 14].

**RESPONSE:** Plaintiff admits.

54.     Townsend also had 45 employees, over 40 delivery vehicles, a bulk plant-separate from its principal place of business – with a capacity of 120,000 gallons of fuel storage.

**RESPONSE:** Plaintiff admits.

55.     Nichols Gas, on the other hand, had only 11 employees and no bulk storage facilities at its Macedon facilities [Brady Aff. ¶ 14].

**RESPONSE:** Plaintiff admits.

56.     After the asset purchase primary duties of the employees at the Macedon facility was dispatching delivery vehicles [Brady Aff. ¶ 14].

**RESPONSE:** Plaintiff denies that this was an Asset Purchase Agreement.  On or about November 30, 2005, Townsend entered into a Purchase Agreement with Mr. Nichols and Nichols Gas.  The document is entitled "Purchase Agreement" and not "Asset Purchase Agreement."  Chandy Decl., Ex. B, Purchase Agreement at 1.  Townsend purchased the

customer list of Nichols Gas under the Purchase Agreement. See Chandy Decl., Ex. B, Purchase

Agreement at 18; Brady Dep. p. 32:4-12; W.N. Dep. 12/6/06, p. 235:20-2. After Townsend

purchased Nichols Gas, Townsend offered delivery and service from its Macedon facility to

former customers of Nichols Gas. Chandy Decl., Ex. C, Customer Letter at 1; Bray Dep., p.

39:3-10. Townsend continued to receive payments from these customers at the Macedon facility.

Chandy Decl., Ex. C, Customer Letter at 1.

Townsend agreed to continue the employment of every employee of Nichols Gas when it

purchased Nichols Gas on November 30, 2005 and had no planned changes in personnel. Brady

Dep., pp. 45:19-46:5, 63:7-13; W.N. Dep. 12/6/06, p. 200:11-23.   Employees of Nichols Gas

continued to work for Townsend at the Macedon facility after the sale. Brady Dep., p. 63:7-13;

Bray Dep., p. 36:3-8; W.N. Dep. 12/6/06, pp. 193:2-195:10.   Approximately one month after the

sale, at least nine of eleven former Nichols Gas employees continued to work as Townsend

employees at the Macedon facility. Brady Dep., p. 47:5-10; 63:14-16.  Townsend notified former

customers of Nichols Gas that they could call the Macedon facility and speak to the same

personnel to which the customers were accustomed before Townsend purchased Nichols Gas.

Chandy Decl., Ex. C, Customer Letter at 1.

## TOWNSEND IS THE SUCCESSOR DEFENDANT TO NICHOLS GAS & JN-IV WAS CREATED BY NICHOLS GAS TO COLLECT DEBTS AND ENGAGE IN OTHER NON-GAS & OIL RELATED BUSINESS

57.    After the closing, Nichols Gas became J.N.IV Corp., its successor corporation

("J.N.-IV") and that entity continues to do business [Nichols Dep. p. 286].

RESPONSE: Plaintiff denies. Mr. Nichols created J.N. IV to run a lawn care business

and to collect debts due to Nichols Gas. W.N. Dep. 12/6/06, p. 272:3-14. See also EEOC

Response to ¶ 4.  Mr. Nichols named the company J.N.-IV because Townsend had purchased the

exclusive right to use the name "Nichols Gas & Oil." W.N. Dep. 12/6/06, p. 270:6-11.  Mr.

Nichols also named the company J.N.-IV because the company was not in the oil business.  T.N.

Dep., 158:12-14.  See also EEOC Response to ¶ 1, incorporated by reference.

58.     J.N.-IV employed Nichols, his daughter, Jessica Nichols, and his wife, Theresa

Nichols [Nichols Dep. p. 195].

**RESPONSE:** Plaintiff admits.

59.     Mr. Nichols is the President, Theresa Nichols does the bookkeeping and Jessica

Nichols is responsible for collections of receivables from individuals that owed money to

Nichols [Nichols Dep. pp. 271-272].

**RESPONSE:** Plaintiff admits in part and denies in part. Plaintiff admits that Mr. Nichols

is the President of J.N.-IV and that Mrs. Nichols does the bookkeeping for J.N.-IV.

Plaintiff denies that Jessica Nichols is responsible for collections of receivables in that J.N.-IV is

not collecting any accounts receivable and there is no income. T.N. Dep., p. 60:4-9.  Mrs.

Nichols also testified that Nichols Gas is not receiving any income from the asset sale. T.N. Dep.

61:7-8. Mrs. Nichols testified that Nichols Gas does not have any other bank accounts, other than

JN-IV and that JN-IV has no assets or ways to recover or access money. T.N. Dep. 75:18-25,

76:1-3, 77: 14-18, 80:9-19.

## RELIEF AGAINST TOWNSEND WOULD BRING JUSTICE FOR THE CLAIMANTS AS PERMITTED BY FEDERAL COURTS UNDER SUCCESSOR LIABLITY

60.     As noted above, none of the "claimants" were ever employed by Townsend, so

injunctive relief against Townsend is completely unnecessary.

RESPONSE:  Plaintiff denies in that this statement is legal argument.  See EEOC's

Memorandum of Law at 16-17.

61.     To the extent the "claimants' incurred any compensable damages, those damages

cannot be imposed on Townsend because Nichols Gas, and its successor J.N.-IV Corp., are able

to provide such relief.

**RESPONSE:** Plaintiff denies in that this statement is legal argument.  See EEOC

Response to Townsend Facts at ¶ 4, 57, incorporated by reference.  Plaintiff denies that Nichols

Gas had or currently has the money available to resolve this litigation.  See also EEOC Supp.

Facts ¶¶ 42-54.  On April 15, 2008, the most recent date for which Nichols Gas produced

financial documents for J.N.-IV pursuant to Plaintiff EEOC's document request, J.N.-IV held

total assets          Chandy Decl., Ex. H, Apr. 15, 2008 Statement at 1; T.N. Dep., pp. 77:9-

10; 79:24-80:2. As of April 15, 2008, J.N.-IV owe          to Mr. and Mrs. Nichols as

officers.  Chandy Decl., Ex. H, Apr. 15, 2008 Statement at 1; T.N. Dep., pp. 77:9-13; 79:24-80:2.

From December 1995 through the sale of Nichols Gas to Townsend, Mrs. Nichols paid bills and

produced monthly reconciliations, necessary journal entries, and financial data for Nichols Gas.

T.N. Dep., p. 16:4-6; 17:6-14. After November 30, 2005, Nichols Gas produced financial reports

and information for J.N.-IV. T.N. Dep., p. 148:8-11. Mrs. Nichols stated that J.N.-IV does not

have the funds to resolve the instant lawsuit. T.N. Dep., p. 80:9-19. Mrs. Nichols also stated that

the cash and assets of J.N.-IV are valued          T.N. Dep., pp. 60:24-61:4. J.N.-

IV is not collecting any amounts that are owed to the entity. T.N. Dep., p. 60:4-9. At the time of

Townsend's purchase of Nichols Gas, J.N.-IV held total assets valued          and total

liabilities valued          resulting in assets that were insufficient to resolve this matter.

Chandy Decl., Ex. H, Dec. 1, 2005 Statement at 1.  At the time of Townsend's purchase of

Nichols Gas, Townsend did not transfer any money to Nichols Gas. Brady Dep., p. 64:14-18;

W.N. Dep. 12/6/06, p. 246: 4-24; T.N. Dep., p. 72:2-3.  Mr. Nichols testified, "I know that I

walked out of that closing          .We had debts to pay." W.N. Dep. 12/6/06, p.

246:16-24, 247:10.   Mrs. Nichols testified, "I can tell you at the time of the sale there wer█

█████████████████." T.N. Depo. 72: 2-3.   Mr. Nichols sold Nichols Gas to Townsend

because Nichols Gas had reached its credit limits. Bray Dep., p. 34:6-17; pp.130:19 -131:7.

    62.    Pursuant to the Asset Purchase Agreement and at the closing, Townsend credited

the following to Nichols Gas.

    a)    ████████for certain assets listed at Exhibit A to the Asset Purchase
Agreement;

    b)    ███████for the real property located in Macedon, New York;

    c)    ███████r a covenant not-to-compete,

    d)    ████████ Nichols for retained customers;

    e)    ██████r miscellaneous inventory;

    f)    ████████for past accounts receivable (less certain agreed upon
adjustments)

[Brady Aff. ¶¶ 7-13].

    **RESPONSE:** Plaintiff denies that this was an Asset Purchase Agreement.  On or about

November 30, 2005, Townsend entered into a Purchase Agreement with Mr. Nichols and

Nichols Gas.  The document is entitled "Purchase Agreement" and not "Asset Purchase

Agreement."  See Chandy Decl., Ex. B, Purchase Agreement at 1.  Plaintiff admits the figures

listed here are contained in the Purchase Agreement. Plaintiff denies that Nichols Gas currently

has funds available to resolve this litigation or had such funds at the time of the sale.  See EEOC

Supp. Facts ¶¶ 42-54.

    63.    Nichols Gas also retaine████████in customer deposits, which had been pre-

paid to Nichols prior to the closing of the Asset Purchase Agreement, but Townsend was

required to deliver the product covered by these deposits [Brady Dep. pp. 66-67; Ex. 6]

**RESPONSE:** Plaintiff admits in part and denies in part.  Plaintiff denies that this was an

Asset Purchase Agreement.  On or about November 30, 2005, Townsend entered into a Purchase

Agreement with Mr. Nichols and Nichols Gas.  The document is entitled "Purchase Agreement"

and not "Asset Purchase Agreement."  Chandy Decl., Ex. B, Purchase Agreement at 1.  Plaintiff

admits that Townsend provided product███████████ in customer deposits for Nichols Gas.

Plaintiff denies that███████████in customer deposits had been pre-paid to Nichols Gas prior to

the closing of the Purchase Agreement because████████does not represent cash or assets

that Nichols received from Townsend. Brady Dep., p. 68:5-7. Nichols Gas cannot confirm that it

has received any money for uncollected account receivables. T.N. Dep., p. 156:15-20. Plaintiff

admits the figures listed here are contained in the Purchase Agreement.  Plaintiff denies that

Nichols Gas currently has funds available to resolve this litigation or had such funds at the time

of the sale.  See EEOC Supp. Facts ¶¶ 42-54.

64.    A similar arrangement was entered into for certain oil and propane "contract

fees," whereby Nichols Gas███████████n pre-paid fees [Brady Dep. p. 67].

**RESPONSE:** Plaintiff admits in part and denies in part.  Plaintiff admits that Townsend

and Nichols Gas entered into a similar arrangement for certain oil and propane contract fees.

Plaintiff denies that█████fees had been pre-paid to Nichols.  The amount████████████

does not represent cash or assets that Nichols received from Townsend. Brady Dep., p. 67:7-

68:7.  Plaintiff admits the figures listed here are contained in the Purchase Agreement.  Plaintiff

denies that Nichols Gas currently has the figures listed here or any other funds available to

resolve this litigation or had such funds at the time of the sale. T.N. Dep. 76:4-8; EEOC Supp.

Facts ¶¶ 42-54.

65.    Townsend also collected Nichols Gas account receivables, after the closing for a

90 day period, totaling approximately $295,000.00 [Brady Dep. p. 68; T.N. Dep. pp. 151-155; Ex. 6]:

- ████████ was deposited into a Nichols Gas account sometime in December 2005;

- ████████ was collected by Townsend and sent directly to Nichols in December 2005;

- ████████ was sent directly to Nichols in January 2006; and

- ████████ in February 2006.

All of this money was turned over to Nichols Gas [Brady Dep. p. 68; Ex. 6].

**RESPONSE:** Plaintiff admits the figures listed here are contained in the Purchase Agreement. Plaintiff denies that Nichols Gas currently has the figures listed here or other funds available to resolve this litigation or had such funds at the time of the sale. T.N. Dep. 76:4-8; EEOC Supp. Facts ¶¶ 42-54.

66. Additionally, and pursuant to the Asset Purchase Agreement, there was approximately ████████ rovided to Nichols and Theresa Nichols for retained gallonage and ████████ n salary paid to Nichols [Brady Dep. p. 69; Ex. 6].

**RESPONSE:** Plaintiff denies that this was an Asset Purchase Agreement. On or about November 30, 2005, Townsend entered into a Purchase Agreement with Mr. Nichols and Nichols Gas. The document is entitled "Purchase Agreement" and not "Asset Purchase Agreement." Chandy Decl., Ex. B, Purchase Agreement at 1. Plaintiff admits the figures listed here are contained in the Purchase Agreement. Plaintiff denies that Nichols Gas currently has the figures listed here or any other funds available to resolve this litigation or had such funds at the time of the sale. T.N. Dep. 76:4-8; See also EEOC Supp. Facts ¶¶ 42-54.

67. As a result of the asset purchase, Nichols Gas received, since December 1, 2005, a

total of $1,463,149.24 [T.N. Dep. pp. 61-65; Ex. 6]. A remaining ███████ of Nichols Gas

accounts receivables was uncollected, and an outside consulting company was apparently

retained to collect the amount past due [T.N. Dep. pp. 155-157].

    **RESPONSE:** Plaintiff denies that this was an Asset Purchase Agreement. On or about

November 30, 2005, Townsend entered into a Purchase Agreement with Mr. Nichols and

Nichols Gas. The document is entitled "Purchase Agreement" and not "Asset Purchase

Agreement." Chandy Decl., Ex. B, Purchase Agreement at 1. Plaintiff denies that Nichols Gas

collected these amounts at the time of the sale or at anytime thereafter. At the time of

Townsend's purchase of Nichols Gas, Townsend did not transfer ███████ to Nichols Gas.

Brady Dep., p. 64:14-18; W.N. Dep. 12/6/06, p. 246:16-24; T.N. Dep., p. 72:2-3. J.N.-IV does

not have ███████ T.N. Dep., p. 65:19-21. On April 15, 2008, the most recent date for

which Nichols Gas produced financial documents for J.N.-IV pursuant to Plaintiff EEOC's

document request, J.N.-IV held total assets ███████ Chandy Decl., Ex. H, Apr. 15, 2008

Statement at 1; T.N. Dep., pp. 77:5-8; 79:24-80:2. As of April 15, 2008, J.N.-IV owe ███████

to Mr. and Mrs. Nichols as officers. Chandy Decl., Ex. H, Apr. 15, 2008 Statement at 1; T.N.

Dep., pp. 77:9-10; 79:24-80:2. From December 1995 through the sale of Nichols Gas to

Townsend, Mrs. Nichols paid bills and produced monthly reconciliations, necessary journal

entries, and financial data for Nichols Gas. T.N. Dep., p. 16:4-6; 17:6-14. Nichols Gas has

produced financial reports and information for J.N.-IV. T.N. Dep., p. 148:8-11. Mrs. Nichols

testified that J.N.-IV does not have the funds to resolve the instant lawsuit. T.N. Dep., p. 80:9-

19. Mrs. Nichols also testified that the cash and assets of J.N.-IV are valued ███████

███████ T.N. Dep. pp. 60:24-61:4. Nichols Gas cannot confirm that it has received ███████ for

uncollected account receivables. T.N. Dep., p. 156:15-20. J.N.-IV is not collecting any amounts

that are owed to the entity. T.N. Dep., p. 60:4-9. Plaintiff denies that Nichols Gas currently has

the figures listed here or any other funds available to resolve this litigation or had such funds at

the time of the sale. T.N. Dep. 76:4-8; See also EEOC Supp. Facts ¶¶ 42-54.

68.    The combined assets of Nichols Gas and J.N.-IV, as of December 1, 2005, totaled

███████ T.N. Dep. pp. 157-162]. As of January 1, 2006, J.N.-IV's total assets were

███████ T.N. Dep. p. 164].

**RESPONSE:** Plaintiff admits that these figures are listed in these documents. Plaintiff

denies that Nichols Gas currently has the figures listed here or any other funds available to

resolve this litigation or had such funds at the time of the sale. T.N. Dep. 76:4-8; See also EEOC

Supp. Facts ¶¶ 42-54.

## PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff EEOC hereby submits this statement of undisputed facts in support of EEOC's

Cross-Motion for Partial Summary Judgment and in Opposition to Townsend's Motion.

## TOWNSEND HAD NOTICE OF THE EEOC CHARGE AND EEOC LITIGATION AGAINST NICHOLS GAS PRIOR TO ITS PURCHASE

1.    Townsend had notice of EEOC's pending action against Nichols Gas prior to its

November 30, 2005 purchase of Nichols Gas. Townsend Memo at. 25; Brady Dep. p.38:2-16.

2.    The EEOC litigation and the underlying EEOC Charge of Discrimination are

listed in the Purchase Agreement between Townsend and Nichols Gas as follows:

> Elisa Foss v. Nichols Gas & Oil, Inc.
> Charge No. 165-2003-00767
> Date of Filing of EEOC Charge: Sept. 12, 2003
> Date of Probable Case Determination: June 9, 2005
> Complaint filed in United States District Court, Western District of New York on September 14, 2005, Docket No. 6:05-cv-06482-cjs(P)

See Chandy Decl., Ex. B, Purchase Agreement at 24.

3.      Prior to Townsend's purchase of Nichols Gas, Mr. Nichols and Mr. Brady had conversations about the EEOC Charge and the allegations in this case. W.N. Dep. 12/6/06, pp. 178:17-19, 180:20-182:8, 184:19-22; T.N. Dep., pp. 47:15-48:12; Bray Dep., p. 131:16-19.

4.      Mr. Nichols testified that he chatted with Mr. Brady about the allegations, explaining, "Certainly we chatted about it... the whole thing in general [the allegations, the EEOC charge, the Court complaint]." W.N. Dep. 12/6/06, p. 181:21-182:8.

5.      Mr. Nichols testified that this case "wasn't a big secret, you know. Everybody knew about it." W.N. Dep. 12/6/06, p. 185:21-24.

6.      Mr. Nichols testified that the allegations in this case were "general knowledge throughout the industry." W.N. Dep. 12/6/06, p. 186:4-5.

7.      Steve Roth, a sales manager at Townsend, viewed television news coverage of the EEOC lawsuit alleging sexual harassment by Nichols Gas in late October or early November of 2005. Brady Dep., pp. 38:17-39:14.

8.      Steve Roth notified the President of Townsend, Kevin Brady, about the news coverage of EEOC's lawsuit against Nichols Gas in late October or early November of 2005, approximately thirty days before Townsend entered into the Purchase Agreement with Nichols Gas. Brady Dep., pp. 38:17-39:14.

9.      At least one customer informed Mr. Brady that Mr. Nichols had sexually propositioned her and had promised to clear her debts with Nichols Gas in exchange for sex. Brady Dep., pp. 8:5-25, 91:22-92:7.

10.      Mr. Brady cannot confirm if he or anyone at Townsend followed up with the customer who alleged that Mr. Nichols had sexually propositioned her regarding her concerns. Brady Dep., pp. 9:16-11:18; 12:15-23; 60:8-13; 92:15-18.

11.     Townsend did not investigate or take action regarding any of the allegations of sexual harassment against Nichols Gas. Brady Dep., p. 11:13-18; 43:11-14.

12.     Mr. Brady purchased Nichols Gas with knowledge of the sexual harassment allegations against it because of his desire to expand his business. Brady Dep., p. 100:15-24.

## TOWNSEND CONTINUED THE BUSINESS OPERATIONS OF NICHOLS GAS – SEELING GAS, OIL AND RELATED SERVICES TO THE SAME CUSTOMERS USING THE SAME EMPLOYEES, OFFICE & EQUIPMENT

13.     Pursuant to the Purchase Agreement, Townsend bought Nichols Gas on or about November 30, 2005. Chandy Decl., Ex. B, Purchase Agreement at 1.

14.     Nichols Gas delivered fuel, repaired vehicles, engaged in a rolloff business, and maintained a Service Department through which it provided services such as duct cleaning and burner services. W.N. Dep. 12/6/06, p. 35:4-23.

15.     Nichols Gas offered fuel and service before Townsend's purchase of Nichols Gas, and Townsend continued to offer fuel and service after the purchase and Mr. Nichols testified regarding the Macedon facility the day after the sale, stating, "On the next day, everything remained the same." W.N. Dep. 12/06/06, p.192:24-25, 203:2-9.

16.     Bray testified that following the purchase by Townsend, 'We remained a gas and oil company….Conducted business as usual. Made deliveries." Bray Dep. p. 39:23-24, 40:3-4.

17.     Nichols Gas operated in the eastern part of Monroe County market. Brady Dep., p. 33:7-9. Townsend purchased Nichols Gas with an interest in expanding its business to a new market. Brady Dep., p. 100:15-24.

18.     Townsend purchased the name "Nichols Gas & Oil" as part of the Purchase Agreement with Nichols Gas. Chandy Decl., Ex. B, Purchase Agreement at 1; Brady Dep., p. 64:4-7; W.N. Dep. 12/6/06, p. 235:17-19.

19.     Townsend purchased Nichols Gas' physical building and its tanks and vehicles at the time of the sale. Chandy Decl., Ex. B, Purchase Agreement at 1, 17; Brady Dep. pp. 32:7-12; 34:25-35:8; W.N. Dep. 12/6/06, p. 235:7-8; 236:6-10; 241:5-8; T.N. Dep., p. 19:15-17; Bray Dep., p. 39:3-24.

20.     Townsend also purchased Nichols Gas' inventory, supplies, and maintenance parts and shop supplies at the time Townsend purchased Nichols Gas. Chandy Decl., Ex. B, Purchase Agreement at 17; Brady Dep. p. 35:9-36:6; T.N. Dep., p. 19:15-17; Bray Dep., p. 39:3-24.

21.     Townsend purchased propane tanks, "Loan-lease" tanks and pumps, a 2000 Sterling bobtail truck, a 1999 Sterling truck, a 1996 GMC utility vehicle, and a Brindle tank mover. Chandy Decl., Ex. B, Purchase Agreement at 17; Brady Dep., p. 34:25-36:2; W.N. Dep. 12/6/06, p. 241:5-8; T.N. Dep., p. 19:15-17; Bray Dep., p. 39:3-24.

22.     Townsend purchased office supplies, truck repair and maintenance parts, shop supplies, motor oil and lubricants, fuel additives, piping material and fittings, truck wheels and tires, burners, blocks, regulators, pigtails, brass fitting supplies, delivery tickets, liquid fuels, pump parts, hoses and fittings, and spill equipment (consumables). Chandy Decl., Ex. B, Purchase Agreement at 17; Brady Dep., p. 34:25-36:2. See also EEOC Response to Townsend Fact ¶ 1, incorporated by reference.

23.     Townsend purchased Nichols Gas' physical building in Macedon at the time of the sale. Chandy Decl., Ex. B, Purchase Agreement at 1, 17; Brady Dep. pp. 32:7-12; 34:25-35:8; W.N. Dep. 12/6/06, p. 235:7-8; 236:6-10; 241:5-8; T.N. Dep., p. 19:15-17; Bray Dep., p. 39:3-24.

24.     Townsend conducted business through its Macedon location after its purchase of

Nichols Gas. Chandy Decl., Ex. B, Letter 1; Brady Dep. p. 28:16-18; 63:7-13; Bray Dep., p. 36:3-8; W.N. Dep. 12/6/06, pp. 193:2-195:10.

25.    Townsend listed the addresses of both the Leroy office and the Macedon office on its company website. Chandy Decl., Ex. D at 1.

26.    Townsend provided delivery and service from the Macedon facility after it purchased Nichols Gas. Chandy Decl., Ex. B, Letter at 1; Bray Dep., p. 39:3-10.

27.    Townsend accepted invoice payments at both its Leroy facility and its Macedon facility after it purchased Nichols Gas. Chandy Decl., Ex. B, Letter at 1.

28.    Townsend accepted job applications at both its Leroy facility and its Macedon facility after it purchased Nichols Gas. Chandy Decl., Ex. D, Website at 1.

29.    Townsend purchased Nichols Gas' customer list under the Purchase Agreement. Chandy Decl., Ex. B, Purchase Agreement at 18; Brady Dep. p. 32:4-6; 36:7-11; W.N. Dep. 12/6/06, p. 235:20-2.

30.    After Townsend purchased Nichols Gas, Townsend offered delivery and service from its Macedon facility to former Nichols Gas customers. Chandy Decl., Ex. C, Customer Letter at 1; Bray Dep., p. 39:3-10.

31.    Townsend continued to receive payments from previous customers of Nichols Gas at the Macedon facility. Chandy Decl., Ex. C, Customer Letter at 1.

32.    Townsend effected no personnel changes following its purchase of Nichols Gas. Brady Dep., p. 63:7-13; Chandy Decl., Ex. C, Customer Letter at 1.

33.    Townsend notified former customers of Nichols Gas that they could call the Macedon facility and speak to the same personnel to which the customers were accustomed before Townsend purchased Nichols Gas. Chandy Decl., Ex. C, Customer Letter at 1.

34.     The former Nichols Gas employees continued to work for Townsend at the Macedon facility as soon after Townsend purchased Nichols Gas on November 30, 2005.  Brady Dep., p. 63:7-13; Bray Dep., p. 36:3-8; W.N. Dep. 12/6/06, pp. 193:2-195:13.

35.     Prior to the sale of Nichols Gas to Townsend, Mr. Nichols, in his role as President of Nichols Gas, primarily worked as a salesman.  W.N. Dep. 12/6/06, pp. 46:24-47:12, 109:23-25.

36.     Following the sale of Nichols Gas, Mr. Nichols became an employee of Townsend and remained in his role as salesman in Townsend's Sales and Customer Service Department.  Chandy Decl., Ex. E, Mr. Nichols Employment Agreement at 1; Brady Dep., p. 43:15-19; 44:3-5; W.N. Dep. 12/6/06, p. 187:12-16, 247:24-248:2; T.N. Dep., pp. 49:17-20; 52:6-9; 52:23-53:2; Bray Dep., p. 37:8-13.

37.     Townsend purchased Mr. Nichols' "expertise" as part of the sale.  W.N. Dep. 12/6/06, p. 169:4-5.

38.     Mr. Nichols continued to work at the Macedon facility following the sale of Defendant starting on December 1, 2005 and remained at that facility until his separation from Townsend on or about October 31, 2006.  Chandy Decl., Ex. E, Mr. Nichols Employment Agreement at 1; W.N. Dep. 12/6/06, p. 187:17-188:2, 197:15-20, 247:24-248:2; Bray Dep., p. 37:8-13; 43:23-44:2; T.N. Dep., pp. 49:17-20; 52:6-9; 52:23-53:2; Brady Dep., p. 43:15-19; 44:14-21; 48:9-13.

39.     When Mr. Nichols began working for Townsend on December 1, 2005, he reported to his same office within the Macedon facility where he had previously worked from 1997 until November 30, 2005.  W.N. Dep. 12/6/06, p. 192:14-17, 198:9-13; T.N. Dep., 84:7-11; Bray Dep., p. 37:8-13.

40.     After Townsend purchased Nichols Gas on November 30, 2005, Townsend hired

Mrs. Nichols as a consultant.  Chandy Decl., Ex. F, Theresa Nichols Consulting Agreement at 1;

Brady Dep., p. 57:9-15; W.N. Dep. 12/6/06, pp. 194:21-24, 276:14-24; T.N. Dep., p. 43:3-8.

41.     Several trucks that were not sold to Townsend were leased to Townsend.  Chandy

Decl., Ex. G, Vehicle Lease Agreement at 1; Brady Dep., p. 107:6-25; Bray Dep., pp. 41:17-

42:2; T.N. Dep., pp. 49:21-50:21.

## NICHOLS GAS WAS UNABLE TO PROVIDE FINANCIAL RELIEF AT THE TIME OF THE SALE AND IS UNABLE TO PROVIDE RELIEF AT THIS TIME

42.     At the time Townsend purchased Nichols Gas, Townsend did not transfer ████

████ to Nichols Gas.  Brady Dep., p. 64:14-18; W.N. Dep. 12/6/06, p. 246:16-9; T.N. Dep., p.

72:2-3.  Mrs. Nichols testified, "I can tell you at the time of the sale there were ████████

████████" T.N. Depo. 72: 2-3.  Mr. Nichols states, "I know that I walked out of that

closing ████████..We had debts to pay."  W.N. Dep. 12/6/06, p. 246:16-24, 247:10.

43.     The amounts listed in the Purchase Agreement represent credits that Mrs. Nichols

testifies were not paid to Nichols Gas. T.N. Dep., p. 70:15-19; Chandy Decl. Ex. B at 2, 17. See

also EEOC Response to Townsend Fact ¶ 65.

44.     An amount of ████████ Townsend states was credited to Nichols Gas for a

covenant not-to-compete represents a credit that Mrs. Nichols testified was not actually paid to

Nichols Gas given other off-sets.  T.N. Dep. p.70:15-19.

45.     Mr. Nichols states that he did not actually receive ████████ in hand at the

closing for the real property located in Macedon, New York even though this amount is listed in

the Purchase Agreement.  W.N. Dep. 12/6/06, p. 237:7-9; Chandy Decl. Ex. B at 2.

46.     Mrs. Nichols testified that the approximate ████████ that Townsend claims

it collected in receivables also does not represent assets or income that Townsend actually

transferred to Nichols Gas. T.N. Dep., p. 153:15-154:12; See EEOC Response to Townsend Fact ¶ 65.

47.     Mrs. Nichols testified that, as of April 15, 2008, J.N.-IV owe█████████ to Mr. and Mrs. Nichols as officers.  Chandy Decl., Ex. H, Apr. 15, 2008 Statement at 1; T.N. Dep., pp. 77:9-10; 79:24-80:2.

48.     The amounts o█████████rovided to Mr. and Mrs. Nichols for retained gallonage and█████████rovided to Mr. Nichols in salary were paid to them as individuals and not to Nichols Gas.  T.N. Dep., p. 72:9-11; 77:18-21; Brady Dep., p. 69:5-17.

49.     At the time of Townsend's purchase of Nichols Gas, financial documents provided by Nichols Gas indicate that J.N.-IV held total assets value█████████and total liabilities valued█████████, resulting in insufficient assets to resolve this matter.  Chandy Decl., Ex. H, Dec. 1, 2005 Statement, p. 1.

50.     Financial documents provided by Nichols Gas indicate that, as of January 1, 2006, J.N.-IV held total assets value█████████and total liabilities valued█████████ Chandy Decl., Ex. H, Jan. 1, 2006 Statement at 1.

51.     Nichols Gas does not have any other bank accounts where it is holding money or other assets, other than through JN-IV.  T.N. Dep. pp. 75:18-25, 76:1-3.

52.     Nichols Gas does not have any other assets or access to any other money which can be used to resolve this litigation.  T.N. Dep. 77: 14-18, 80:9-19.

53.     J.N.-IV is not collecting any accounts receivable and that is has no income.  T.N. Dep., p. 60:4-9.  Mrs. Nichols states that the cash and assets of J.N.-IV are valued a█████████ █████████T.N. Dep., pp. 60:24-61:4.

54.     Financial documents produced by Nichols Gas and testimony confirms that as of

April 15, 2008, the most recent date for which it has produced documents, Nichols Gas held

available assets ▓▓▓▓ Chandy Decl., Ex. H, Apr. 15, 2008 Statement at 1; T.N. Dep., pp.

76:4-8, 77:9-10; 79:24-80:2.

## TOWNSEND HIRED FORMER NICHOLS GAS EMPLOYEES, INCLUDING MR. NICHOLS, WHO HAD CONTRIBUTED TO AND/OR WORKED IN A WORK ENVIRONMENT FILLED WITH SEXUAL IMAGES AND COMMENTARY

55.   Nichols Gas employees worked in an environment with calendars with pictures of

scantily clad women.  W.N. Dep. 12/7/06, p. 53:3-54:17, 55:6-10, 56:19-25, 57:15-17, 60:16-17;

Bray Dep., pp. 83:8-84:14.

56.   Mr. Nichols never asked the male employees to remove the calendars with

pictures of scantily clad women.  W.N. Dep. 12/7/06, p. 63:5-7.

57.   Mr. Nichols admits cursing in the workplace on a daily basis, using terms such as

"hell, damn, fuck, shit," "ass," "bitch" and he can't deny using the word "tit"  W.N. Dep.

12/7/06, p. 64:2-10, 64:4-10, 82:12-14, 82:24-83:15; 96:20-22.

58.   Male employees at Nichols Gas made sexual jokes, talked about women they

wanted to have sex with and spoke about their sex lives while working at the Macedon facility.

W.N. Dep. 12/7/06, pp. 87:17-22, 106:3-108:25, 111:20-112:6; Bray Dep. pp. 86:14-17, 88:10-

12; 127: 8-25-128:13-25.

59.   Mr. Nichols was ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ in

relation to his conduct to the Charging Party in this case. W.N. Dep. 12/7/06, pp. 189:24-25,

191:3, 192: 3-12, 193: 7-11, 196: 21-23;Chandy Decl., Ex. A, ▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓

60.   The Charging Party in this case, Elisa Foss, obtained ▓▓▓▓▓▓▓

against Mr. Nichols. W.N. Dep. 12/7/06, p. 198:21-24.

Dated: New York, New York
       August 13, 2009

Respectfully Submitted,

Sunu P. Chandy
Senior Trial Attorney

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, 5th Floor
New York, New York 10004
Telephone No: 212-336-3706
Facsimile No.:  212-336-3623
E-mail Address: sunu.chandy@eeoc.gov